## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN M. QUINN,

        *Plaintiff*,

    v.

KREINDLER & KREINDLER, *et al.*,

        *Defendants.*

Civil Action No. 21-1824 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

In this breach of contract action, Plaintiff John M. Quinn ("Quinn") alleges that

Defendants Kreindler & Kreindler, LLP and James P. Kreindler (collectively, "K&K") have

failed to pay him the compensation that he is due for assisting with K&K's representation of

family members and representatives of the victims of the September 11, 2001 terrorist attacks.

Quinn alleges that he was engaged to assist K&K in obtaining compensation for K&K's clients

by, among other things, helping to remove barriers posed by foreign sovereign immunity to the

K&K plaintiffs' ability to recover damages from "the Kingdom of Saudi Arabia and other nation

states," Dkt. 19 at 5-6 (Am. Compl. ¶ 19); ensuring that K&K's clients would have access to the

Victims of State Sponsored Terrorism Fund ("VSSTF"), *id.* at 13 (Am. Compl. ¶ 45); and

resisting "efforts on the part of the Government of Sudan and the Department of State to . . .

include[] in the Sudan Claims Resolution Act . . . language that would [have] effectively erase[d]

the 9/11 families' claims against Sudan," *id.* at 13 (Am. Compl. ¶ 44).

The parties' agreements regarding what Quinn characterizes as "eight years [spent]

laboring on legal, political and media activities," *id.* at 10 (Am. Compl. ¶ 38), are remarkably

scant. Their first agreement, which they entered in June 2013, barely occupies half a page and is

four sentences long.  Dkt. 19-1 at 2 (Am. Compl. Ex. 1).  Roughly a year later, they entered into a second agreement, which is a comparatively robust six sentences long.  Dkt. 19-2 at 2 (Am. Compl. Ex. 2).  Those agreements were superseded by two agreements in May 2017, one of which governs services rendered to K&K relating to the firm's representation of clients who had "filed cases in the litigation as of" July 10, 2014, Dkt. 19-3 at 2 (Am. Compl. Ex. 3), and one of which governs services rendered to K&K relating to the firm's representation of clients who "filed claims on or after July 10, 2014 or with respect to" certain other claims or proceedings, Dkt. 19-4 at 2 (Am. Compl. Ex. 4).  Finally, in August 2017, the parties amended the May 2017 agreements by, among other things, providing that Quinn is entitled to compensation relating to recoveries by those K&K clients who filed claims and by those who did "not file[] [claims] in the litigation but who have retained K&K to assist in recovering compensation whether through the filing of claims or otherwise and who in fact receive a recovery."  Dkt. 19-5 at 2 (Am. Compl. Ex. 5).

The crux of the dispute between Quinn and K&K, at least at this point, is one of timing. K&K does not dispute that Quinn is entitled to compensation for the services he provided, but it maintains that Quinn's demand for payment is premature because each iteration of the retainer agreement bases Quinn's compensation on the "net recovery" that K&K receives, and because the 9/11 litigation is ongoing and K&K thus continues to accrue costs, rendering the amount of its "net recovery" inchoate.  Dkt. 21-1 at 6.  Quinn disagrees and maintains that K&K has received fees for portions of its work, and it is obligated to share those fees with him.  Dkt. 22 at 5.

Quinn's complaint contains six counts: (I) Breach of Contract – 2013/2014 Agreements; (II) Breach of Contract – 2017 Agreements; (III) Breach of Duty of Good Faith and Fair Dealing;

(IV) Accounting; (V) Quantum Meruit; and (VI) Constructive Trust.  *See* Dkt. 19 (Am. Compl.).

K&K moves to dismiss all but Claim II, which it concedes survives the motion to dismiss stage.

*See* Dkt. 21-1 at 7-8.  Quinn opposes the motion to dismiss in its entirety.  Dkt. 22 at 9.  For the

reasons explained below, the Court is unpersuaded by K&K's arguments respecting Counts I, III,

and V, but is persuaded by its arguments respecting Counts IV and VI.

The Court will, accordingly, **GRANT** in part and **DENY** in part Defendants' Motion to

Partially Dismiss the First Amended Complaint.

## I. BACKGROUND

The following factual allegations are drawn from the complaint, as well as documents

attached to or incorporated in Quinn's pleadings or are subject to judicial notice.  *See Hamilton*

*v. United States*, 502 F. Supp. 3d 266, 273 (D.D.C. 2020).  For purposes of K&K's motion to

dismiss, the Court accepts Quinn's factual allegations as true.  *See Bell Atl. Corp. v. Twombly*,

550 U.S. 554, 555 (2007).

### A.    Factual Background

On September 11, 2001, al-Qaeda launched a series of coordinated terrorist attacks on the

United States.  Dkt. 19 at 4 (Am. Compl. ¶ 13).  The attacks "immediately resulted in 2,977

fatalities and, to date, tens of thousands of injuries." *Id.* at 5 (Am. Compl. ¶ 14).  K&K

represents family members whose relatives were killed or injured in these attacks, the estates of

the deceased, and first responders and others who were injured.  *Id.* at 5 (Am. Compl. ¶ 15).  As

part of this effort, K&K has served as counsel for a large group of plaintiffs in the consolidated

multi-district litigation in the Southern District of New York for almost two decades.  *See In re:*

*Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 546 (S.D.N.Y. 2005);  Dkt. 19 at 7, 15-

17 (Am. Compl. ¶¶ 24, 51-69).

The plaintiffs in the 9/11 litigation faced significant legal hurdles, including the doctrine of sovereign immunity, which, at the time of the attacks, barred suits against foreign nations that were not "'state sponsors' of terrorism." Dkt. 19 at 5 (Am. Compl. ¶ 17). To help address some of these legal issues, K&K sought Quinn's assistance. *Id.* at 6 (Am. Compl. ¶ 21). Quinn is a D.C. resident and attorney whose career has spanned government, private practice, and public affairs work. *Id.* at 3-4 (Am. Compl. ¶ 10).

The first contract between the parties was prepared by K&K and signed by the parties in June 2013. *Id.* at 6 (Am. Compl. ¶ 22); *see also* Dkt. 19-1 at 2 (Am. Compl. Ex. 1). That contract entitled Quinn Gillespie & Associates (Quinn's then-existing public affairs firm) and Nelson Mullins (another public affairs firm) to "receive a fee of 1% of the net recovery on each decedent's wrongful death case and each personal injury case where [K&K] has or receives a fee in the consolidated 9/11 Terrorist Litigation."[1] Dkt. 19-1 at 2 (Am. Compl. Ex. 1). The June 2013 Agreement further specified that Quinn Gillespie and Nelson Mullins's "1% fee shall be paid from the attorneys' fees in all said cases where [K&K] has or receives a fee." *Id.* The entire agreement consisted of a mere four sentences. *Id.*

The parties amended the June 2013 Agreement on July 10, 2014. Dkt. 19-2 at 2 (Am. Compl. Ex. 2). The new agreement tracked the first but substituted Quinn for Quinn Gillespie. *Id.* It also clarified that "[t]he term 'net recovery' shall mean the amount awarded to each plaintiff of [K&K] less out-of-pocket costs to [K&K], exclusive of legal fees paid to [K&K] or

---

[1] "Nelson Mullins" refers to the firm Nelson, Mullins, Riley & Scarborough. Dkt. 19 at 7 (Am. Compl. ¶ 24). Although that firm was part of Quinn's initial Agreement with K&K, "[a]ll of Quinn's Agreements with Defendants from May 2017 forward were on his behalf only and not that of" Nelson Mullins. *Id.* at 8 (Am. Compl. ¶ 31).

others." *Id.* Neither agreement contained an expiration date, and neither specified when Quinn would receive payment for his services. Dkt. 19 at 7 (Am. Compl. ¶ 25).

On May 19, 2017, the parties executed two new agreements. *Id.* at 7 (Am. Compl. ¶ 26). The first May 2017 Agreement "relat[ed] to services rendered and to be rendered by Quinn to K&K in support of the representation by K&K of approximately 2000 clients who are plaintiffs in litigation whose claims were filed as of [July 10, 2014] . . . in the Southern District of New York." Dkt. 19-3 at 2 (Am. Compl. Ex. 3). This agreement was "effective nunc pro tunc, January 1, 2017," and it "extinguishe[d], supersede[d] and replace[d] . . . any and all prior agreements or understandings . . . including but not limited to those dated July, 2013." *Id.* The agreement also provided that "K&K agrees to pay to Quinn a fee of 0.775 percent (seventy-seven and one half basis points) of the net recovery on each decedent's wrongful death and each personal injury claim with respect to which K&K receives a fee, whether by judgment, settlement or otherwise, for its representation of the Clients on whose behalf it filed cases in the litigation as of the date of the Earlier Agreement." *Id.* The agreement, once again, defined "net recovery" to "mean the amount realized by each client less out-of-pocket costs to K&K and exclusive of legal fees paid to K&K." *Id.*

The second May 2017 Agreement related to K&K's "representation of clients on whose behalf K&K filed claims on or after July 10, 2014." Dkt. 19-4 at 2 (Am. Compl. Ex. 4). That agreement was "effective nunc pro tunc, January 2, 2017." *Id.* The agreement provided that "K&K shall pay to Quinn a fee of 1% of the net recovery on each wrongful death, injury or any other claim for which K&K receives a fee, whether by judgment, settlement or otherwise, for its representation of clients on whose behalf K&K filed claims on or after July 10, 2014." *Id.* This

agreement defined "net recovery" in the same way as the other May 2017 Agreement and the July 2014 Agreement. *Id.*

Finally, on August 26, 2017, the parties amended the May 2017 Agreements to clarify that references in those agreements "to 'the litigation' contemplate and include the provision of services in cases filed, to be filed[,] or for which [K&K] is retained to file or otherwise provide services in connection with matters arising out of the [9/11] attacks." Dkt. 19-5 at 2 (Am. Compl. Ex. 5). The August 2017 Amendment further provided that

> [i]n addition to other bases for compensation, Quinn . . . shall receive compensation as specified in each of the May [2017] Agreements for the representation of each client on whose behalf K&K has filed claims and receives fee[s] and shall also receive the same level of compensation for the representation of clients on whose behalf claims are not filed in the litigation but who have retained K&K to assist in recovering compensation whether through the filing of claims or otherwise and who in fact receive a recovery with respect to which K&K receives a fee.

*Id.* Finally, the August 2017 Amendment entitled Quinn to an additional "amount represented by 0.225 of the net recoveries contemplated by" the initial contract should Nelson Mullins be "unable or ineligible or otherwise fail to receive all or part of the fees contemplated by [its] contract with K&K." *Id.*

Quinn alleges that he "has vigorously and effectively worked, and continues to work, on behalf of the clients he shares with [K&K]." Dkt. 19 at 11 (Am. Compl. ¶ 39). A significant part of Quinn's work "involved analysis of and advocacy for the legal and policy bases justifying enactment of" the Justice Against Sponsors of Terrorism Act ("JASTA"), "as well as subsequent work to help formulate and articulate arguments to defeat efforts to reverse all or part of that important statute in the years after its enactment." *Id.* (Am. Compl. ¶ 40); *see also* Dkt. 19-3 at 2 (Am. Compl. Ex. 3) ("Quinn's important contribution to date to the litigation and to the enactment of JASTA is hereby acknowledged."). In addition, Quinn has lobbied against efforts

6

to "erase the 9/11 families' claims against Sudan" and worked with K&K to ensure that K&K clients have access to the United States Victims of State Sponsored Terrorism Fund ("VSSTF"). Dkt. 19 at 13-15 (Am. Compl. ¶¶ 44-49). "In total, Quinn [has] devoted thousands of hours and the bulk of his professional practice to this effort." *Id.* at 15 (Am. Compl. ¶ 50).

As of the filing of his Amended Complaint, K&K "ha[s] failed to provide [Quinn] with any payment under either the 2013/2014 Agreement or the 2017 Agreements." *Id.* at 22 (Am. Compl. ¶ 95). Quinn alleges that K&K, in contrast, has received payment related to its work for 9/11 clients, at least through K&K's efforts relating to the VSSTF and the September 11th Victim Compensation Fund ("VCF"). *Id.* at 20-23 (Am. Compl. ¶¶ 87, 92-94, 106). He also alleges that K&K has "failed to provide [him] with any financial statements, accountings, or information of any kind related to payments made to Defendants or their clients, or out-of-pocket expenses incurred by K&K, or payments to a third party." *Id.* (Am. Compl. ¶ 96).

**B.    Procedural History**

Quinn initiated this action against K&K on July 8, 2021. *See* Dkt. 1 at 34 (Compl.). After K&K moved to dismiss Quinn's initial complaint, Dkt. 11, Quinn filed an Amended Complaint, Dkt. 19 (Am. Compl.), mooting the first motion to dismiss. *See* Min. Order (Oct. 20, 2021). In his Amended Complaint, Quinn requests, among other things, (1) a declaratory judgment that the Agreements are valid and enforceable, (2) actual and punitive damages, (3) "[a]n accounting of Kreindler & Kreindler, LLP's 9/11-related receipts, disbursements and other expenses, and a review of its financial documents[,]" and (4) "[a] declaration that Defendants hold all income, profits, commissions, fees, revenues, and other funds received by Defendants as

representatives of the 9/11 families in a constructive trust for the benefit of the Defendants'

clients with 9/11 claims and Plaintiff."  Dkt. 19 at 33-34 (Am. Compl.).

K&K moves to dismiss five of the six counts asserted in the Amended Complaint, Dkt.

21, and Quinn opposes that motion, Dkt. 22.  Count II of the Amended Complaint, which alleges

that K&K has breached the May 2017 Agreements, is not at issue for present purposes.

## II.  LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is designed

to "test[] the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.

Cir. 2002).  In evaluating a Rule 12(b)(6) motion, the Court "accept[s] facts alleged in the

complaint as true and draw[s] all reasonable inferences from those facts in the plaintiff['s]

favor."  *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015).  To survive a Rule

12(b)(6) motion, a complaint must contain "'a short and plain statement of the claim showing

that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (quoting *Conley v.

Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per

curiam).  In considering a Rule 12(b)(6) motion, the Court "may consider only the facts alleged

in the complaint, any documents either attached to or incorporated in the complaint[,] and

matters of which [the Court] may take judicial notice."  *Trudeau v. FTC*, 456 F.3d 178, 183

(D.C. Cir. 2006) (internal quotation marks omitted).

Although "detailed factual allegations" are not necessary, the complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.*  Well-pleaded complaints include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Raising the "sheer possibility that a defendant has acted unlawfully" is insufficient, *id.*; instead, the complaint's "[f]actual allegations," accepted as true, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, while "a well-pleaded complaint may proceed even if" it appears that "actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" *id.* at 556 (citation omitted), the complaint must nevertheless "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" *id.* at 557, (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).[2]

### III.  ANALYSIS

#### A.     Count I: Breach of Contract – 2013/2014 Agreements

In Count I of the Amended Complaint, Quinn alleges that K&K breached the June 2013 and July 2014 Agreements because (1) he performed his obligations under those contracts, and (2) K&K has failed to compensate him for that work.  Dkt. 19 at 23-24 (Am. Compl. ¶¶ 99-113).  K&K moves to dismiss on the ground that the May 2017 Agreements extinguished the June 2013 and July 2014 Agreements and, thus, "no breach of those contracts could possibly have occurred within the three-year statute of limitations."  Dkt. 21-1 at 15.  Although the major premise of K&K's argument carries considerable force, the Court is unpersuaded that it can resolve K&K's statute of limitations defense at this early stage of the proceeding.

---

[2] The Court has assured itself of its jurisdiction in this diversity case.  Per the Amended Complaint, the Plaintiff is a resident of the District of Columbia, K&K is organized under the laws of New York and has its principal place of business in New York, and Kreindler is also a resident of New York.  *See* Dkt. 19 at 3-4 (Am. Compl. ¶¶ 10-12).  There is therefore complete diversity between the parties, and Quinn's claims for relief "vastly exceed[] the $75,000 minimum."  *Id.* at 3 (Am. Compl. ¶ 7); *see also* 28 U.S.C. § 1332(a)(1).

As an initial matter, the Court notes that Quinn and K&K agree that the May 2017 Agreements extinguished the June 2013 and July 2014 Agreements. *See id.*; *see also* Dkt. 22 at 5-6. In May 2017, the parties agreed that the new agreements "extinguishe[d], supersede[d] and replace[d] . . . any and all prior agreements or understandings," and they agreed upon revised terms relating to Quinn's entitlement to compensation with respect to both previously filed claims and any future claims. Dkt. 19-3 at 2 (Am. Compl. Ex. 3); *see also* Dkt. 19-4 at 2 (Am. Compl. Ex. 4). Taking this language at face value, it is difficult to understand how Quinn can now invoke the June 2013 and July 2014 Agreements, which he agreed to "extinguish[]." But that is not the argument that K&K makes, and the Court will not reach an issue that neither party has raised.

Instead, K&K argues that Quinn's efforts to enforce the June 2013 and July 2014 Agreements fail because those agreements were extinguished "as of January 1, 2017," Dkt. 21-1 at 15, and thus any breach must have occurred, if at all, before that date. That poses a problem for Quinn, K&K continues, because the relevant statute of limitations is three years, and Quinn did not bring suit until July 8, 2021, more than three years after January 1, 2017. Dkt. 21-1 at 15-17. The Court is unpersuaded.

D.C. law provides that, "[e]xcept as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues: . . . (7) on a simple contract, express or implied – 3 years." D.C. Code § 12-301(7).[3] "A cause of action for breach of contract accrues,

---

[3] Neither Quinn nor K&K addresses choice-of-law, but both parties apply D.C. law in their briefs. *See, e.g.*, Dkt. 21-1 at 15-16; Dkt. 22 at 14. "Because litigants may waive choice-of-law issues, the Court need not challenge their evident assumption that District of Columbia law applies." *Parker v. John Moriarty & Assocs. of Va.*, 332 F. Supp. 3d 220, 234 n.10 (D.D.C.

and the statute of limitations begins to run, at the time of the breach." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008) (internal quotation omitted). "[M]otions to dismiss based on a statute of limitations defense are generally disfavored," however, "and the D.C. Circuit has 'repeatedly held [that] courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.'" *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, 7 (D.D.C. 2019) (alteration in original) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208-09 (D.C. Cir. 1996)). "[D]ismissal is appropriate only if the complaint on its face is conclusively time-barred." *Slate v. Pub. Def. Serv. for the D.C.*, 31 F. Supp. 3d 277, 313 (D.D.C. 2014) (alteration in original) (quoting *Firestone*, 76 F.3d at 1209).

According to the Amended Complaint, the June 2013 and July 2014 Agreements "remained in force through December 31, 2016," Dkt. 19 at 23 (Am. Compl. ¶ 101), and, as noted above, Quinn did not file suit in this case until July 8, 2021, Dkt. 1 at 34 (Compl.), well past the three-year window for filing suit. Under ordinary circumstances, this delay might well preclude Quinn from suing for breach of those agreements. So far, so good.

The District of Columbia Court of Appeals, however, has recognized two exceptions to the usual statute of limitations: the lulling doctrine and the discovery rule. *See Roe v. Wilson*, 365 F. Supp. 3d 71, 78 (D.D.C. 2019) (citing *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 156 (D.C. 1998)). Here, Quinn invokes the discovery rule, Dkt. 22 at 15-17, which provides that "a 'claim does not accrue until the plaintiff, exercising due diligence, has

_____

2018); *see also C & E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 255 n.5 (D.D.C. 2007) (citing *CSX Transp., Inc. v. Com. Union Ins. Co.*, 82 F.3d 478, 482–83 (D.C. Cir. 1996)) ("[A] party may waive a choice of law argument."); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("[C]ourts need not address choice of law questions *sua sponte*.").

discovered or reasonably should have discovered all of the essential elements of her possible cause of action.'" *Wilson*, 365 F. Supp. 3d at 78 (quoting *Farris v. Compton*, 652 A.2d 49, 54 (D.C. 1994)).  He maintains that K&K has "never told [him] that any plaintiff it represented in the SDNY [9/11] litigation has received any payment, much less when such payment was received[] or the amount thereof."  Dkt. 22 at 17.  Thus, in his view, his claim that K&K breached the June 2013 and July 2014 Agreements has been tolled under the discovery rule.

K&K offers two responses to this argument, neither of which is convincing.  First, it argues that "because Quinn pleads no facts of when or how he discovered the alleged breach at all, let alone how or why he could not have discovered facts to put him on inquiry notice of a breach until sometime after July 8, 2018, the discovery rule response is simply not plausible."  Dkt. 24 at 8.  That argument flips the applicable burden:  "The statute of limitations is an affirmative defense that defendant must prove."  *Firestone*, 76 F.3d at 1210; *see also Lucas v. D.C.*, No. 13-CV-143 (TFH), 2019 WL 4860730, at *8 (D.D.C. Oct. 2, 2019) (noting that the *defendant* "has not demonstrated what evidence the plaintiff had of his breach of contract and/or negligence claims" to defeat discovery rule); *Kipp DC Supporting Corp.*, 373 F. Supp. 3d at 7 ("The statute of limitations is an affirmative defense and need not be negatived by the language of the complaint.") (citations omitted); *FiberLight, LLC v. WMATA*, No. CV 16-2248 (ESH), 2017 WL 2544131, at *9 (D.D.C. June 12, 2017) ("Taking the factual allegations of the complaint as true, and drawing all reasonable inferences in FiberLight's favor, it is not apparent from the face of the complaint that the discovery rule is inapplicable.").

Second, K&K argues that "[i]f Quinn claims that the receipt by a K&K client of monies from one of the government administrative funds (either the VCF or VSST Fund) triggered a breach . . . [,] then Quinn cannot plausibly claim he was unaware of those administrative fund

distributions because they were highly publicized government events, which Quinn claims he lobbied on behalf of." Dkt. 24 at 8. Again, K&K misunderstands the Court's role in resolving a motion to dismiss. *See FiberLight*, 2017 WL 2544131, at *9 (D.D.C. June 12, 2017); *Butler v. Enter. Integration Corp*., 459 F. Supp. 3d 78, 95 (D.D.C. 2020) ("Further evidence about the timeliness of the claims may arise at summary judgment, but at this point, the Court cannot conclusively determine that any count is time-barred."). At the motion to dismiss stage, the Court does not—and may not—engage in fact finding, and the plaintiff has no obligation to plead facts in anticipation of an affirmative defense or to offer declarations or other evidence in response to a motion under Rule 12(b)(6). Nor is it at all obvious that Quinn knew that any of K&K's clients received payments before January 1, 2017—or July 8, 2018—from either the VCF or the VSST Fund. *See* Dkt. 19 at 19 (Am. Compl. ¶ 79) ("VCF does not make public either the name of claimants or the amount awarded."); *id*. at 21 (Am. Compl. ¶ 90) ("VSSTF does not make public either the names of claimants or the amount awarded."). Even if Quinn knew that some funds were disbursed to some victims, the Court cannot assume that he knew that any of these funds were received by any K&K clients more than three years before he brought that suit. Ultimately, K&K may be able to show that Quinn knew, but that is a question for another day.

The Court will, accordingly, deny K&K's motion to dismiss Count I as time-barred.

## B.  Count III: Breach of Duty of Good Faith and Fair Dealing

In Count III of the Amended Complaint, Quinn alleges that K&K breached the duty of good faith and fair dealing by failing to provide him with an accounting and thus keeping him in the dark regarding the fees that K&K allegedly owes him. *See* Dkt. 19 at 27-28 (Am. Compl.

¶¶ 132-140).  K&K moves to dismiss Count III on the ground that "Quinn has no contractual right to any financial disclosure."  Dkt. 21-1 at 17-20.

Under D.C. law, "all contracts contain an implied duty of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Ihebereme v. Cap. One, N.A.*, 730 F. Supp. 2d 40, 49 (D.D.C. 2010) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)).  "This duty prevents a party from evading the spirit of the contract, willfully rendering imperfect performance or interfering with the other party's performance."  *Id.* (quoting *Hais v. Smith*, 547 A.2d 986, 987-88 (D.C. 1988)).  K&K argues that Quinn fails adequately to plead a claim for breach of the implied covenant of good faith and fair dealing for several reasons: (1) Quinn has not alleged that K&K's actions were arbitrary and capricious or that K&K acted in bad faith; (2) Quinn has no contractual right to any financial disclosure; (3) K&K's refusal has not prevented Quinn from performing under the contract; (4) Quinn's request is a "fishing expedition" to support his breach of contract claim; and (5) Quinn's requested accounting would be overly burdensome.  Dkt. 21-1 at 17-20.  The Court concludes that each of K&K's arguments is either unfounded or premature.

*First*, although the Amended Complaint does not use the phrases "bad faith" or "arbitrary and capricious," "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted) (per curiam).  Read in this light, the Court has no difficulty concluding that the Amended Complaint avers that K&K has acted in bad faith.  It alleges that the implied covenant ensures that parties deal with one another in "good faith" to "prevent[] a party from evading the spirit of the

contract," Dkt. 19 at 27 (Am. Compl. ¶ 134); that K&K maintains "sole possession of all the information necessary to determine fees due to Quinn," *id*. (Am. Compl. ¶ 135); that "Quinn has asked K&K" for that information, *id*. (Am. Compl. ¶ 136); that K&K has refused Quinn's requests, *id*. (Am. Compl. ¶ 137); and that by doing so, K&K has denied Quinn the information that he needs to determine what he is owed and has "evad[ed] the spirit of the contract," *id*. at 28 (Am. Compl. ¶ 138).  Under D.C. law, "a plaintiff must allege either bad faith or conduct that is arbitrary and capricious," but "bad faith" includes a "lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform," and "fair dealing" requires "reasonable conduct that is not arbitrary and capricious."  *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013).  Although it premature to consider whether K&K has, in fact, acted in bad faith or unreasonably, Quinn has plausibly alleged that K&K has intentionally left him in the dark to evade its contractual obligation to pay Quinn what he is due.

*Second*, K&K is correct that "parties do not breach the implied covenant [of good faith and fair dealing] 'by failing to do something they had no obligation to do' under their written agreement."  *Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 13 (D.D.C. 2016) (quoting *Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014)).  Here, the agreements do not expressly require K&K to provide Quinn with an accounting or other financial report, and thus, according to K&K, its failure to do so did not violate the implied covenant.  Dkt. 21-1 at 18.  For present purposes, however, the Court must assume that K&K, in fact, owes Quinn compensation for work he has performed, and he has plausibly alleged that K&K's refusal to provide him with information about the fees that it has collected has, in effect, "destroy[ed] or injur[ed]" his right "to receive the fruits of the contract."  *Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C. 2013) (quoting *Hais*, 547 A.2d at 987); *see also Paul*, 754 A.2d at 310.  Quinn's fees are tied to the

"net recovery . . . with respect to which K&K receives a fee, whether by judgment, settlement or otherwise."  Dkt. 19-3 at 2 (Am. Compl. Ex. 3).  If K&K is unwilling to provide Quinn the information he needs to calculate his fee, that conduct at least arguably contravenes the "spirit of the contract," *Paul*, 754 A.2d at 310, even if providing an accounting or otherwise sharing financial information is not an explicit term in the contract.

The case on which K&K principally relies is readily distinguishable.  In *Chambers*, the issue was whether a credit union would assess overdraft fees based on customers' actual account balance or their available account balance.  222 F. Supp. 3d at 5.  Because the relevant agreements "unambiguously link[ed] overdrafts to the available balance," not the actual balance, *id.* at 11, the Court concluded that "[t]he Credit Union had no contractual obligation . . . to base overdraft fees on Chambers' actual balance" and "[i]ts failure to do so, therefore, [was] not in bad faith, arbitrary, or capricious," *id.* at 13.  In this case, unlike in *Chambers*, the information that Quinn requests bears a direct connection to the contractual rights that he asserts.  His request for an accounting—or, perhaps, something short of a full accounting but still sufficient to permit him to protect his contractual rights—is arguably necessary to prevent K&K from depriving him of the "fruits of the contract."  *See Doe v. George Washington Univ.*, 366 F. Supp. 3d 1, 8 (D.D.C. 2018) ("[T]he duty of good faith and fair dealing is an interpretive lens through which courts evaluate the parties' reasonable expectations for the fulfillment of the terms of the contract.").

*Third*, although K&K's failure to provide Quinn with information regarding the fees it has obtained has not prevented Quinn from performing under the contract, interfering with the plaintiff's ability to perform is just one example of a violation of the duty of good faith and fair

dealing.  *See Ihebereme*, 730 F. Supp. 2d at 49.  Because Quinn does not premise his claim on that theory, K&K's argument is inapposite.

*Fourth*, K&K attempts to recast Quinn's claim as a "fishing expedition" in support of his contract claims.  Dkt 21-1 at 19.  To be sure, some or all of the information he seeks may be available in discovery, and some of it may provide a necessary predicate for all or some of his breach of contract claims.  But K&K's argument ignores the fact that Quinn's rights to payment will likely continue long past the resolution of this case, and, without the type of information that he argues K&K is bound to provide him, he will continue to have one hand (and perhaps two) tied behind his back in protecting his contractual rights.  That, of course, does not mean that he will necessarily prevail on this claim.  But the claim is more than a mere "fishing expedition."

K&K argues that because Quinn cannot "plead any distinct damage from th[e] so-called breach of the covenant," the Court should dismiss this Count.  Dkt. 21-1 at 19.  As K&K observes, other decisions from this Court have concluded that a "breach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under established cause[s] of action."  *WMATA v. Quik Serve Foods, Inc.*, No. CIV. 04-687 (RCL), 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006); *see also Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 2002).  But Quinn's contract claims are distinct from his claim that K&K breached the implied covenant:  Quinn's claims that K&K owes him money (*i.e.*, his breach of contract claims) are distinct in both substance and remedy from his claim that K&K has wrongfully withheld financial information (*i.e.*, his breach of the duty of good faith claim).

The cases on which Quinn relies are inapposite.  In *Capitol Just., LLC v. Wachovia Corp.*, No. CV 07-2095 (RCL), 2008 WL 11388566, at *6-*7 (D.D.C. June 11, 2008), the Court dismissed a claim for breach of the duty of good faith and fair dealing where the claim was

"patently identical to other established causes of action" and where the claims "merely duplicate other substantive claims made by plaintiffs."  The same was true in *Quik Serve Foods*.  2006 WL 1147933, at *5 (concluding that where "[t]hese claims of bad faith are identical to" other claims, the plaintiff is merely "attempting to get two bites at the same apple"); *see also George Washington Univ.*, 366 F. Supp. 3d at 8 ("[B]ecause the count for breach of the duty of good faith and fair dealing is duplicative of the count for breach of contract, the issues will be consolidated and addressed together; the independent claim for breach of the duty of good faith and fair dealing will be dismissed.").

*Walsh Constr. Co. II v. United States Sur. Co.*, 334 F. Supp. 3d 282, 298-99 (D.D.C. 2018), is somewhat closer to this case.  There, the surety claimed that a construction company breached the covenant of good faith and fair dealing by (1) "refusing to pay the [s]urety the balance of the [s]ubcontract price;" (2) "hindering the [s]urety's investigation of the alleged default;" and (3) "overstating its alleged damages."  *Id.* at 298.  Of those allegations, the one most like the claim at issue here is that the company hindered the surety's investigation of the alleged default.  The court rejected that claim because, due to a performance bond, the surety would receive the fruits of the contract with or without the investigation.  *Id.* at 299.  Here, by contrast, K&K's refusal to give Quinn financial information from which he could calculate his fee at least arguably interferes with his ability to receive payment under the contract.

*Finally*, K&K's arguments about the burdens associated with providing Quinn the requested financial information are better addressed at summary judgment or trial.  At this stage, no facts regarding K&K's accounting and recordkeeping practices are before the Court, and, thus, the Court has no basis to evaluate K&K's argument.  But even beyond that, it is far from clear that the burden alone provides a sufficient ground to defeat the claim.  The amount of

information needed to determine how much Quinn is owed is a product of the deal the parties

struck, regardless of the wisdom of that deal.  As a result, at some point, K&K will need either to

reach a new agreement with Quinn or to pull together what it characterizes as a mountain of

information in order to calculate what Quinn is owed.  The only questions are when K&K will

need to do so and whether Quinn will receive access to that same information—or whether he

will just need to take K&K's word for what he is owed.  Thus, far from being an "accounting

exercise that the contracts nowhere even intimate," Dkt. 21-1 at 20, it seems inevitable that K&K

will need undertake the burden that, in its view, defeats Count III of the Amended Complaint.

The Court will, accordingly, deny K&K's motion to dismiss Count III for failure to state

a claim.

## C.      Count V: Quantum Meruit

In Count V, Quinn alleges that to the extent that K&K maintains that no enforceable

contractual relationship exists with respect to the services he provided "or that any portion of the

net recoveries [K&K] obtained on behalf of family members and representatives of the victims

of the September 11, 2001 terrorist attacks fall outside of" that contractual relationship, he "is

entitled to be paid for the value of his services for the period of the relationship" he had with

K&K.  Dkt. 19 at 31 (Am. Compl. ¶ 153).  Put more simply: to the extent necessary, Quinn

"seeks recovery in quantum meruit for the reasonable value of the unpaid services provided to"

K&K.  *Id.* at 32 (Am. Compl. ¶ 163).  K&K moves to dismiss this claim on the ground that

"District of Columbia law does not permit Quinn to plead an alternative, quasi contract claim for

quantum meruit based on factual allegations of an express contract."  Dkt. 21-1 at 21.

"The District of Columbia recognizes" a cause of action for "quantum meruit as [an]

implied contract claim[]" where "there is no express contract between the parties but contractual

obligations are implied . . . in fact." *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111 (D.D.C. 2010). "A party asserting a quantum meruit claim must demonstrate that the parties' conduct implied the existence of a contractual relationship by establishing: (1) valuable services rendered by the plaintiff, (2) for the person for whom recovery is sought; (3) which services were accepted and enjoyed by that person, and (4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid." *Id.*; *see also Alemayehu v. Abere*, 298 F. Supp. 3d 157, 166 (D.D.C. 2018).

Notably, K&K does not argue that Quinn has failed to plead any of those elements. Instead, it maintains that because Quinn also asserts a claim for breach of contract and because K&K does not dispute that a contract exists, Quinn's quantum meruit claim fails as a matter of law. For support, K&K points to *Plesha v. Ferguson*, a case in which the plaintiff, also a lobbyist, alleged that he performed services for the defendant pursuant to a written contract and that the defendants had failed to pay him in full. 725 F. Supp. 2d at 109. In his complaint, he alleged four causes of action, including a claim for breach of contract and a claim for quantum meruit. *Id.* The Court dismissed the quantum meruit claim on the ground that "[c]laims for quantum meruit are . . . unavailable when there is an actual contract between the parties because there is no need to consider whether the parties' conduct implies a contractual relationship." *Id.* at 112. Although the plaintiff argued that he should be allowed to plead in the alternative, the Court disagreed, concluding that the claims at issue "clearly involve[d] promises contained in an express written contract" and the defendant did "not dispute the existence of a contract." *Id.*

*Plesha* is distinguishable in relevant respects. Most significantly, in *Plesha* there was no dispute that the written contract covered the activities for which the plaintiff sought compensation; instead, the defendant merely argued that it had already paid the plaintiff in full.

20

*Id.*  Here, in contrast, although "K&K is not moving to dismiss Quinn's express breach of contract claim (Count II) for failure to state a claim," Dkt. 21-1 at 22, it does dispute the "merits" and scope of that claim, *id.*  Quinn, for example, maintains that he is entitled to a portion of the compensation that K&K's receives based on its clients' recoveries from the VCF and VSSTF, Dkt. 19 at 25-26 (Am. Compl. ¶¶ 120-129), while K&K maintains that the scope of the parties' contracts reaches only recoveries obtained in the consolidated 9/11 litigation, Dkt. 21-1 at 10; Dkt. 24 at 7.  If K&K is correct that payment from the VCF and VSSTF are not covered under the contracts, Quinn is entitled to pursue a quantum meruit claim, alleging that he provided *separate* (and uncompensated) services in support of K&K's efforts to obtain those recoveries.  Nor does K&K disavow the right to argue that the contracts are unenforceable, perhaps on the ground that they are insufficiently definite or that there was not a meeting of minds.  In short, K&K's decision to forgo a motion to dismiss Count II is a far cry from a concession that an enforceable contract exits, eliminating the "need to consider whether the parties' conduct implies a contractual relationship" that can be enforced by a claim in quantum meruit.  *Plesha*, 725 F. Supp. 2d at 112.

In any event, Rule 8 permits a plaintiff to plead in the alternative, and it is premature to conclude that Quinn's breach of contract claim precludes him from asserting, in the alternative, a claim for quantum meruit.  Rule 8(d) is clear:  "A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones," and "[a] party may state as many separate claims . . . as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(2)-(3).  At the end of the day, of course, Quinn cannot recover for the same work under both a breach of contract and a quantum meruit theory of relief.  *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 104 (D.D.C. 2006) (Quantum meruit "is [not] available when there is an

actual contract between the parties."). But K&K offers no explanation for why the normal rule allowing pleading in the alternative is unavailable here.

Other decisions from this Court have permitted plaintiffs to plead claims for breach of contract and quantum meruit in the alternative. In *Rothberg v. Xerox Corp.*, No. CV 12-617 (BAH), 2013 WL 12084543, at *6 (D.D.C. Jan. 4, 2013), for example, the Court rejected the argument that a plaintiff's quantum meruit claim must "necessarily fail because the plaintiff incorporated his contract claim allegations into those causes of action," stressing that parties can plead alternative, inconsistent theories of liability. *See also, e.g.*, *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 9 n.10 (D.D.C. 2009) ("While defendants are correct . . . that plaintiff ultimately cannot recover under both a breach of contract claim and an unjust enrichment claim pertaining to the subject matter of that contract, . . . at this juncture, plaintiff's unjust enrichment claim is an alternate theory of liability which is may pursue."); *Nevius v. Afr. Inland Mission Int'l*, 511 F. Supp. 2d 114, 122 n.6 (D.D.C. 2007) ("The court is not persuaded by AIM's contention that Nevius cannot allege an express contract while asserting a claim for unjust enrichment, a remedy designed for the absence of a contract. Pleading in the alternative is permissible under the Federal Rules of Civil Procedure . . . ."). The reasoning contained in those decisions is persuasive.

The Court will, accordingly, deny K&K's motion to dismiss Count V for failure to state a claim.[4]

───────────────

[4] The Court does agree with K&K, however, that Quinn's reliance on *United States for Use & Benefit of Am. Civ. Constr., LLC v. Hirani Eng'g & Land Surveying, P.C.*, 263 F. Supp. 3d 99, 117 (D.D.C. 2017), is misplaced. True, the court there stated that, "the law in the District of Columbia plainly allows for recovery in quantum meruit, as an alternative to contract damages." *Id.* But, as the D.C. Circuit later clarified, under D.C. law, it is "restitution, not *quantum meruit*, [that] is the proper remedy where there is an express contract between the parties." *United States*

E.      **Count Counts IV and VI: Accounting and Constructive Trust**

Finally, the Amended Complaint asserts claims for Accounting (Count IV) and

Constructive Trust (Count VI).  The Court treats these together because they fail for the same

reason:  Both are equitable remedies, not standalone claims for relief.

"'An accounting is a detailed statement of the debits and credits between parties arising

out of a contract or fiduciary relation.'"  *Butler*, 459 F. Supp. 3d at 109 (internal quotation marks

omitted) (quoting *Bates v. Nw. Hum. Servs., Inc.*, 466 F. Supp. 2d 69, 103 (D.D.C. 2006)).  An

accounting is not a freestanding claim, however, but rather is a remedy that may be obtained at

the close of litigation should a plaintiff succeed.  *Id.* (citing *Haynes v. Navy Fed. Credit Union*,

52 F. Supp. 3d 1, 10 (D.D.C. 2014)); *Chin-Teh Hsu v. New Mighty U.S. Tr.*, No. CV 10-1743

(JEB), 2020 WL 588322, at *12 (D.D.C. Feb. 6, 2020) ("Neither a constructive trust nor an

accounting constitutes a free-standing claim."); *Wilson v. On the Rise Enters., LLC*, 305 F. Supp.

3d 5, 19 (D.D.C. 2018) ("[A]ccountings are not freestanding causes of action . . . .").

Similarly, "[a] constructive trust is a remedy that a court devises after litigation to redress

the injustice that would otherwise occur when one person has fraudulently or wrongfully

obtained the property of another."  *Macharia v. United States*, 238 F. Supp. 2d 13, 31 (D.D.C.

2002) (cleaned up) (citations omitted).  Like an accounting, "a constructive trust is not an

independent cause of action."  *Id.*; *see also Chin-Teh Hsu*, 2020 WL 588322, at *12; *Hedgeye*

*Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 191 (D.D.C. 2017) ("The Court will grant

---

for Use & Benefit of Am. Civ. Constr., LLC v. Hirani Eng'g & Land Surveying, PC*, 26 F.4th
952, 960 (D.C. Cir. 2022).  And in *United States for Use & Benefit of Am. Civ. Constr., LLC v.
Hirani Eng'g & Land Surveying, PC*, 58 F.4th 1250, 1251 (D.C. Cir. 2023), the D.C. Circuit
again explained that D.C. law "does not permit recovery in *quantum meruit* where there is an
express contract," even though "no such limit applies to the claim against [a] surety under the
Miller Act."

Defendants' motion to dismiss this count for failure to state a claim and will treat the request for a constructive trust as part of Hedgeye's request for relief."); *Alemayehu v. Abere*, 199 F. Supp. 3d 74, 87 (D.D.C. 2016) ("Because a constructive trust is not an independent cause of action, the Court will dismiss Count IV.").

Decisions from this Court have, on occasion, allowed accounting claims to survive a motion to dismiss.  As the court observed in *Butler*, "it is not unusual to leave such counts in place at the [m]otion-to-[d]ismiss stage and then to resolve them only at summary judgment or later, depending on whether Plaintiffs can establish both liability on the breach of contract *and* insufficiency of legal damages." 459 F. Supp. 3d at 109 (emphasis in original) (citing *Bates*, 466 F. Supp. 2d at 104).  Here, however, the Court sees no benefit (based on judicial efficiency or otherwise) in maintaining Counts IV and VI in the face of clear law establishing that neither count asserts a standalone claim for relief.  As in *Chin-Teh Hsu*, "[t]his litigation remains many leagues from the finish line," and it would "be premature for the Court to opine as to the hypothetical availability of these *equitable remedies*."  2020 WL 588322, at *12 (emphasis added).  Quinn requests an accounting and a constructive trust in his prayer for relief, Dkt. 19 at 33-34 (Am. Compl.), and dismissing Counts IV and VI will have no bearing on that request for relief.

Finally, Quinn argues that he needs an accounting as a tool of litigation and not just as a remedy.  Dkt. 22 at 7.  But he does not explain why the usual tools of discovery will not suffice, nor does he address whether or how the Court might accelerate litigation of his accounting claim, so that he could then use any relief he might obtain on that claim to pursue his remaining claims. Finally, he fails to explain how his "claim" for an accounting differs from his claim based on the implied covenant of good faith and fair dealing, which might—if successful—provide the same

relief that he seeks in his standalone claim for an accounting.  To the extent the claims are duplicative, the Court sees no reason to permit both to proceed.

The Court will, accordingly, dismiss Counts IV and VI as freestanding claims, "but it does so without prejudice to [Quinn] ultimately seeking [an accounting and constructive trust] as remedies in the event [he] prevail[s]" on one of his surviving claims for relief. *Chin-Teh Hsu*, 2020 WL 588322, at *12.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Partially Dismiss the First Amended Complaint Under Fed. R. Civ P. 12(b)(6), is hereby **GRANTED** in part and **DENIED** in part, and Counts IV and VI are hereby **DISMISSED** for failure to state a claim.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 3, 2023