# PEX 36

**From:** Jack Quinn jquinn2000@gmail.com
**Subject:** Re: Crowe etc
**Date:** March 22, 2017 at 7:53 PM
**To:** Jungle junglelandnyc@gmail.com, Jerry Goldman Esq. jgoldman@andersonkill.com, Jim Kreindler JKreindler@kreindler.com
**Bcc:** jquinn2000@gmail.com

Ran into Bob this evening at a Schumer event. He said "you owe me a proposal." I said we have been focused on complaint etc but that we have spoken lately and will see each other tomorrow and we want to get it done asap. I still think best if it comes from you jointly but we can discuss that.  Thx

Sent from my iPhone

> On Mar 21, 2017, at 6:39 PM, Jungle <junglelandnyc@gmail.com> wrote:
>
> I'll go over it by Thursday
>
> Ethan let's talk tomorrow
>
> Sent from Jerry's IPhone
> Sorry for any typos
>
>> On Mar 21, 2017, at 5:45 PM, Jim Kreindler <JKreindler@kreindler.com> wrote:
>>
>> Great. Thanks
>>
>> Sent from my iPhone
>>
>>> On Mar 21, 2017, at 5:42 PM, Jack Quinn <jquinn2000@gmail.com> wrote:
>>>
>>> Ok, thx, didn't know about Kellogg letter when I sent that. Btw, mutual friends arranged a meeting today between me and Col. Tony Shaffer of Able Danger fame. Interesting discussion. Will fill you in when we speak.
>>>
>>> Best
>>>
>>> Jack
>>>
>>> Sent from my iPhone
>>>
>>>> On Mar 21, 2017, at 5:24 PM, Jim Kreindler <JKreindler@kreindler.com> wrote:
>>>>
>>>> I do agree. May have to go over some wording but concept is right. Tied up now on Kellogg letter
>>>>
>>>> Sent from my iPhone
>>>>
>>>>> On Mar 21, 2017, at 3:12 PM, Jack Quinn <jquinn2000@gmail.com<mailto:jquinn2000@gmail.com>> wrote:
>>>>>
>>>>> Gents:
>>>>>
>>>>> I really - really - want to put this whole thing to rest and move on.  Jerry: I've briefed Jim on the attached and it reflects his instinct, I believe.  To recap: Bob has told both Jim and me he expected and accepts a cut in his share; he told each of us as well that he thought he'd be cut in half but was upset that the proposed cut took him from a share of 0.50% to 0.175%.
>>>>>
>>>>> The attached (drafted for K&K only pending feedback from you both) reduces Bob to 0.225%. I would go to 0.25% just to move past it, but suspect that is not the best next move. As you know, I think even the original proposal was generous to Bob given what I now understand was the course of dealings between State (including Tony Blinken and Anne Patterson) and Saudi agents like Podesta.
>>>>>
>>>>> I really don't want this to linger. It's unhealthy and dispiriting. And, for his part, Bob should have all the incentive in the world to continue to help (which I think is a highly dubious proposition) if it means he will enjoy any level of fee. I accept my role in this: my penalty should be losing about 0.225% of my interest.
>>>>>
>>>>> These are drafted as rescissions of earlier agreements and amendments and a wholly new arrangement. Note (you no doubt will) this is drafted to try to limit him to claims that were filed as of the date the earlier (2014) agreement. Mine covers those claims and any made on behalf of newer clients. And, I propose to keep his agreements with you separate from mine.
>>>>>
>>>>> This is key: to get this done, it MUST come from you, as his clients. he will ignore it if it comes from me because he will think you don't support it and won't insist on it. (He knows though, because I've told him that the court has to approve fees and his could give rise to a challenge, in which case he will doubtless have no records to support any substantial claim for fees

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    QUINN_000172

could give rise to a challenge, in which case he will doubtless have no records to support any substantial claim for fees.

I hope you'll agree with this or something quite close to it, and I'll be grateful if you present it to Bob as the last and best way to resolve the issue.

Thanks for everything, and best,

Jack


Jack Quinn

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

<Revised Agreement K&K-Nelson Mullins.docx>
<Revised K&K-JQ Agreement.docx>

CONFIDENTIALITY NOTE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s), you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify Kreindler & Kreindler LLP immediately by telephone at 212.687.8181 and then delete this message, including any attachments.

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com


This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

CONFIDENTIALITY NOTE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s), you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify Kreindler & Kreindler LLP immediately by telephone at 212.687.8181 and then delete this message, including any attachments.

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

**From:** Steven R. Pounian Spounian@kreindler.com 
**Subject:** RE: Final draft complaint
**Date:** March 14, 2017 at 11:34 AM
**To:** Jack Quinn jquinn2000@gmail.com

Jack,

I wanted to thank you again for your comments, many of which I incorporated into the complaint, and share some of my thoughts.

We don't mention Daniels' prior dismissal in our complaint because our plaintiffs were not parties to that dismissal – when KSA attempts to use that ruling as a basis for a post-JASTA dismissal we can argue not only that JASTA now opens up the field, etc. but that the record on the previous motion was incomplete and did not include relevant facts and legal arguments.

I made changes as you suggested to better highlight the Thumairy etc proof but don't believe it makes sense to headline these allegations as in the Cozen complaint. Daniels already reviewed this proof (in isolation) and determined that plaintiffs failed to show course/scope of employment, among other things. The CA activities are important but I think are best viewed through the post-JASTA lens of KSA's pattern of conduct in supporting AQ around the world for the decade prior to 9/11.

Steve

**From:** Jack Quinn [mailto:jquinn2000@gmail.com]
**Sent:** Saturday, March 11, 2017 4:46 PM
**To:** Steven R. Pounian <Spounian@kreindler.com>
**Cc:** Jim Kreindler <JKreindler@kreindler.com>; Justin T. Green <JGreen@kreindler.com>; Andrew J. Maloney <AMaloney@kreindler.com>; Megan Benett <Mbenett@kreindler.com>; Ilana S. Wolk <IWolk@kreindler.com>; John Fawcett <Jfawcett@kreindler.com>; jack quinn <jquinn2000@gmail.com>
**Subject:** Re: Final draft complaint

Steve --

thoughts in two categories -- first, a couple of broad points about how the "story" reads, and, second, a handful of more specific more or less chickens**t items.

A. the broader points. **First,** I would make more of JASTA than is made in para 2. It's why we are back before D.Ct. And, while we may not want to say it with an inappropriate tone, its enactment was a rebuff of Daniels (and others) in earlier decisions and was explicitly in oder to allow the claims in the cases he dismissed to move forward. So, I'd say more here that strongly suggests that JASTA was premised on a conclusion that, in fact, the plaintiffs before the court were not earlier provided the "broadest basis,....to seek relief." I think without irritating Daniels, we can ensure that readers get right at the start that JASTA represents an insistence that **this case** be viewed through a fundamentally different set of lenses that were used earlier, lenses that, for example, reject a crimped reading of FSIA/ATA that might excuse a sovereign's provision of tangible support for a terrorist attack merely on the geographic reference point of that support or on a constricted view of the law of attribution, agency etc. **Second,** and I know this one is probably more of a pain, I fully appreciate what you're doing with a sequential timeline story, but I would urge reorganizing slightly such that you can move forward the powerful story that starts on the bottom of p. 29 and goes to p. 35, i.e., the Los Angeles Thumairy/Bayoumi/Midhar/Hazmi stuff. This reads in a powerful way and is not one in a long list of evidentiary elements that don't all sing with the same strong voice. So, I might start with it as a lead in to the **actual attack**, and then follow with the rest as a flashback to "the story behind the attack." i think it will hold your audience a little easier.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER         QUINN_000284

audience a little easier.

B. other comments -- references are to paragraphs:

1. "the al Qaeda terrorist attacks" -- because we have a different target, can we in the opening say something like "the al qaeda-led and Saudi-facilitated attacks...."?
2. See above. At the least, we should here be explicit that JASTa was "enacted in September 2016 after the KSA was dismissed from the pending cases...."
3a etc etc -- there are many places, like here where I wonder if it would be safer to use the word "or" instead of "and" -- e.g., we succeed if we can prove that they "raised, laundered OR paid...."
3c. is it safer too say "that permitted al Qaeda operatives to trave" instead to "to permit"? On last line, I would say "enabled" rather than "allowed>"
8. after the list...."(I) were so closely *related*" rather than "bound"?  And in (ii) I would change a lot of the "ands" to "ors."
9. third line -- "establish al Qaeda "*and/or* provide material support."
10-12.  I urge you to consider collapsing these three paragraphs into one.  10 leaves me flat -- BUT if we say KSA adopted Wahhabism....was a core function....advanced it via charities *and al qaeda including by providing financial assistance, knowing that its aim was to carry out terror attacks against U.S.*, I think it becomes a more powerful, albeit longer single paragraph.
34. Can we be more specific about the last assertion re preventing the attack?  If so, I would make it a powerful sentence of its own, not just the end of a string.
35. delete comma on 3d line
36. ""assaulted [or attacked] the cockpits"? Is hijacked right in that context?
37-38. I urge you to make sure 38 isn't redundant and to add here that SA ***"through agents, employees, officials and others whose actions are legally attributable to the Kingdom provided tangibleupport, including but not limited to funding...."***
38b etc. Is it Saudi Arabia officials" or "Saudi Arabian officials"?
43k. I would add the "color" that al Aulaqi became AQ spokesman and was taken out in a USG drone strike in Yemen.
56. I would say "Saudi Arabian officials," not "Saudi Arabia's" officials as the latter leads to a plausible attack of overstatement.

That's it. Thanks.

Best,

Jack

| | |
|---|---|
| **From:** | "Jim Kreindler" <JKreindler@kreindler.com> |
| **Sent:** | Sun, 5 Feb 2017 07:27:39 -0500 (EST) |
| **To:** | "Jack Quinn" <jquinn2000@gmail.com> |
| **Cc:** | "Sean Carter" <SCarter1@cozen.com>; "Jerry S. Goldman Esq." <jgoldman@andersonkill.com>; "Steven Duffield" <sduffield@endgamestrategies.com>; "Justin T. Green" <JGreen@kreindler.com>; "Andrew J. Maloney" <AMaloney@kreindler.com>; "John Fawcett" <Jfawcett@kreindler.com>; "Steven R. Pounian" <Spounian@kreindler.com>; "zRobert Haefele" <rhaefele@motleyrice.com>; "zJodi W. Flowers" <jflowers@motleyrice.com>; "zDonald A. Migliori" <dmigliori@motleyrice.com> |
| **Subject:** | Re: |

---

All good points. But Wanted to think downstream a bit. Will go step by step as you counsel

Sent from my iPhone

On Feb 5, 2017, at 12:40 AM, Jack Quinn <jquinn2000@gmail.com<mailto:jquinn2000@gmail.com>> wrote:

Frankly, I have a few concerns about this. Most importantly, I think we will face more than a little resistance from the congressional people. Congress didn't sign onto our factual allegations, but instead backed only our right to present them in court; as such, I think they'd view this as a major ratcheting up of the nature of their support for us. Additionally, if I'm correct and if we nevertheless persuade some to join such an event, we have to be concerned about who joins and who doesn't -- will be in a terrible pickle if it is only a handful of Ds who would be willing to participate, as I think would be the case. At all costs, Schumer's views before proceeding with others would be important; I don't assume he'd be eager to do this because, among other things, he has consistently discouraged actions that suggest we are "concerned" about further legislative action.

At the same time, I'm not sure that we gain anything in Congress from drawing attention to our litigation efforts as they are viewed dimly by some on the Hill, they remind those sympathetic to McCain of the need to "fix" a statute that promotes litigation and they inevitably put us as plaintiffs lawyers in the center of the story, which raises hackles on the GOP side. I actually think the best press right now is the incessant commentary on the absence of KSA from the Trump EO banning immigration for 90 days from 7 countries whose citizens haven't been involved in the last few decades of terrorist attacks on the U.S. And, I don't see a reason at this moment to think that McCain and Graham can overcome our sponsors, the overwhelming weight of our victory last year and their increasingly adversary relationship with the president, unless for some reason Trump reverses course and throws in with them. My instinct is to approach the Trump team only after we file a humdinger of a complaint, about which we hopefully can get some focused media attention attesting to the strength of our case and the futility of efforts to amend JASTA.

Even if I'm hoping for too much on that front, I cannot imagine Trump attending. It's not his show -- and he doesn't appear in other people's "stories."  Right now, we have him, at least rhetorically, with us and no one has had any reason to wonder if that is still true. That being the case, I wonder if we want to ask a question of him ("do you endorse the allegations of the complaint"?) the answer to which we do not know? That's a risk.

My counsel is to get the complaint done, get some thoughtful media attention to that and, then, execute on a game plan of Trump Admin outreach based on the strength of those things and the remarkable unpopularity of KSA among the American people, as reflected in the Josh Katz/Kevin Quealy NYT story yesterday detailing Americans' views of which countries are friends and which are "near-enemies" (KSA ranks 126th and among the nations that are not vied as allies). I'd just like to make sure that this sort of groundwork is laid before trying to loop in Trump personally.


Jack Quinn

On Fri, Feb 3, 2017 at 8:33 PM, Jim Kreindler <JKreindler@kreindler.com<mailto:JKreindler@kreindler.com>> wrote:
Have an idea. When we file the complaint let's do an event in NYC with clients, Schumer, Gillibrand, Blumenthal, Cornyn , Bob graham,  Nadler, King Donovan press, clients who can attend and others on call in where we do a reasonably short PowerPoint presentation of main points of our complaint. Congressmen will want to stand with families and press will want to cover it. Should also invite Trump. Time to turn up the heat. Once we get large group of families to attend congressmen will want to be there, which will bring in press and maybe even trump. What do you think?

Sent from my iPhone

CONFIDENTIALITY NOTE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s),you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify Kreindler & Kreindler LLP immediately by telephone at 212.687.8181<tel:212.687.8181> and then delete this message, including any attachments.

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com


This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com


CONFIDENTIALITY NOTE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s),you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify Kreindler & Kreindler LLP immediately by telephone at 212.687.8181 and then delete this message, including any attachments.

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

| | |
|---|---|
| **From:** | "Andrew J. Maloney" <AMaloney@kreindler.com> |
| **Sent:** | Sun, 5 Feb 2017 14:31:21 -0500 (EST) |
| **To:** | "Jim Kreindler" <JKreindler@kreindler.com> |
| **Cc:** | "Jack Quinn" <jquinn2000@gmail.com>; "Sean Carter" <SCarter1@cozen.com>; "Jerry S. Goldman Esq." <jgoldman@andersonkill.com>; "Steven Duffield" <sduffield@endgamestrategies.com>; "Justin T. Green" <JGreen@kreindler.com>; "John Fawcett" <Jfawcett@kreindler.com>; "Steven R. Pounian" <Spounian@kreindler.com>; "zRobert Haefele" <rhaefele@motleyrice.com>; "zJodi W. Flowers" <jflowers@motleyrice.com>; "zDonald A. Migliori" <dmigliori@motleyrice.com> |
| **Subject:** | Re: |

I think Jack is right. We are past Congress (hopefully for good) and now the key is Trump. He is mercurial, reactionary and unpredictable. He alone can make or break us moving forward and we need to be careful on how we hope to get his support. Democrats in Congress are a non-starter w him as are many Republicans, save a small handful.

Sent from my iPhone

On Feb 5, 2017, at 7:27 AM, Jim Kreindler <JKreindler@kreindler.com<mailto:JKreindler@kreindler.com>> wrote:

All good points. But Wanted to think downstream a bit. Will go step by step as you counsel

Sent from my iPhone

On Feb 5, 2017, at 12:40 AM, Jack Quinn <jquinn2000@gmail.com<mailto:jquinn2000@gmail.com>> wrote:

Frankly, I have a few concerns about this. Most importantly, I think we will face more than a little resistance from the congressional people. Congress didn't sign onto our factual allegations, but instead backed only our right to present them in court; as such, I think they'd view this as a major ratcheting up of the nature of their support for us. Additionally, if I'm correct and if we nevertheless persuade some to join such an event, we have to be concerned about who joins and who doesn't -- will be in a terrible pickle if it is only a handful of Ds who would be willing to participate, as I think would be the case. At all costs, Schumer's views before proceeding with others would be important; I don't assume he'd be eager to do this because, among other things, he has consistently discouraged actions that suggest we are "concerned" about further legislative action.

At the same time, I'm not sure that we gain anything in Congress from drawing attention to our litigation efforts as they are viewed dimly by some on the Hill, they remind those sympathetic to McCain of the need to "fix" a statute that promotes litigation and they inevitably put us as plaintiffs lawyers in the center of the story, which raises hackles on the GOP side. I actually think the best press right now is the incessant commentary on the absence of KSA from the Trump EO banning immigration for 90 days from 7 countries whose citizens haven't been involved in the last few decades of terrorist attacks on the U.S. And, I don't see a reason at this moment to think that McCain and Graham can overcome our sponsors, the overwhelming weight of our victory last year and their increasingly adversary relationship with the president, unless for some reason Trump reverses course and throws in with them. My instinct is to approach the Trump team only after we file a humdinger of a complaint, about which we hopefully can get some focused media attention attesting to the strength of our case and the futility of efforts to amend JASTA.

Even if I'm hoping for too much on that front, I cannot imagine Trump attending. It's not his show -- and he doesn't appear in other people's "stories."  Right now, we have him, at least rhetorically, with us and no one has had any reason to wonder if that is still true. That being the case, I wonder if we want to ask a question of him ("do you endorse the allegations of the complaint"?) the answer to which we do not know? That's a risk.

My counsel is to get the complaint done, get some thoughtful media attention to that and, then, execute on a game plan of Trump Admin outreach based on the strength of those things and the remarkable unpopularity of KSA among the American people, as reflected in the Josh Katz/Kevin Quealy NYT story yesterday detailing Americans' views of which countries are friends and which are "near-enemies" (KSA ranks 126th and among the nations that are not vied as allies). I'd just like to make sure that this sort of groundwork is laid before trying to loop in Trump personally.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER    QUINN_010654

Jack Quinn

On Fri, Feb 3, 2017 at 8:33 PM, Jim Kreindler <JKreindler@kreindler.com<mailto:JKreindler@kreindler.com>> wrote:
Have an idea. When we file the complaint let's do an event in NYC with clients, Schumer, Gillibrand, Blumenthal, Cornyn , Bob graham,  Nadler, King Donovan press, clients who can attend and others on call in where we do a reasonably short PowerPoint presentation of main points of our complaint. Congressmen will want to stand with families and press will want to cover it. Should also invite Trump. Time to turn up the heat. Once we get large group of families to attend congressmen will want to be there, which will bring in press and maybe even trump. What do you think?

Sent from my iPhone

_____
CONFIDENTIALITY NOTE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s),you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify Kreindler & Kreindler LLP immediately by telephone at 212.687.8181<tel:212.687.8181> and then delete this message, including any attachments.
_____
This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com
_____


This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com
_____


_____
CONFIDENTIALITY NOTE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s),you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify Kreindler & Kreindler LLP immediately by telephone at 212.687.8181 and then delete this message, including any attachments.
_____
This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com
_____

**From:** "Jim Kreindler" <JKreindler@kreindler.com>
**Sent:** Fri, 10 Feb 2017 08:32:32 -0500 (EST)
**To:** "Jack Quinn" <jquinn2000@gmail.com>
**Subject:** Re: the draft complaint

---

Thanks jack. All good points s. Call me when you can

Sent from my iPhone

On Feb 9, 2017, at 11:03 PM, Jack Quinn <jquinn2000@gmail.com<mailto:jquinn2000@gmail.com>> wrote:

Jim -- So sorry I had a brain freeze about your surgery, and I trust you won't look at this till tomorrow. But I want to get it to you given that we have that call scheduled to discuss the draft complaints. I do hope you feel better quickly....


After our discussion the other day, I've spent a lot of time carefully reading both drafts (or sections I received) of the complaints.

I understand what you had to say about having at hand a strong story that will be compelling. But, as I read these documents -- and thought about how others, in the media, Congress, Riyadh and elsewhere will read them -- I came to have these concerns about our story as presented in the draft complaint:

1. I'm worried about the "conclusory" nature of the approach taken. You know the court far better than I do, but Daniels harped on the "conclusory" allegations we made earlier and it worries me greatly that we have very little in the way of references to the sort of proof we will adduce. This is particularly so here where we have been warned that cases involving sovereigns require us to go far beyond notice pleading.

2. This leads to a doubly worrying observation: the absence of cites and detailed factual support in those paragraphs that directly suggest "the Kingdom" knowingly provided material support and resources to AQ in re 9/11 (and the Embassy bombings and a host of other things -- see e.g., paras 25, 32, 39 and others) seems to me to raise the bar beyond what we need to prove (especially, for example, that KSA is liable because the acts of agents like Bayoumi and Thumairy are attributable to KSA). To McCain and Graham and the media outlets that will listen to KSA's PR people, our approach will sound hyperbolic and, I fear, seem like a bridge too far. I think I'd rather educate people why KSA is liable under the law, especially JASTA.

3. Related point -- a lot of this seemingly condemns KSA for knowing things about AQ and not sharing the info with us. But, I'm not sure that makes our case and I think it falls into McCain's and Graham's hands and the arguments he has made that (a) plaintiffs lawyers will go fishing and (b) courts will require other nations to open their sensitive intel files to us in discovery. The USA wouldn't put up wit this, but we will have to once other countries do the same to us. Hence, repeal or amend JASTA -- wall off and protect discretionary functions like intelligence gathering and secrecy. If we don't, Pakistanis with drone cases will be inn court getting our most sensitive information. Far fetched? Maybe, but it will give some people the excuse they might welcome to revisit JASTA, including perhaps in the Administration.

4. I also think this approach is inconsistent with our hopes for settlement. We've long said we will give them a backdoor through which the Kingdom can escape and the charities et al can be scapegoated. This makes that harder with the defendants, the media and, perhaps, the families who will be inflamed.

5. JASTA: This is the reason for the remand to Daniels. And it's what gives us hope that he won't try to dismiss KSA again. I think we make a big mistake not leading with that and explaining what it does and why is is a dramatic game changer, citing the specific legislative history to the effect that it was enacted precisely to able the case to go forward. I think we lose the court, the media and Congress when we bury it behind our litany of factual allegations.

Above all, I think we have to be really careful not to play into the hands of the "fix JASTA" crowd. They've warned that we will make allegations unsupported by facts, calculated to open a treasure trove of discovery material in ways that will pry out sensitive secrets that WE (the USA) wouldn't want to be forced to reveal ourselves. This plays into reciprocity arguments and discretionary function arguments and will likely make our congressional situation more, not less, problematic.

Best to you -- hope when you see this you feel much better than when i wrote earlier....

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                                                                             QUINN_011118

Jack

Jack Quinn

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---

---

CONFIDENTIALITY NOTE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s),you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify Kreindler & Kreindler LLP immediately by telephone at 212.687.8181 and then delete this message, including any attachments.

---

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

QUINN_011119

| | |
|---|---|
| **From:** | "Jim Kreindler" <JKreindler@kreindler.com> |
| **Sent:** | Mon, 13 Feb 2017 12:13:01 -0500 (EST) |
| **To:** | "'Jack Quinn'" <jquinn2000@gmail.com> |
| **Subject:** | RE: KSA Complaint |

Ok. good point

**From:** Jack Quinn [mailto:jquinn2000@gmail.com]
**Sent:** Monday, February 13, 2017 12:10 PM
**To:** Jim Kreindler
**Subject:** Re: KSA Complaint

Will look in detail this afternoon but I think the first paragraph will be controversial in DC. I think it goes down better to state this in terms of the provision of material support to al Qaeda terrorist hijackers by certain employees, agents and officials whose acts are attributable to KSA. I know the senior people are bad guys, but I'm equally sure direct hits on Salman and the Kingdom as an entity (and Bandar) alienates some of our audience -- and I wonder if that is necessary. McCain and Graham will howl that this undermines our intel relationship and demonstrates why JASTA should be fixed. I know that's illogical but they'll do it and Pompeo and others will be provoked to defend KSA inside White House. That might be a setback.

Sent from my iPhone

On Feb 13, 2017, at 11:55 AM, Jim Kreindler <JKreindler@kreindler.com> wrote:

> **From:** Steven R. Pounian
> **Sent:** Monday, February 13, 2017 11:03 AM
> **To:** Jim Kreindler; Justin T. Green; Andrew J. Maloney; Megan Benett; Ilana S. Wolk; John Fawcett
> **Subject:** KSA Complaint
>
> John and I worked on our complaint over the weekend, added JASTA paragraphs, removed several paragraphs that could be taken out of context, added facts and tightened the legal analysis.
> We are still are working on it but I thought it was important to share our current version with the group.
>
> _____
> CONFIDENTIALITY NOTE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s),you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify Kreindler & Kreindler LLP immediately by telephone at 212.687.8181 and then delete this message, including any attachments.
> _____
> This email has been scanned by the Symantec Email Security.cloud service.
> For more information please visit http://www.symanteccloud.com
> _____
>
> <New KSA COMPLAINT (00000002) (00000002).docx>

_____
This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com
_____

_____
CONFIDENTIALITY NOTE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s),you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify Kreindler & Kreindler LLP immediately by telephone at 212.687.8181 and then delete this message, including any attachments.
_____
This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com
_____

**From:** "Goldman, Jerry S." <Jgoldman@andersonkill.com>
**Sent:** Thu, 2 Mar 2017 17:53:29 -0500 (EST)
**To:** "'Jim Kreindler'" <JKreindler@kreindler.com>; "Jack Quinn" <jquinn2000@gmail.com>
**Subject:** RE: Suggested Crowe Resolution

Yes- now that the pleading is done on my end, I'll look at the terminology of the old agreement and make sure that there are no issues of the change impacting the putative class;
Jim and I will speak early in the week and get this done.

jsg

-----Original Message-----
From: Jim Kreindler [mailto:JKreindler@kreindler.com]
Sent: Thursday, March 02, 2017 5:51 PM
To: Jack Quinn
Cc: Goldman, Jerry S.
Subject: Re: Suggested Crowe Resolution

I can review with Jerry and then get back to him

Sent from my iPhone

On Mar 2, 2017, at 5:37 PM, Jack Quinn <jquinn2000@gmail.com<mailto:jquinn2000@gmail.com>> wrote:

Nowhere. I was going to bug you and Jerry after the complaint are filed. It's eating at me and I'd just like to get it behind us. 0.25% is 0.24% more than he deserves, and I think it's galling that he dares to say he's accustomed to being paid for nothing. And he'll never be helpful in the future. BUT, this resolution or any other has to be insisted on by you and Jerry, so this new contract should be presented preferably by both of you. In summary, it is meant to change the old deal from 50/50 to 75/25 and to limit this to the clients represented at the time of the original contracts and not any new clients (not sure how this work re the class).  Can you review with Jerry or should I send a note to you both? I am worried that, with the passage of time, he thinks he's in the clear....

Thanks, Jim

Best,

Jack

Sent from my iPhone

On Mar 2, 2017, at 3:36 PM, Jim Kreindler <JKreindler@kreindler.com<mailto:JKreindler@kreindler.com>> wrote:

Where are you on this?

From: Jack Quinn [mailto:jquinn2000@gmail.com]
Sent: Saturday, February 18, 2017 8:54 PM
To: WTC[jgoldman@andersonkill.com<mailto:jgoldman@andersonkill.com>]; Jim Kreindler
Cc: jack quinn
Subject: Suggested Crowe Resolution

Jerry --

Bob called me a week or ten days ago, but I held off reporting because of all the other activity around the new complaint etc.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Bob knew from Jim that I had suggested reducing Bob from 0.50% to 0.175% but with the opportunity to share in as much as 0.15% additional if he managed a settlement.

He expressed great surprise that anyone would suggest "an 85% reduction" in the guaranteed fee. I asked him what he believes he should be paid for and he essentially said this wouldn't be the first time that he would receive a fee for little work. I, in turn expressed great surprise that this was his response. ((By the way, the proposed reduction is 65%, not 85% and of course he ignored that he could still in theory get up to a third of the 1%.)

Then Bob started talking numbers and indicated that he had expected me to suggest cutting his 0.50% in half. He did not mention a kicker for achieving a settlement, not should he -- indeed, the more I thought about it, the more it struck me that he, like all of us, should already be adequately incentivized to get anything.

In terms of our relative workload to date, I confess to being tempted to counter at an 80-20 split and leave it at that. But Jim and I communicated by email today, and I'm okay to just rework the 50/50 split to 75/25.

This would not reserve anything to hire someone new, but I honestly now think there isn't a game changer out there who could truly deliver. And 75-25 already understates my contribution to our combined effort and this has really always been for me about the "distributive justice" between Bbob and me from our original deal.

In the attached suggested "new deal", I have tried, however, tor cast this as a new contract and a complete one -- AND to limit Bob to a % of only the awards to those clients who were represented as of the dates of the earlier contract, I.e., NOT including newly signed clients such as those subject to the 6-6-6-6-1 deal.

This version was written for K&K and I'm happy to suggest a new one for you, but I didn't want to presume to do that until you so say.


What do you think?



Jack Quinn

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

---

This electronic mail transmission may contain privileged, confidential and/or proprietary information intended only for the person(s) named. Any use, distribution, copying or disclosure to another person is strictly prohibited. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email.

| | |
|---|---|
| **From:** | "Steven R. Pounian" <Spounian@kreindler.com> |
| **Sent:** | Tue, 14 Mar 2017 11:33:59 -0400 (EDT) |
| **To:** | "'Jack Quinn'" <jquinn2000@gmail.com> |
| **Subject:** | RE: Final draft complaint |

Jack,
I wanted to thank you again for your comments, many of which I incorporated into the complaint, and share some of my thoughts.
We don't mention Daniels' prior dismissal in our complaint because our plaintiffs were not parties to that dismissal – when KSA attempts to use that ruling as a basis for a post-JASTA dismissal we can argue not only that JASTA now opens up the field, etc. but that the record on the previous motion was incomplete and did not include relevant facts and legal arguments.
I made changes as you suggested to better highlight the Thumairy etc proof but don't believe it makes sense to headline these allegations as in the Cozen complaint. Daniels already reviewed this proof (in isolation) and determined that plaintiffs failed to show course/scope of employment, among other things. The CA activities are important but I think are best viewed through the post-JASTA lens of KSA's pattern of conduct in supporting AQ around the world for the decade prior to 9/11.
Steve

**From:** Jack Quinn [mailto:jquinn2000@gmail.com]
**Sent:** Saturday, March 11, 2017 4:46 PM
**To:** Steven R. Pounian <Spounian@kreindler.com>
**Cc:** Jim Kreindler <JKreindler@kreindler.com>; Justin T. Green <JGreen@kreindler.com>; Andrew J. Maloney <AMaloney@kreindler.com>; Megan Benett <Mbenett@kreindler.com>; Ilana S. Wolk <IWolk@kreindler.com>; John Fawcett <Jfawcett@kreindler.com>; jack quinn <jquinn2000@gmail.com>
**Subject:** Re: Final draft complaint

Steve --

thoughts in two categories -- first, a couple of broad points about how the "story" reads, and, second, a handful of more specific more or less chickens**t items.

A. the broader points. **First,** I would make more of JASTA than is made in para 2. It's why we are back before D.Ct. And, while we may not want to say it with an inappropriate tone, its enactment was a rebuff of Daniels (and others) in earlier decisions and was explicitly in oder to allow the claims in the cases he dismissed to move forward. So, I'd say more here that strongly suggests that JASTA was premised on a conclusion that, in fact, the plaintiffs before the court were not earlier provided the "broadest basis,....to seek relief." I think without irritating Daniels, we can ensure that readers get right at the start that JASTA represents an insistence that **this case** be viewed through a fundamentally different set of lenses that were used earlier, lenses that, for example, reject a crimped reading of FSIA/ATA that might excuse a sovereign's provision of tangible support for a terrorist attack merely on the geographic reference point of that support or on a constricted view of the law of attribution, agency etc. **Second,** and I know this one is probably more of a pain, I fully appreciate what you're doing with a sequential timeline story, but I would urge reorganizing slightly such that you can move forward the powerful story that starts on the bottom of p. 29 and goes to p. 35, i.e., the Los Angeles Thumairy/Bayoumi/Midhar/Hazmi stuff. This reads in a powerful way and is not one in a long list of evidentiary elements that don't all sing with the same strong voice. So, I might start with it as a lead in to the **actual attack**, and then follow with the rest as a flashback to "the story behind the attack." i think it will hold your audience a little easier.

B. other comments -- references are to paragraphs:

1. "the al Qaeda terrorist attacks" -- because we have a different target, can we in the opening say something like "the al qaeda-led and Saudi-facilitated attacks...."?
2. See above. At the least, we should here be explicit that JASTa was "enacted in September 2016 after the KSA was dismissed from the pending cases...."
3a etc etc -- there are many places, like here where I wonder if it would be safer to use the word "or" instead of "and" -- e.g., we succeed if we can prove that they "raised, laundered OR paid...."
3c. is it safer too say "that permitted al Qaeda operatives to trave" instead to "to permit"? On last line, I would say "enabled" rather than "allowed>"
8. after the list...."(I) were so closely *related"* rather than *"bound"*? And in (ii) I would change a lot of the "ands" to "ors."
9. third line -- "establish al Qaeda "*and/or* provide material support."
10-12. I urge you to consider collapsing these three paragraphs into one. 10 leaves me flat -- BUT if we say KSA adopted Wahhabism....was a core function....advanced it via charities *and al qaeda including by providing financial assistance, knowing that its aim was to carry out terror attacks against U.S.,*I think it becomes a more powerful, albeit longer single

paragraph.
34. Can we be more specific about the last assertion re preventing the attack? If so, I would make it a powerful sentence of its own, not just the end of a string.
35. delete comma on 3d line
36. ""assaulted [or attacked] the cockpits"? Is hijacked right in that context?
37-38. I urge you to make sure 38 isn't redundant and to add here that SA *"through agents, employees, officials and others whose actions are legally attributable to the Kingdom provided tangibleupport, including but not limited to funding...."*
38b etc. Is it Saudi Arabia officials" or "Saudi Arabian officials"?
43k. I would add the "color" that al Aulaqi became AQ spokesman and was taken out in a USG drone strike in Yemen.
56. I would say "Saudi Arabian officials," not "Saudi Arabia's" officials as the latter leads to a plausible attack of overstatement.

That's it. Thanks.

Best,

Jack

*Jack Quinn*

On Fri, Mar 10, 2017 at 12:06 PM, Steven R. Pounian <Spounian@kreindler.com> wrote:

> Hello all,
> Here is the final draft of our complaint.
> Steve
>
> **Steven R. Pounian**
> Of Counsel
>
> Kreindler & Kreindler LLP
> 750 Third Avenue          T: 212.973.3477     ·    E-mail: spounian@kreindler.com
> New York, NY 10017-2703   F: 212.972.9432     ·    Web:    www.kreindler.com
>
> Please consider the environment before printing this e-mail.

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                                                    QUINN_012178