PEX 43

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN MICHAEL QUINN,

    *Plaintiff,*

v.      Case No. 1:21-cv-01824-PDM

KRIENDLER & KRIENDLER LLP, *et al.*

    *Defendants.*

## AFFIDAVIT OF ROBERT H. LOWE

I, Robert Hepler Lowe do depose and say:

1. That I am a resident of the state of California and was at all times relevant to the matters raised in this affidavit.

2. That I am primarily employed as an Actor, Director, and Producer, but I also have business interests that have included a personal and professional relationship with Thomas Barrack, a private equity real estate investor.

3. I was aware that Mr. Barrack had close personal, political, and professional ties with former President Donald J. Trump and served as Chair of his Campaign for Election in 2016.

4. I have been a long-time friend of John "Jack" Quinn and his wife Susana Quinn.

5. I was, and am, aware that Mr. Quinn has, for some time, participated in efforts to secure compensation for victims of the terrorist attacks on September 11, 2001 and the families of the victims.

6. In October of 2017, Mr. Quinn asked for my assistance in forwarding to Mr. Barrack, a proposal that would have the Trump Administration support efforts to obtain compensation for the 9/11 families.

7. Mr. Quinn advocated that the Administration should use its Executive Authority to settle the claims of the victims. His goal was to secure compensation from any or all possible sources, including funding by the U.S. Government, President Trump, the Kingdom of Saudi Arabia, or funding from other sources and he hoped that President Trump would assist in such efforts.

8. Mr. Quinn forwarded to me the exhibit attached as A to this declaration of facts.

9. I, in turn, forwarded that to Mr. Barrack.

10. I am not aware of what further action occurred on the proposal. I do know that Mr. Quinn was actively involved in efforts to secure compensation for the 9/11 families and felt a personal affinity for ensuring that the harm done that day was remedied.

11. As I also support those objectives, I share those goals and was happy to assist in Mr. Quinn's efforts.

12. I have not received and have not sought any compensation for my efforts in facilitating Mr. Quinn's efforts. My desire to help was based solely on my friendships with Mr. Quinn and my shared interest in helping the 9/11 victims and their families.

Further Affiant Sayeth Not.

I swear and affirm, under penalty of perjury, that the above facts are true and correct to the best of my knowledge and belief.

Signed and sworn this 13th day of March, 2024.

_____
Robert H. Lowe

# **HIDDEN IN PLAIN SIGHT – A WIN-WIN-WIN PLAY BY PRESIDENT TRUMP:**

# **RESOLVING THE 9/11 CLAIMS**

President Trump has at hand an opportunity to secure a *legacy-defining* foreign policy victory that would enjoy overwhelming support among the American people – namely, initiating and concluding a state-to-state negotiation and just resolution of the ongoing legal battle between Saudi Arabia and the 9/11 families.

The President has *clear and absolute legal power to settle* the 9/11 cases. He needs no congressional or judicial approval. And, President Trump's leadership on the issue would stand in stark contrast to President Obama's feckless indifference to the 9/11 families and ineptitude in handling the issues raised by the lawsuits.

Putting these disputes finally to rest *would also remove the major impediment to public support for closer U.S.-Saudi relations*, and it would ensure that the Crown Prince is not saddled with this presently intractable problem when he takes the throne and pursues his goal of modernizing the Saudi economy.

The *only likely impediment* to a resolution is likely that the President is *unaware* that a resolution is possible. But it is. *Why would it not be?* There is quite simply *no good reason – no impediment that cannot be overcome* – standing in the way.

Here is why President Trump can take control and secure this victory quickly.

*   *   *   *

The enactment of JASTA (the Justice Against Sponsors of Terrorism Act) over then-President Obama's ill-conceived veto answered the question whether Saudi Arabia can be sued for acts undertaken by its employees and agents in aid of the 9/11 terrorists. The 9/11 case that has been pending in New York federal court (*In re Terrorist Attack on September 11, 2001)* is now moving forward and it will not be stopped except by a settlement among the parties.

*Everyone involved, including the governments, should want to see this case settled.*

For the families, justice has been far too long coming. Children whose parents were killed are now coming of age, looking forward to college, marriage, families of their own. These children, their surviving parents, and others all must finally have the justice due them.

For the Saudis (and perhaps other Gulf countries that lately have been implicated by each other in the 9/11 attacks), their standing in the world, and most certainly in America, is gravely

damaged by their association with 9/11, and, whether they will acknowledge it or not, their interests in full partnership with the United States are compromised by 9/11 on an ongoing basis.

For President Trump, who derided the Obama veto of JASTA as "shameful," his leadership in achieving a resolution will keep faith with the sentiments he expressed as a candidate.

A Resolution Can Be Achieved Through Exercise of the President's Executive Power, Could Allocate Fault to Parties Whose Wrongdoing Has Already Been Acknowledged, And Can Guarantee Finality for the Saudis and Other Parties.

Considerable work has been done with State Department lawyers to resolve any legal questions surrounding a comprehensive resolution of the 9/11 disputes. *No legislative or judicial action is required: The President's constitutional authority to resolve the disputes against the Saudi government and Saudi private parties (or other governments) is beyond dispute.*

Saudi Arabia has long insisted that, as an institution, it was blameless for 9/11. Importantly, a resolution of the 9/11 disputes can be structured around the conduct of other *institutions whose wrongdoing has already been acknowledged by the Kingdom itself*, such as charities that the Kingdom has said were intimately tied to al Qaeda. *We know that this approach is of immense importance to the Kingdom.*

Saudi Arabia also wants the litigation over and never to re-emerge. A state-to-state resolution *can conclude any litigation forever* against the Kingdom and any Saudi citizen or institution for the events of 9/11. *We also know that this finality is of immense importance to the Kingdom.*

The Increasing Importance of the Saudi-U.S. Relationship Is Reason to Put This Conflict Behind Us.

The Administration has made a policy decision to strengthen its ties with the Kingdom. But, the 9/11 disputes are a persistent irritant to, and source of domestic distrust of, the relationship precisely because the disputes are a reminder of the Kingdom's pre-9/11 failures. As long as the Saudis insist of prolonging the conflict with the 9/11 families, they remain locked into an unwinnable debate over their past behavior, thereby undermining their own efforts to emphasize important reforms and our Administration's policy of pursuing broader cooperation.

The Overwhelming Vote to Enact JASTA Demonstrates That the Wise Course Is the Fair One: A Resolution That Gives All Sides What They Need – The Saudis, The Families and the President of the United States.

During the fifteen-year life of the disputes, the Saudis have consistently (and successfully) sought to draw our Executive Branch into the disputes, in both legislative and legal contexts, and public reports suggest they have already tried to do the same with the Trump Administration. President Trump will thus be repeatedly presented with the untenable option of choosing between the interests of (a) the Kingdom and the U.S.-Saudi relationship and (b) the rights of the 9/11 family community that has proven to be a highly effective public advocate. A state-to-state resolution, in contrast, allows for a balancing of those interests delivering justice to the 9/11 families and victims while also bolstering the U.S.-Saudi relationship.