```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   SUSANNA QUINN, Personal
     Representative of the Estate of
 4   John M. Quinn (Deceased),
                                              Civil Action
 5             Plaintiff,                     No 1: 21-1824

 6        vs.                                 Washington, DC
                                              July 15, 2025
 7   KREINDLER & KREINDLER, LLP, et
     al,
 8                                            2:21 p.m.
               Defendants.
 9   _____


10
                  TRANSCRIPT OF MOTION HEARING
11          BEFORE THE HONORABLE RANDOLPH D. MOSS
                  UNITED STATES DISTRICT JUDGE
12

13   APPEARANCES:

14   For the Plaintiff:      Kevin Edward Byrnes
                             Thomas Craig
15                           Grace Williams
                             FH+H, PLLC
16                           1751 Pinnacle Drive
                             Suite 1000
17                           McLean, VA 22102

18
     For the Defendants:     Craig Tarasoff
19                           Emily Kirsch
                             Kirsch & Niehaus PLLC
20                           950 Third Avenue
                             Suite 1900
21                           New York, NY 10022

22

23              APPEARANCES CONTINUED ON NEXT PAGE

24

25
```

```
1                          APPEARANCES CONTINUED

2

3       For the Defendants:        Eric Liebeler
                                   STINSON LLP
4                                  1775 Pennsylvania Avenue, NW
                                   Suite 800
5                                  Washington, DC 20006

6
        Court Reporter            Sherry Lindsay
7                                  Official Court Reporter
                                   U.S. District & Bankruptcy Courts
8                                  333 Constitution Avenue, NW
                                   Room 6710
9                                  Washington, DC 20001

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  Civil case number 21-1824,

3   Susanna Quinn versus Kreindler and Kreindler, LLP, et al.

4          Counsel, please approach the podium, state your

5   testimony for the record, starting with plaintiff's counsel.

6          MR. QUINN:  Good afternoon, Your Honor.  Tom Craig

7   for the plaintiff Susanna Quinn on behalf of the Quinn estate.

8   I am joined at counsel table by Kevin Byrnes and our colleague,

9   Grace Williams.

10         THE COURT:  All right.  Good afternoon to all of you.

11         MR. QUINN:  Good afternoon.  You will notice a number

12  of folks in the gallery, most of them are -- not all of them --

13  but most of them are here with me as well, our summer --

14         THE COURT:  I'm sorry.  Could you speak up a little

15  bit.

16         MR. QUINN:  Our summer associates are here with us

17  today as well.

18         THE COURT:  Well, welcome.  Glad to have you.

19         MR. QUINN:  It is an unusual number of folks maybe in

20  this gallery, but that is who they are.

21         THE COURT:  We have had a very full gallery before,

22  so nothing new.

23         All right.  Thank you.

24         MS. KIRSCH:  Good afternoon, Your Honor.  Emily

25  Kirsch with Kirsch and Niehaus for the defendants, James
```

1    Kreindler, and Kreindler and Kreindler.  With me is Craig

2    Tarasoff, of my firm; Eric Leibeler of Stinson, our local

3    counsel; and Megan Benett and Mr. Jim Kreindler.

4             THE COURT:  All right.  Thank you all.

5             Welcome, everyone.

6             Just before we get going on the arguments today, I

7    wanted to mention one thing that just occurred to me as I was

8    reading through the papers.  And, quite frankly, this case has

9    been going on long enough, I don't remember this is something

10   that previously occurred to me that I previously mentioned or

11   whether this occurred to me simply for the first time now.

12            But I represented, while in private practice

13   obviously more than a decade ago -- I don't know if it was

14   Silverstein Properties or the Twin Trade Centers.  I can't

15   remember who the actual plaintiff was in the case in litigation

16   against the airlines relating to the attack on September 11th.

17   And I don't know enough about your cases to know whether that

18   poses any issue with me serving as the judge in this case, but

19   I wanted to note that and give you the opportunity to let me

20   know whether you think it does pose any issue here.

21            And I should say, I would encourage you if you have

22   the slightest concern, to let me know.  I will not be the -- in

23   the slightest bit offended.  I just want to make sure that

24   everyone is confident that the judge deciding their case is

25   somebody who should be deciding their case.

```
1              MS. KIRSCH:  We have absolutely no objection, Your
2    Honor.
3              MR. QUINN:  I don't think we have any concerns, Your
4    Honor.
5              THE COURT:  Okay.  Well, I appreciate that.  And I am
6    being very candid in saying, I would not be in the slightest
7    bit concerned if -- or troubled if anyone were to raise a
8    concern.  You should feel free to tell me if you think there is
9    a problem.
10             So I have reviewed the materials.  We are here on the
11   defendants' motion -- oh, I'm sorry.  Let's see here.  Yeah,
12   the plaintiff's motion for partial summary judgment.  And I am
13   happy to hear whatever arguments you want to add, so why don't
14   we start with plaintiffs.
15             MR. QUINN:  Good afternoon, Your Honor.  There is
16   actually crossing motions.
17             THE COURT:  Okay.
18             MR. QUINN:  And this was -- we are here today to
19   hopefully assist the Court in resolving these pending motions.
20   Just to remind the Court, we are here originally we -- there
21   was some thought of bifurcating this case to determine the
22   scope of these contracts before moving to a damages phase.  And
23   you ordered us to instead do this -- file these partial motions
24   for summary judgment on the issue of what the contracts meant,
25   right.  And so -- and as I am sure the Court will recall, you
```

1    will certainly not be surprised by there are a variety of

2    issues in dispute by the parties here.  But probably the most

3    important one, and in my view the issue that is likely to

4    ultimately to resolve this matter is the issue that we are here

5    for today, which is what is the scope of these contracts.

6           And in particular, do the contracts between Mr. Quinn

7    and the Kreindler firm, do they cover only recovery directly

8    through the SDNY litigation or settlement -- express settlement

9    of that litigation or are they broad enough to cover recoveries

10   from the administrative funds of the VSST, the Victims of State

11   Supported Terrorism Fund and the VCF.

12          THE COURT:  Is there another permutation on that

13   which would be the enforcement or collection on a judgment

14   obtained in litigation through a claim that is submitted to the

15   fund?  So these cases operate the same way the foreign

16   sovereign immunity cases that are in front of me, there are

17   default judgments entered typically against Iran, sometimes

18   Syria, sometimes other countries that are state sponsors of

19   terrorism.  And the funds -- the payment that was then received

20   by submitting a claim to the fund and then the fund is then

21   subrogated to the claim at that point?

22          MR. QUINN:  That is correct.

23          THE COURT:  So is that treated as a separate category

24   for present purposes?

25          MR. QUINN:  The -- I don't think it is a separate

```
1   category, Your Honor.  I think --
2              THE COURT:  Let me put it this way:  I think there is
3   not a dispute as I understand it between the parties that the
4   Quinn estate is entitled to recover with respect to the SDNY
5   litigation and whatever the net recovery is -- percentage of
6   the net recovery, right?  That is the question I am asking.
7              MR. QUINN:  I don't want to speak for defendants.  I
8   think there is not a dispute that the contracts would cover
9   such a recovery.
10             THE COURT:  Right.
11             MR. QUINN:  They may have affirmative defenses they
12  want to preserve.
13             THE COURT:  Fair enough.  I am aware of that as well.
14             But putting that aside, this may be more of a
15  question for defendants than it is for you.  But how would you
16  at least think about the category of claims where there
17  actually has been a judgment rendered in the Southern District
18  but the claim payment is made through the fund?
19             MR. QUINN:  Well, Your Honor, we would be actually
20  anticipating a chunk of my argument today.  Because what one of
21  our arguments is that we believe that these contracts are
22  written broadly to cover any recovery at any time, anywhere
23  where the Kreindler firm has represented a victim and receives
24  a recovery that Mr. Quinn gets a share of that recovery.  Their
25  position is as I understand it, they are not that broad, they
```

1    only cover the SDNY litigation.  What we would say to that,

2    Your Honor, is that the VSST in this case is essentially the

3    SDNY litigation.  It is an alternative recovery mechanism for

4    the SDNY litigation.  The ticket to enter the VSST is a

5    judgment in that litigation.  And in this case, what is

6    functionally happening is that they are operating with the

7    default judgment against Iran.  And to our mind that makes no

8    difference whether it is the same -- it is -- the claims in the

9    SDNY, as a factual matter -- every claim in SDNY, their claims

10   are factually identical to the claims presented to the VSST.

11   It is the same injury.  And as a legal matter, the VSST is

12   subrogated to recovery in the SDNY.  So that if a plaintiff

13   says, look, I got this judgment against Iran, I can't do

14   anything with it.  So they go to the VSST, which is funded

15   through the funds that are seized from various terrorist

16   organizations and whatnot, and gets a recovery there.  If

17   sometime in the future there is recovery in SDNY, that

18   government has a clawback right to subrogate that claim.  So

19   our view is that even if --

20           THE COURT:  Is it a settlement clawback right or is

21   it just that the government has subrogated the claim and the

22   government can then --

23           MR. QUINN:  I think subrogation is technically --

24           THE COURT:  Okay.

25           MR. QUINN:  Yes, Your Honor.  Because the claims are

1    factually and legally identical, you know, one of our arguments

2    is that even if these contracts are not broad enough to cover

3    what we believe they cover, which is any recovery on behalf of

4    a 9/11 victim obtained by the Kreindler firm, they certainly

5    cover the VSST, because we all agree they cover the SDNY and

6    those are the same claims.

7            And, Your Honor, I can talk a little about why we

8    think that these -- one of the questions the Court asked is, do

9    we need parol evidence?  I don't think you do.  And I would

10   like to talk for a minute about why.

11           THE COURT:  Yeah.  Why don't you walk me through your

12   best reading of the contracts.

13           MR. QUINN:  Sure.  So the contracts are -- probably

14   the easiest to find them by taking a look at Defendant's

15   Exhibit F, if you have all of the exhibits.

16           THE COURT:  I do have the contracts in front of me,

17   but the versions that I am looking at are Exhibit 3 and

18   Exhibit 4 to docket 19-3.

19           MR. QUINN:  Okay.  Sure.  I --

20           THE COURT:  They are all the same.

21           MR. QUINN:  They are the same.

22           THE COURT:  Yeah.

23           MR. QUINN:  So the contracts that I think we all

24   agree control here are the contracts signed in 2017.

25           THE COURT:  Right.

1          MR. QUINN:  There were three of them.  And they are

2    in front of you as dockets 19-3, 19-4, 19-5, right.  So 3 and 4

3    were signed on May 19th, 2017.  So what you are looking at

4    there, Your Honor, is docket 19-3, is -- was signed on May 19th

5    of 2017 and is intended to cover what we call the early cases,

6    which is all of the cases filed on or before July 9th, 2014.

7          And this contract sets out with we think sufficient

8    clarity what we think Mr. Quinn will do, what he will be paid

9    for his actions, where the money can come from and where he

10   will be paid.  And that forms an element of enforceable

11   contract that we don't think is vague or unable to be

12   interpreted.  And what it says is that his role is as counsel

13   to Kreindler and Kreindler.  And it describes two things,

14   broadly speaking that he will do.  One is to assist with JASTA.

15   And I don't think the parties really seriously contend that

16   Mr. Quinn's role in part was to assist in getting JASTA passed

17   to allow Saudi Arabia to be added to the SDNY litigation.  But

18   it goes on, the contract goes on to say that he was also to

19   assist with a reasonable settlement or other resolution of the

20   litigation.

21         And specifically, and I will quote, he was to

22   provide, quote, a sustained effort, using and adhering to legal

23   precedent, statutory requirements, and lawful and appropriate

24   government procedure to accomplish and make effective such

25   advocacy and expeditious and fair resolution of the subject

```
1   claims.
2          So that is broad, but that was his role.  He was an
3   attorney who was advising and assisting Kreindler and Kreindler
4   in obtaining resolution of claims on behalf of the 9/11
5   victims.
6          THE COURT:  But you need to start, I think, up above
7   with the first paragraph, which says, the parties hereto
8   acknowledge the agreement dated July 10th, 2014, and -- as the
9   heretofore sole and governing agreement relating to services
10  rendered by Quinn to K and K in support of the representation
11  of K and K of approximately 2000 clients who are plaintiffs in
12  litigation whose claims were filed as the earlier agreement --
13  as of the earlier agreement in the Southern District of New
14  York asserting wrongful death and personal injury causes of
15  action relating to or arising out of the terrorist attacks.
16         This binding agreement extinguishes and supersedes
17  and replaces any and all prior agreements.  This agreement
18  shall heretofore be the sole basis for an obligation by K and K
19  to Quinn arising in any connection with the litigation or the
20  resolution of it.
21         So that does seem to be related to the litigation
22  rather than to pure --
23         MR. QUINN:  Related to litigation.
24         THE COURT:  -- pure claims processing.
25         MR. QUINN:  It is related to the litigation, Your
```

1    Honor, we don't believe it is limited to the litigation.  And

2    to understand why, we may need to step through the next two

3    agreements.

4              THE COURT:  What is that?

5              MR. QUINN:  We may need to take a look at the other

6    27 --

7              THE COURT:  That's fine.  Let's take a look at that

8    one.

9              MR. QUINN:  The second agreement, which was executed

10   on the same day and likely obviously simultaneously, is you

11   would have there is 19F.  This agreement covers what we think

12   of as the later filed cases, which is cases filed on or after

13   July 10th, 2014.  And it incorporates the one May 19th

14   agreement as to the scope of Mr. Quinn's efforts, what he is to

15   do.  But it does two things -- perhaps more than two things.

16   It increases his percentage from .775 percent to a full

17   1 percent.

18             THE COURT:  Yep.

19             MR. QUINN:  But it also expands the definition of

20   litigation.  So in this agreement, litigation is defined to

21   include all cases and claims arising out of the terror attacks

22   carried out on September 11th, 2001.  So all cases and claims

23   arising out of the terror attacks, clearly broader than the

24   SDNY litigation.

25             THE COURT:  I mean, I suppose that is the question.

1    I mean, it is a little bit odd to use the word litigation to

2    refer to filing an administrative claim.

3                MR. QUINN:  I don't disagree, Your Honor.  But

4    fortunately we have a third agreement that clarifies that

5    point.

6                THE COURT:  Okay.

7                MR. QUINN:  So a few months after that, August of

8    2017, Mr. Quinn and the Kreindler firm concluded the third

9    agreement, which you will have there at 19.

10               THE COURT:  By the way, just before we move off of

11   the May 2017 agreements is the reason that two separate

12   agreements were executed is because they were dealing with the

13   early and later filed proceedings --

14               MR. QUINN:  Yes.

15               THE COURT:  -- or claims?

16               MR. QUINN:  There is a second part of that, which is

17   that in the earlier claims there was acknowledgment there was

18   another attorney.

19               THE COURT:  Yes.

20               MR. QUINN:  Mr. Crowe.  So the earlier claims, the --

21   Mr. Kreindler was only getting .775 in order to allow that .225

22   to Mr. Crowe.  And that is not necessarily clear from the face

23   of this, but that is the reason.  And the later claims bumped

24   him up to the full 1 percent.

25               THE COURT:  So where is it in the first of the May

1    2017 contracts that it says that it applies only to the earlier

2    filed claims?

3              MR. QUINN:  It is in the second full paragraph, Your

4    Honor.

5              THE COURT:  Okay.

6              MR. QUINN:  I'm sorry.  Where is it?

7              Oh, it does not.  It only -- it only says it in

8    the -- I apologize.  It is only -- the second agreement carves

9    out the later agreement, so it is --

10             THE COURT:  I see.

11             MR. QUINN:  It is by function of the second agreement

12   saying the later will be treated differently than the --

13             THE COURT:  Any understanding of why that was done

14   that way?

15             MR. QUINN:  To be candid, Your Honor, two lawyers

16   that should have hired a third lawyer to write this.

17             THE COURT:  Yes.  I have had that thought throughout

18   this litigation.

19             All right.  Okay.  Fair enough.  So you are going to

20   take me to the third agreement now.

21             MR. QUINN:  So if you -- so perhaps parties had the

22   same thought as you did, Your Honor, because the third

23   agreement -- the principle approach of the third agreement at

24   least from the face of the document is to define the term

25   litigation to make it clear that the litigation does not mean

1    just the SDNY litigation.  And see there is three numbered

2    paragraphs.

3              THE COURT:  I do.

4              MR. QUINN:  And the first numbered paragraph says,

5    references in the maintained agreement, so the two documents we

6    just looked at, to the litigation contemplated and include the

7    provision of services in cases --

8              THE COURT:  I'm sorry.  Can I ask you in general, not

9    just for you, but anyone when they are reading, you tend to go

10   fast and it is very hard for the court reporter to -- hard for

11   me to keep up and hard for the court reporter.

12             MR. QUINN:  It has been a consistent complaint

13   throughout my career, Your Honor.

14             THE COURT:  It is not you.  Anytime anyone reads they

15   do that.

16             MR. QUINN:  Contemplate and include the provision of

17   services in cases filed, to be filed or for which Kreindler and

18   Kreindler is retained to file or otherwise provide services in

19   connection with matters arising out of the attacks.

20             So the term litigation here is defined expressly to

21   be broader than litigation.  It is cases whether they are filed

22   or not, or any cases where Kreindler and Kreindler is retained

23   to provide services of any kind in connection with the attacks.

24             THE COURT:  Right.  But the word "case" typically

25   does not include, I wouldn't think just as a matter of common

```
1    usage an administrative claim.  You wouldn't say, you know, I
2    went down to the Crime Victims' Fund and I filed my case today.
3    You would say, I filed a claim.
4               MR. QUINN:  You would call that a claim, Your Honor.
5               THE COURT:  Right.
6               MR. QUINN:  If you take a look at the second
7    paragraph of this agreement, it says, in addition to the other
8    basis of compensation, Quinn shall receive compensation as
9    specified in each of the May 19 agreements for representation
10   of each client on whose behalf K and K has filed claims and
11   receives fee and shall also receive the same level of
12   compensation for the representation --
13               THE COURT:  I'm sorry.  Can you slow down again?
14               MR. QUINN:  Of each client on whose behalf K and K
15   has filed claims and receives fee -- that is K and K receives a
16   fee -- and shall also receive the same level of compensation
17   for the representation of clients on whose behalf claims are
18   not filed in the litigation, but have retained K and K to
19   assist in recovering compensation whether through the filing of
20   claims or otherwise.  And who, in fact, receive recovery with
21   respect to which K and K receives a fee.
22               So that answers the question you just had, Your
23   Honor, which is, yes, cases usually -- we usually use cases in
24   litigation -- I am not sure that is always how that is used.
25   But here this is express, if you file claims.  Whether you
```

1    filed in litigation or not, if you file claims, you have been

2    retained to assist in recovering compensation whether through

3    filing a claim or otherwise.  So what else would that refer to?

4            THE COURT:  Okay.

5            MR. QUINN:  So we think that language is pretty

6    clear, Your Honor, and it covers not just the litigation.  I

7    don't see how it can read to be limited to the SDNY litigation.

8    It expressly says, even if you don't file litigation but you

9    file a claim and you are doing something to get paid on that

10   claim, I get my share.  That is what it says.  We think that

11   language covers the VCF and the VSST.  As we discussed earlier,

12   even if it did not, the VSST and the SDNY litigation -- the

13   VSST is nothing more than an alternative recovery mechanism for

14   the SDNY litigation, so it would be pulled back into the bucket

15   regardless.

16           THE COURT:  I suppose another possible reading of

17   this would be Mr. Quinn was entitled to compensation if

18   somebody retained K and K to file a claim in litigation, but

19   was able to obtain payment or compensation before they actually

20   had to file the lawsuit.  So they do what lawyers will do

21   sometimes, they draft the complaint, they send it off to the

22   opposing party and they say, we are getting ready to file this

23   thing, but we would be delighted to settle with you before we

24   file.

25           MR. QUINN:  Of course, at the time this was written,

1    Your Honor, the SDNY litigation had been pending for 15 years.

2              THE COURT:  Right.  But were there any new potential

3    targets at that point?  I don't know enough about the

4    circumstances.

5              MR. QUINN:  I don't know.  I am sure there were

6    late-found claimants.  I don't know.

7              THE COURT:  I don't mean so much -- well, I guess it

8    could be late-filing claimants or I guess it could also be late

9    identified defendants in that something has happened in the

10   world that has allowed -- lower the barrier to sue perhaps than

11   might have otherwise existed or where some new government

12   report has come out that said there is another entity it turns

13   out that there is reason to think that, for example, Iran was

14   involved or something along those lines.

15             MR. QUINN:  It is not clear to me, Your Honor, that

16   amending their agreement in this manner would be necessary to

17   include such language.

18             THE COURT:  Well, it might be if the earlier

19   agreement only applied to claims filed in litigation if the

20   litigation was never filed and it was settled before the

21   lawsuit was actually filed.

22             MR. QUINN:  I don't know, Your Honor.  I would

23   suggest that still doesn't cover the breadth of this

24   definition.

25             THE COURT:  Explain to me why that is.

1          MR. QUINN:  Because, again, referring to paragraph

2     2 --

3          THE COURT:  Yes.

4          MR. QUINN:  -- of each client on whose behalf K and K

5     has filed claims and receives fee and -- and so this is another

6     thing, right -- and shall receive the same level of

7     compensation with the representation of clients on whose behalf

8     claims are not filed in litigation, but have retained K and K

9     to assist in recovering compensation whether through filing

10    claims or otherwise.  I think that the plain simplest reading

11    of language is that it would cover anyone for whom K and K was

12    seeking recovery.  I think it is -- with respect, I think it is

13    a little bit of a stretch to assume that means some kind of

14    negotiation with a new party 15 years into an ongoing

15    litigation.

16         THE COURT:  Yeah.

17         MR. QUINN:  I think it is expressly designed to cover

18    the administrative.  And there is some context around this that

19    I think is helpful.  We have said, you don't need parol

20    evidence and we believe that.  But both parties have presented

21    parol evidence regardless of saying that.  And so I think -- I

22    like to highlight just a little -- I think again, in all

23    candor, post execution parol evidence is of limited value, in

24    my opinion.  Right, both parties have made.

25         THE COURT:  It's like post-enactment legislative

1    history?

2         MR. QUINN:  Right.  Both parties have made, you know,

3    statements about what they believe now, the contracts meant.

4         THE COURT:  Although I would say, I think you are

5    right that perhaps prior parol evidence is arguably more

6    probative.  But I think that post execution parol evidence

7    could still be helpful, because when you are in an ongoing

8    business relationship with somebody, and I say to you, no, no,

9    no, when I said 10,000, I meant $10,000 not 10,000 pennies.

10   And you say, no, I meant 10,000 pennies.  If you are in an

11   ongoing business relationship you sit down at that point and

12   say, look, if that is what you think it meant, I am not going

13   forward anymore.  I am stopping right now.  And you are saying,

14   if you think that is what it meant, you are darn right you are

15   not going forward and you work something out.

16        MR. QUINN:  Sure.

17        THE COURT:  And, in fact, if someone doesn't push

18   back, if you say you owe me $1 million and someone doesn't

19   respond by saying, what are you talking about, I haven't

20   promised to pay you anything, that is probative in some way.

21        MR. QUINN:  I agree.  I am not saying that it

22   is useless.

23        THE COURT:  Okay.

24        MR. QUINN:  I am just saying that is what we mostly

25   have to deal with here.  And like our -- a lot of parol

1    evidence comes out for us.  You wouldn't expect me to say

2    something different.  But I want to point out a couple of

3    things that I think are helpful.  I think the context in which

4    these agreements were signed is helpful.  And I think the

5    context in which something is done can be parol evidence in a

6    sense.  And I think both parties kind of must agree to this

7    because I think we see some of this context in defendants'

8    papers as well.

9              So in -- first of all, the general context of the

10   effort, you know, after these attacks are, you know, I think

11   somewhat of a credit to our profession.  And a lot of attorneys

12   rallied around to try to get some kind of relief for these

13   victims.  And many times they teamed up and worked together and

14   it was Mr. Quinn's consistent position, reflected in his

15   deposition.  I don't have a cite for you.  But that he felt

16   this was a -- the idea was, we are all working together.  We

17   are going to do our best to try to get something.  And if we

18   do, we are all going to share in it.  And now, obviously, that

19   doesn't -- that doesn't change the words on these agreements,

20   but just context.

21             In -- specifically the context of the 2017

22   agreements, so one of the things that the defendants point out

23   in the papers, which they are correct about, is that in 2017,

24   you know, President Trump had just taken office.  And --

25             THE COURT:  I'm sorry?

1              MR. QUINN:  President Trump had just come into office

2     in 2017.  Mr. Obama had tried to get a state-to-state

3     resolution of the issues from the Saudis and failed.  There was

4     a hope Mr. Trump could do better.  In the end, of course, he

5     did not, but there was hope.  And one of the things that they

6     argue was, well, one of the reasons why Mr. Quinn wanted these

7     amendments was to make it clearer that if there was a

8     state-to-state resolution, in other words, Saudi Arabia were to

9     establish a fund of some type that would pay these victims he

10    would take from that fund.  It is not perfectly clear to me why

11    that fund you would take from, but not the VSST fund.  To me,

12    it is the same situation, but that is their argument.

13             But I would also point out to the Court there is

14    something else happening in 2017.  2017 was when the VSST

15    statements started to be made.  So the -- and I believe it was

16    February 2017, was when the first applicants to the fund were

17    informed that they would be paid and that payments actually

18    started to flow in March of 2017.  These contracts were

19    executed in May of 2017.  And one unusual aspect of these

20    contracts that you may have noticed, Your Honor, is that they

21    are all made effective as of 1 January.  And the context

22    explains why.

23             They didn't need to be made effective 1 January to

24    encompass a state-to-state solution.  That had not been -- not

25    happened yet.  They needed to be made retroactive to 1 January

1    to encompass the VSST payments that had been made earlier to

2    2017.  So that context we think is important.

3              I mentioned this, but it is worth, you know,

4    reiterating that I think it is fair to say that based on

5    Mr. Kreindler's testimony that the defendants would agree that

6    there were administrative -- that Mr. Quinn could have taken --

7    could have been entitled to a fee from settlements that came

8    from administrative funds.  Their argument is not it has to

9    come directly out of litigation.  They agree, for example, as I

10   mentioned earlier that an international fund set up by the

11   Saudis, that would do it.  But their consistent argument has

12   been that it has to be paid for by the Saudis, that only the

13   Saudi money is available to Mr. Quinn.  Nothing in these

14   agreements say that.  I think that the fact they have

15   acknowledged that administrative funds are a possibility

16   informs the Court's understanding of whether the VSST and the

17   VCF were also -- would also be possibilities.

18             Finally, Your Honor, you mentioned that one of the

19   elements of post, you know, execution parol evidence can be

20   interesting is how parties react to each other's positions.

21   And so I would point the Court to one of the Defendant's

22   Exhibits, Defendant's Exhibit Z.

23             So --

24             MS. KIRSCH:  Excuse me.  Do you have an extra copy?

25             MR. QUINN:  I don't.  I can hand up mine, Your Honor.

1    I remember what it says mostly.  I believe it is 5629.

2              THE COURT:  I have got it now.  Thank you.

3              MR. QUINN:  I believe it is 5629.  I apologize.

4              THE COURT:  Yep, I have it.  Thanks.

5              MR. QUINN:  Okay.  They cite this document, Your

6    Honor, for the proposition that Mr. Quinn never asked about the

7    VSST until 2020.  So they say this is post-execution parol

8    evidence.  Here is the first time in their view that Mr. Quinn

9    complained that he wasn't being paid for the VSST payments.

10   And what his document is, as you will see, it is an email from

11   Mr. Quinn to Mr. Kreindler.  And he says -- he starts by

12   saying, I have to vent a little.  And if you indulge me a

13   little bit, Your Honor, I will read you parts of it.  First

14   full paragraph he says, "As I think about where we are, I can't

15   help but see and hear Chuck Schumer assuring me that we will at

16   least get fees from the new Victims of Terrorism Fund.  And

17   pointing at me, he said, we are going to fund this for 10

18   years.  Now my client/cocounsel take the position that the

19   assurance doesn't include me, a position that can only reflect

20   with certainty that they refuse to actually read our

21   contracts."

22             This is exactly the situation that you described,

23   Your Honor.  He is learning from Mr. Kreindler, we are not

24   paying you and he is complaining about that.  There is another

25   important fact here, Your Honor, one of the consistent themes

1    of their argument is that Mr. Quinn didn't work on the VSST.

2            And they characterize this document by saying that --

3    I don't remember their exact words, but basically Mr. Quinn

4    happened to be with Mr. Schumer and he errantly looked at him

5    and made a comment about the VSST.  I don't think that is a

6    fair reading of this document.  It seems clear from this

7    document that Mr. Quinn was talking to Senator Schumer about

8    the VSST.  And Schumer was make representations to Mr. Quinn

9    about how it would be funded.  He was clearly working on this

10    matter.  And he is -- he is upset.  If you read the balance --

11    I won't take the time, but if you read the balance of this

12    email, he is mad.

13            This is not some disingenuous like, hey, money is

14    flowing, let me get my beak in there.  He is pissed because he

15    understands these contracts to cover these payments.  He's

16    working on these payment plans and he is not getting paid.  And

17    so I think all of the plain language of these contracts

18    certainly encompass VSST and we think also VCF.  We think that

19    any parol evidence that is available would support that

20    conclusion.

21            THE COURT:  Okay.

22            MR. QUINN:  Thank you, Your Honor.

23            THE COURT:  Thank you.

24            All right.  Ms. Kirsch.

25            MS. KIRSCH:  Good afternoon, Your Honor.

1          THE COURT:  Good afternoon.

2          MS. KIRSCH:  I think what might make the most sense

3     is for me just to respond to some of the things that were just

4     addressed rather than making a presentation from the beginning,

5     if that is all right.

6          THE COURT:  Whatever you want to do is fine with me.

7          MS. KIRSCH:  I was going to lead off with -- which I

8     know the Court does not need to be reminded, but the way parol

9     evidence and context is used.  I think that there is no

10    disagreement here that on summary judgment contracts

11    construction -- we are looking to see if these contracts are

12    actually reasonably susceptible to more than one meaning.  And

13    in order to do that, we need to look at the context to

14    understand what the words mean.  Not the subjective intent of

15    the parties necessarily, but just understand the words on the

16    page.

17         THE COURT:  Would you agree that if I conclude that

18    the contracts are themselves not clear and that the parol

19    evidence does not -- that there is a dispute of material fact

20    with respect to whether the parol evidence resolves that lack

21    of clarity or, in other words, that there are bits and pieces

22    in the parol evidence that help and hurt each side that just

23    means this is just a question for the jury?

24         MS. KIRSCH:  I think that is generally the framework.

25    I think it sort of goes in steps, right.  So there is the plain

1    language, there is the objective extrinsic evidence that helps

2    illuminate what the words on the page means.  I think the

3    language is what reasonable parties in the position of the

4    contracting parties would have thought the words meant.  If

5    once we look at the context, then the contracts are still

6    susceptible of two different meanings, then we look to the

7    parol evidence.  If the parol evidence doesn't shed light on

8    what the parties intended the word to mean, then I would agree

9    with you, nobody gets summary judgment and we move on to trial.

10    THE COURT:  But I am agreeing with you up to maybe

11    the last -- just the way you put the last point.  It is not so

12    much the question of whether it sheds light on it, but whether

13    it indisputably sheds light on it.  So, for example, there may

14    be portions of the parol evidence that shed light on it one

15    way, portions that shed light in another way.  And a reasonable

16    fact finder could reach different conclusions about how that

17    light is shed or whether it is meaningful light that is shed.

18    MS. KIRSCH:  I agree with that, of course.

19    THE COURT:  Okay.

20    MS. KIRSCH:  I think this is an unusual case, because

21    we really do have the record that we were working from in front

22    of us.  So, for example, we were just looking at Exhibit Z,

23    which was an email that Mr. Quinn had written.  Unfortunately

24    Mr. Quinn has passed.  We could call Senator Schumer to testify

25    about what that meeting happened, but --

```
1              THE COURT:  You could call and he probably wouldn't

2    respond, but you could try.

3              MS. KIRSCH:  I wasn't going to call him.

4              THE COURT:  Yes.

5              MS. KIRSCH:  I do think there is -- we do have a

6    fairly -- unfortunately our record is pretty complete and so it

7    depends on what questions one expects.  We can't be judging

8    credibility of testimony, so it is a difficult situation.

9              THE COURT:  Right.  But, I mean -- I think that is

10   fair, but it is also -- I mean, I understand that there is a

11   pretty complete record here.  But it is also just a question

12   institutionally of what my role is versus what the jury's role

13   is.  And my role is only to resolve it if no reasonable jury

14   could reach the alternative conclusion looking at either the

15   plain language or really looking at the parol evidence.  And

16   that if I conclude that there is reasonable ground for a

17   dispute -- you are right, first I have to conclude just the

18   plain language is not clear.  And I am not answering that

19   question yet.  I want to hear from you on that.  But if I

20   thought the language was not clear, and I thought that there

21   was not parol evidence that indisputably clarified the

22   language -- and I think you're right that the first step is

23   just objectively to determine whether the parol evidence adds

24   context, which explains why things were done the way they were

25   done.
```

1          If I get past those two and we then get on to the

2     parol evidence more generally as to what the parties intended,

3     unless I conclude that no reasonable jury could reach one or

4     the other conclusions here, then just institutionally I would

5     have to say, well, it is not my decision, even if I would have

6     thought this is the right answer, I have to leave it to the

7     jury.

8          MS. KIRSCH:  That is correct.  The only thing that I

9     would -- I agree with that 100 percent.

10         THE COURT:  Right.

11         MS. KIRSCH:  The only thing I would add -- and I do

12    think it is something that we took issue with with plaintiff's

13    briefing, which is that we are on essentially summary judgment.

14    And so to create a material issue of fact, it has to be a

15    genuine issue of fact.  It is not enough to say, we don't think

16    so.

17         THE COURT:  True.

18         MS. KIRSCH:  So it does have to be a question of

19    record evidence that does dispute the fact.

20         I think what we could do is -- I would like to work

21    backwards and just address some of the things that were just

22    discussed about the August amendment.

23         THE COURT:  Yes.

24         MS. KIRSCH:  Which is -- I have it as -- I'm sorry.

25    I am using a different version, I am in DEX G, but I think it

1    is Plaintiff's Exhibit 4.

2            THE COURT:  Yeah, I have it in front of me.

3            MS. KIRSCH:  I think what is very important here is

4    when you look at the beginning of paragraph 2 -- and here is

5    where we are talking about context -- it begins, "In addition,

6    to the other bases of compensation."  So we know from the

7    beginning, paragraph 2 is adding something new to that which

8    went before.

9            THE COURT:  Right.  Yep.

10           MS. KIRSCH:  So the question then becomes, what is it

11   that it is adding that is new?  The plaintiff has asserted

12   throughout that -- and we disagree completely.  We'll get to

13   that.  That the funds were already encompassed in the parties'

14   agreement.

15           So the notion that we are now talking about

16   plaintiffs who haven't filed yet in the litigation, must mean

17   the funds, that -- their argument is not that that is new.  We

18   have to figure out how to read this.

19           THE COURT:  So assume for a minute that I disagree

20   with that and I think it is not clear up to this point that the

21   funds are included and I have to conclude this is something

22   new, what is it that this is covering?

23           MS. KIRSCH:  So what it is covering is I think at

24   least two things:  Number 1, exactly what Your Honor

25   identified, which is that there might be some plaintiffs that

```
1    get signed up and it is presented to the defendants that they
2    have got a lawsuit and it gets settled before actually filing.
3            And the second thing is --
4            THE COURT:  Was that going on?  I mean, have any of
5    the lawsuits settled?
6            MS. KIRSCH:  Yes.  There weren't settlements, but
7    what had happened and I think it was around this time -- and my
8    client has told me what the litigation -- what the legislation
9    was -- they had just extended the statute of limitations for
10   9/11 claims.  So there were new cases coming in that they were
11   trying to get filed or not filed and pulled together, so there
12   were new clients coming in at that time.  The other piece of it
13   though -- and I think the bigger piece is, there was optimism
14   in light of Donald Trump -- President Trump's first term.  He
15   made Saudi Arabia relations his top priority.  His first trip
16   was to go to Saudi Arabia.  It happened -- the Riyadh Summit
17   was actually May 20th and 21st, right after the May agreements
18   were signed, the next day.  And they signed a 300-something
19   billion dollar arms deal.  There was great optimism that
20   President Trump was going to do a deal.
21           And if you have in front of you Exhibit 52, this is
22   an email dated August 5th, 2017 just before -- in advance of
23   the August amendment.
24           THE COURT:  Give me just a second here.
25           MS. KIRSCH:  I have an extra copy, if that is
```

1    helpful.

2              THE COURT:  I'm sorry.  What was the -- Exhibit 52,

3    you said?

4              MS. KIRSCH:  Plaintiff's Exhibit number 52.

5              THE COURT:  Okay.  I got it.

6              MS. KIRSCH:  Let me just go back for a moment.  I may

7    have been unclear.  In looking at this August amendment, the

8    point that I was making was it is the plaintiff's argument,

9    they say so, that the August amendment was just further

10   unifying the language.  The plaintiffs argue that the funds

11   were incorporated and included in the earlier agreements.

12             THE COURT:  No, I understood that.  I am just not

13   sure I was convinced by their argument up to that point.  But I

14   mean --

15             MS. KIRSCH:  I see.  Okay.

16             THE COURT:  For transparency to -- it is always

17   helpful for you all to know what is going through my head.  I

18   thought there was -- I actually thought that there was

19   substantial ambiguity about when we are talking about cases and

20   the definition of litigation up until you get to that paragraph

21   2.  And I did think that Mr. Craig -- maybe his premise was

22   different, but that he made some good points about paragraph 2

23   there, in which it does seem to reach beyond the litigation.

24   So I just want to understand, if he is not right that it

25   includes administrative claims, what it does include then?

1           MS. KIRSCH:  So Exhibit 52 I think is helpful on this

2    point.  On August 5th, 2017, Mr. Quinn writes an email to

3    Mr. Kreindler and he says, as I mentioned, Jerry -- and that

4    refers to Jerry Goldman, who was a lawyer at Anderson Kill, one

5    of the other plaintiff's law firms in the 9/11 cases who also

6    represents a different set of 9/11 victim plaintiffs and with

7    whom Mr. Quinn had a different arrangement or was a very

8    similar arrangement, but -- and he says this as he is proposing

9    this August amendment, The attached short form amendment does

10   these things, paragraphs 1, 2, the first two things -- I think

11   he means address -- his -- which refers to Mr. Goldman --

12   correction of my interchangeable use of litigation and matter.

13           So it is a pretty short, simple sentence that

14   suggests that we are just cleaning up drafting and not actually

15   creating a sea change of the meaning of litigation.

16           He then says, "More importantly "-- as he points out

17   -- "he is gathering clients with respect to whom he may never

18   actually file a claim but still achieve a recovery and get a

19   fee via settlement or other resolution," which suggests very,

20   very strongly that that is what we are talking about, that

21   there are new plaintiffs coming in who may not have an

22   opportunity to file their claim in the lawsuit.  But should the

23   lawsuit be settled or there be some diplomatic resolution to

24   the lawsuit, it is possible that these newly identified

25   plaintiffs may be able to access the funds that are part of the

1    settlement without actually having had to file a claim.

2            And as Your Honor will recall up to this point, in

3    order to -- I will go back through this -- in order to separate

4    from Mr. Crowe all that is incorporated in Mr. Quinn's fee so

5    far are the plaintiffs who filed pre-2014 and plaintiffs who

6    filed post-2014.  So the idea that there are some who may not

7    get their claims, their short form amendment sign onto the

8    complaint on file, before this hypothetical, fantastic deal

9    happens that President Trump is going to do with Saudi Arabia,

10   which sounds very quaint to us now because we are nine years

11   later and it hasn't happened.  But these new plaintiffs who

12   don't have an opportunity to get their claims on file, but

13   might be able to access the settlement funds provided by the

14   defendants to the litigation in connection with the resolution.

15           That is the new thing that is being added in

16   paragraph 2.

17           THE COURT:  So let's just look at the language sort

18   of word by word here then.  "In addition to the other bases of

19   compensation," so I take it what you are saying is the other

20   bases of compensation are the May agreements, which provide in

21   your reading, that Mr. Quinn gets payments both for the earlier

22   and later filed litigation, the rate --

23           MS. KIRSCH:  But all for the settlement or

24   resolution --

25           THE COURT:  Yes.

1          MS. KIRSCH:  -- of the litigation.

2          THE COURT:  Through settlement or resolution of the

3     litigation.

4          MS. KIRSCH:  Not to confuse matters, but there is

5     actually a third piece which is that he also negotiated to get

6     his percentage off of any additional funds that might be

7     awarded by the Court to the Kreindler firm for their role as

8     being on the plaintiff's executive committee.

9          THE COURT:  Yes, I recall that as well.

10          MS. KIRSCH:  Okay.

11          THE COURT:  So in addition to those bases, so

12     something else beyond that, "Mr. Quinn shall receive

13     compensation as specified in the agreement," so at the same

14     rate, "for the representation of each client on whose behalf K

15     and K has filed claims and received fees."  So that is actually

16     having filed claims, so that can't be referring to the

17     settlement before filing --

18          MS. KIRSCH:  I think that is just --

19          THE COURT:  -- scenario.

20          MS. KIRSCH:  I think that is sort of shorthand

21     repeating what is already in the prior agreements, now we are

22     getting to the thing that is new, I think.

23          THE COURT:  That is sort of a strange reading of it.

24     I mean, so what you are saying is that in addition to the other

25     bases for compensation (here, I am telling you what they

1    are) --

2         MS. KIRSCH:  Right.

3         THE COURT:  And then it says, "He shall also

4    receive" -- so your view is that the clause that says, Quinn as

5    defined in the May agreement shall receive compensation as

6    specified in each of the May agreements for representation of

7    each client on his behalf, K and K has filed claims and

8    receives compensation, is purely definitional.  It is referring

9    to -- it is simply defining what the clause bases -- the other

10   bases of compensation means?

11        MS. KIRSCH:  That is my belief, yes.

12        THE COURT:  Okay.  You may be right, but I just feel

13   as though we are in the world of lack of clarity with respect

14   to it.  And I mean that is not an implausible reading of it.

15   It may not be the most natural reading.

16        MS. KIRSCH:  I actually -- I don't disagree with you

17   on that -- I would like to think that I wouldn't have written

18   it quite that way.  I don't know how else to read it.

19        THE COURT:  Although, you know, there is not even a

20   comma after fee, so if it -- if it were a parenthetical

21   definition, you might have expected a comma after fee before

22   you then move on to say what the additional.

23        MS. KIRSCH:  I will be very transparent with Your

24   Honor, I don't know how else to read that first clause other

25   than just a recitation of the existing compensation.  And then

1    we get to the, "shall also."

2            THE COURT:  I think what your opposing colleague

3    would say, what it means in addition to whatever he was --

4    strike that.  Maybe this isn't what he would say because he

5    says that Mr. Quinn was entitled to the claims filing all

6    along, but let me modify this and say, if I disagree with him

7    up until this point you might plausibly read this to say, the

8    May 19th agreements entitled him to payment for the amounts

9    awarded in litigation as well as the common fund.  And this is

10   saying, in addition to that, he is going to get compensation

11   for claims.  And claims is broad in litigation and would

12   include administrative claims.  And also -- and then you go on

13   after that, so I think that is the alternative reading of this

14   paragraph.

15           MS. KIRSCH:  I believe the term claims -- obviously,

16   one could say I am filing a claim in an administrative fund.  I

17   don't dispute that is a usage.  But here, it is important --

18   there are cases and claims.  And the reason it matters is when

19   we go back to the May agreements, there is cases that may have

20   been filed pre-2014 but a new plaintiff through this short form

21   amendment may sign onto that case, but that would be referred

22   to as a claim that is post-2014.  And it matters because there

23   is a different fee associated with each.

24           There really wouldn't be claims post-2014, because

25   all of the cases were sort of in existence.  They just get

1    changed and added to.

2          THE COURT:  Right.  I suppose another potential

3    reading of this -- and, again, adding to the notion that there

4    is some lack of clarity here, would be addition to the other

5    bases of compensation, that is the common fund, Mr. Quinn shall

6    receive compensation as specified in the agreements for claims

7    that are filed, that is in litigation, and shall also receive

8    compensation for claims that are never actually filed, but that

9    are contemplated in litigation.  I suppose that is another

10   potential reading of this.

11         MS. KIRSCH:  I apologize, Your Honor.  I actually

12   didn't follow that.

13         THE COURT:  I am just trying to give meaning to these

14   words here.  And what I am suggesting is one possible

15   construction is in addition to the other bases of compensation,

16   what are the other bases?  Well, given the fact that the next

17   sentence talks about compensation for claims that are filed,

18   that must refer to the common fund compensation, because that

19   is the only other preexisting form of compensation that would

20   have been agreed to.  So in addition to the other basis for

21   compensation, that is the common fund, he also gets paid

22   something for the claims that actually filed in the litigation

23   and to clarify, he is also going to get compensation for claims

24   that were not filed, but that were prepared or anticipated

25   filing.  Are you following me or not?

1          I am not suggesting this is right.  I am trying to

2    give meaning to as many of the words on the page as I can here.

3          MS. KIRSCH:  I am not entirely sure that I follow.

4          THE COURT:  Fair enough.  You don't need to worry

5    about it.

6          MS. KIRSCH:  I think again, to go back to PEX --

7          THE COURT:  Just to make sure I understand your point

8    though is that -- just to understand your position, is that

9    your position is that what this means in addition to the other

10   bases for compensation that is, Quinn shall receive

11   compensation as specified in the earlier agreements and that

12   is, he shall also receive the same level of compensation for

13   claims that are not actually filed.

14         MS. KIRSCH:  Yes, that is how I read that.

15         THE COURT:  Okay.

16         MS. KIRSCH:  And, again, I think I have explained and

17   I think Your Honor has followed me -- and it is what is written

18   in PEX 52 by Mr. Quinn, again, that there -- at this time, the

19   August amendment paragraphs 1 and 2 together are intended to

20   speak to the clients who are being gathered with respect to

21   whom they may never file a claim, but still achieve a recovery

22   and get a fee via settlement or other resolution.  That is what

23   is going on in paragraph 2.

24         THE COURT:  That is certainly what the last paragraph

25   or the last clause in paragraph 2 is about.  I think you are

1    right about that.

2         MS. KIRSCH:  That -- yes.  That is what that refers

3    to.  The other point that I would make about, again, I don't --

4    I think there is plenty that is --

5         THE COURT:  Let me ask you another question about

6    this before you move off of that.  That last clause in

7    paragraph 2 says, Shall receive the same level of compensation

8    for the representation of clients on whose behalf claims are

9    not filed in litigation, but who have retained K and K to

10    assist in recovering compensation whether through the filing of

11    claims or otherwise.  And what does the "or otherwise" mean

12    then?

13         MS. KIRSCH:  Accessing a Saudi-funded pool of money

14    in compensation.

15         THE COURT:  How is that not at least ambiguous for

16    present purposes to say, I am going -- we are going to pay you

17    for whatever you do otherwise and we are like, what does

18    otherwise mean?  You know, maybe if you can point me to

19    something that is really definitive in the parol evidence on

20    this, but as a matter of contract construction, I can't imagine

21    a world in which the Court could conclude that or otherwise

22    clearly refers to the Saudi funds and not to, for example,

23    filing claims in an administrative proceeding.  I don't know

24    how I could possibly say, you know --

25         MS. KIRSCH:  Well.

1           THE COURT:  I know how to read and "or otherwise"

2      means Saudi Arabia.

3           MS. KIRSCH:  I think the answer to that is -- and I

4      can go back and start with the context, because if you look at

5      it chronologically, it makes more sense.  But each one of

6      these -- there was an agreement in 2014 and then we have two

7      agreements in May and this August that make up the 2017

8      agreements.  And each one of them -- and I am going to walk you

9      through it -- specifies with a fair amount of detail,

10     Mr. Quinn's fee.  The percentage gets changed.  It gets raised.

11     The pool of clients on whom he can access his fee, it is

12     changed.  It is quite specific.  And the elephant in the room

13     is, the VSST and the VCF.  The VCF has been giving out billions

14     of dollars since 2011.

15          THE COURT:  Right.

16          MS. KIRSCH:  I don't mean to be disrespectful, it

17     defies common sense that Mr. Quinn who is thinking quite deeply

18     about how to get his fee maximized -- and I don't mean that in

19     a derogatory sense -- but he should.  He should be thinking

20     about how to protect himself.  He couldn't be bothered to write

21     three letters VCF and VSST.

22          THE COURT:  No.  No.  No.  I do think that -- I was

23     thinking the same point myself.  I think the biggest issue that

24     plaintiffs have in this case is if he thought that he was

25     entitled to recover from these administrative funds, why would

1    you not mention it in any way in these agreements and use words

2    like or otherwise or claims to do so.  And I do think that it

3    is maybe the elephants in mouse holes point and that it seems

4    improbable that you would say, that, oh, by the way, you are

5    going to get another $100 million at the end of the day here.

6    But that reference to the $100 million, you are never going to

7    actually use the words.

8              MS. KIRSCH:  Yeah.

9              THE COURT:  But I think that is a big problem, but I

10   am still not sure it is a sufficient problem that it gets to

11   contract clarity versus an argument to a jury someday to say,

12   how could he possibly have thought that?  Because it is just

13   not a matter of reading contracts for me to say, if he really

14   meant that, he probably should have put it on the paper.

15             MS. KIRSCH:  I would like to go back --

16             THE COURT:  Because I could say, from the same side

17   coming from the other direction is that if you really intended

18   to limit it to the litigation, why not be clear about that as

19   well?

20             MS. KIRSCH:  Because it was never on the radar.

21             THE COURT:  Yeah.

22             MS. KIRSCH:  And to the extent Your Honor feels like

23   we do need to go to parol evidence, we have put it all in.

24             THE COURT:  Right.

25             MS. KIRSCH:  There was not a single solitary scratch

1    of paper, that suggests that there was ever a discussion that
2    the VCF or VSST would be covered, not in 2013, not in 2014.
3    When we talk about what happened in between 2014 and 2017, the
4    VSST was enacted in December 2017.  Claimants were filing their
5    applications throughout 2016.  And the award letters went out
6    by the end of 2016 and distributions were being made -- the
7    award distributions were being made in the first half of 2017.
8    It can't be the case that they forgot to include it, if that is
9    what they were talking about.  And plaintiff says this too.
10   This was on their mind this was happening.  These are
11   sophisticated lawyers operating in the world of lobbying and
12   politics and dealing with international terrorism and the
13   resolution of it.  They all knew it was happening.  And never
14   once did they discuss it.  And we have the entirety of the
15   negotiating emails that go back and forth.  It was never raised
16   once in any of Mr. Quinn's emails.

17              It is a canon of construction that the expression of
18   one is the exclusion of the other.  Whether "or otherwise" does
19   the entirety of the work of a contract to say that those
20   enormous things, which probably are larger than what might be
21   recovered in the litigation anyway, would just have been
22   encompassed in the word "or otherwise," it is just not how
23   these guys were operating.

24              THE COURT:  What is the magnitude of this?  Because I
25   mean, I don't ask that simply out of curiosity but really

1    because I think it does go to your point about elephants in

2    mouse holes.  So how much, under Mr. Quinn's sort of most

3    hopeful days or the estate's most hopeful days dealing with the

4    funds would he be entitled to and how much in the litigation

5    under the most hopeful days would he be entitled to?

6            MS. KIRSCH:  I genuinely don't know the answer to

7    that question.  I know that the VSST makes distributions in

8    respect of -- to terror victims from state sponsors of

9    terrorism.  So those are the four countries:  Iran, Cuba, North

10   Korea and Syria.  So there is lots of distributions being made.

11   I don't know how much of it is going to a default judgment from

12   Iran.  Those are the only ones that impact 9/11.

13           THE COURT:  Right.

14           MS. KIRSCH:  So the default -- Iran defaulted from

15   the 9/11 litigation I think in 2005 and the certificate of

16   default came in 2011.

17           And then the specific liability judgments started

18   coming in thereafter.  I say all of this, because even all of

19   that predated Mr. Quinn's involvement with the Kreindler firm.

20           THE COURT:  What was the default judgment against

21   Iran?  How much was that for?

22           MS. KIRSCH:  In terms of dollars?

23           THE COURT:  Yeah.

24           MS. KIRSCH:  I have no idea.

25           I don't know that I know entirely, but is it -- do

1   you mean for the Kreindler families or for all of the families?

2           THE COURT:  I mean for anything that might arguably

3   be subject to this case.

4           MS. KIRSCH:  So for all of the 9/11 families they

5   think it is around 50 billion.

6           THE COURT:  Okay.

7           MS. KIRSCH:  But for the Kreindler family, it is less

8   than a third of that, close to, but less than a third.

9           THE COURT:  Why does that matter?  Oh, for the ones

10  you represented.  I see what you are saying, for the ones you

11  represent.

12          MS. KIRSCH:  Yeah.

13          THE COURT:  So less than a third of that, I see.

14          MS. KIRSCH:  I should also say that the VSST doesn't

15  pay out anything close to cents on the dollar.

16          THE COURT:  I am all too familiar with that, because

17  we get lots of these cases.  It is usually -- my recollection

18  is it is about -- and it varies year to year, but is maybe

19  roughly 10 percent although you can then carry over and collect

20  the next year as well.  Okay.  So --

21          MS. KIRSCH:  Those are the numbers -- I don't

22  actually know of those numbers, how many of those -- okay.  So

23  we are not 100 percent certain.  And I don't know how much of

24  those have made applications for awards to the VSST.  I would

25  think many of them, but I don't know that.

```
1              THE COURT:  And obviously 1 percent of that would
2    be -- not with any costs obviously, but that would be
3    $150 million there, would be 1 percent of 15 billion.
4              MS. KIRSCH:  I am going to defer to Your Honor on
5    math.
6              THE COURT:  If the share was about 15 billion or
7    roughly a third.
8              MS. KIRSCH:  I don't know that it is 10 percent.
9              THE COURT:  No.  No.  No.  That is just the 1
10   percent, which would be the fee -- the amount in which Mr.
11   Quinn would be entitled but I guess it is only 1 percent of
12   your recovery though, so I guess it would have to be discounted
13   by your clients' recovery.
14             MS. KIRSCH:  Correct.
15             THE COURT:  So if it were, you know, a 30 percent
16   contingent fee, then it would be --
17             MS. KIRSCH:  It is actually -- it is not 30 percent.
18   It is capped much lower because it is an administrative fund.
19             THE COURT:  I see.  I see.
20             MS. KIRSCH:  I got that right without having to ask.
21   Fifteen.
22             THE COURT:  Fifteen percent.
23             MS. KIRSCH:  And that covers -- that also goes to
24   expenses as well.
25             THE COURT:  Of course, I understand that.
```

1          Okay.  I really am just trying to get a rough sense

2     of proportions for purposes of the elephants in mouse holes

3     issue.

4          All right.  You can continue.

5          MS. KIRSCH:  Okay.  What I would do, which I think is

6     helpful is to go back.  And I wanted to just make sure that we

7     have placed the May agreements in the appropriate context,

8     because I think we are still unsure what they may or may not

9     mean.

10         To do that there is plenty in the record about, you

11    know, Mr. Kreindler has testified in his deposition, his

12    declaration what the purpose of reaching out to Mr. Quinn in

13    2013 was.  And I don't think there is any disagreement from

14    Mr. Quinn.  He testified as well at his deposition that

15    Mr. Kreindler reached out to him to help work on encouraging

16    the United States to pressure at the time they were very

17    focused on Saudi Arabia to come to the table in order to come

18    up with some diplomatic resolution that would finally resolve

19    the cases and also provide compensation.  So Mr. Quinn

20    testified to that as well.

21         But importantly, there was an agreement, the 2014

22    agreement, which is the exhibit to the May 2017 agreement.  And

23    I do want to look at that quickly, because that really does say

24    quite clearly that the fee that we are talking about -- it

25    begins -- and by the way, I would say that in their briefing,

1    the plaintiffs -- the estate counsel has said that we shouldn't

2    look at this at all.  And I do want to say that I disagree with

3    that for two reasons:  Number 1, it is the context that frames

4    the relationship.  And number 2, it is actually an exhibit to

5    the agreement, so it seems odd.

6            THE COURT:  Those seem like fair arguments to me.

7            MS. KIRSCH:  Okay.  What it says is, "As compensation

8    for their efforts in assisting Kreindler and Kreindler in

9    obtaining recovery for the 9/11 victims and their families,

10   Kreindler and Kreindler agrees to pay Nelson Mullins and John

11   Quinn a combined fee of 1 percent of the net recovery of each

12   decedent's wrongful death case and each personal injury case

13   where Kreindler and Kreindler has received a fee in the

14   consolidated 9/11 terrorist litigation."  It goes on.  I am not

15   skipping anything, but that is what is relevant.  It seems --

16   it is a short agreement, but it is abundantly clear that we are

17   talking about the MDL in this 2014 agreement.

18           So when you fast forward to 2017, the -- that is the

19   context that we are working with.  And as I have already

20   alluded to, a number of things happen in the May 2017

21   agreements.  Your Honor pointed to the language that says, the

22   2014 agreement is out there.  This replaces and supercedes it

23   and here is how it is going to work.  And it lays out some

24   changes.  The first change is that for the earlier cases,

25   meaning the cases that had been filed, cases and claims prior

1    to 2014, Mr. Quinn's fee is going up from sharing the 1 percent

2    with Mr. Crowe up to .775 percent.  So he is getting a better

3    percentage in the event -- he is getting a better percentage.

4    And it is focusing in this language here on those earlier filed

5    cases.

6          It then goes on and it talks about -- and we go

7    through this in the brief.  I don't need to take up a lot of

8    time here.  It is very much framed in terms of the litigation.

9    So the Southern District litigation is a defined term.  It

10   talks about this being the sole basis of any obligation by K

11   and K to Quinn and the Law Office of John Quinn arising in any

12   connection with the litigation or the resolution of it.  We are

13   talking about the litigation and the resolution.

14         And then the next paragraph talks about what he is

15   going to do.  And what he is going to do is he is going to

16   counsel relative to the preservation or changes proposed to the

17   Justice Against Sponsors of Terrorism Act, JASTA.  And that is

18   one.

19         And, two, efforts to accomplish reasonable settlement

20   or other resolution of the litigation.  So everything that he

21   is doing, one, JASTA is a federal jurisdiction statute.  It has

22   no application to anything whatsoever other than allowing the

23   kingdom of Saudi Arabia to be named as a defendant.  It is just

24   jurisdiction, not that it is not incredibly important, but it

25   is completely litigation related.

1        And second of all, he is going to work on

2   accomplishing a reasonable settlement or other resolution of

3   the litigation.  His task, as in this agreement, is solely

4   litigation related.  And then the next paragraph says, as

5   compensation for his sustained effort, here is what he is going

6   to get.  He is going to get his percentages.

7        THE COURT:  So assuming that it is just about the

8   litigation, why wouldn't he at least be entitled to recover a

9   percentage of the amounts recovered from the fund in lieu of

10  payments from Iran where there actually is judgment in

11  litigation and it is a process of actually enforcing the

12  judgment?  You can go seize a building in New York, but there

13  aren't any buildings left to seize in New York for Iran, so you

14  can file it with the fund instead and the fund will pay in

15  lieu -- will stand in the shoes of Iran and pay on behalf of

16  Iran and be subrogated to any claim.

17        MS. KIRSCH:  And I think the answer to that is there

18  is two pieces to that and neither of which did Mr. Quinn have

19  any relationship to and/or touch in any way.  The Iran default

20  judgment issued before he was retained.  It was in -- the

21  certificate of default was in 2011.  The liability judgments

22  were prosecuted by the Kreindler firm or the other firms, but

23  they rolled in shortly thereafter.  And Mr. Quinn really didn't

24  start doing any work until late 2013.  So he had nothing to do

25  with obtaining the Iran judgments.

1           And then once the VSST is enacted and there is

2    applications to be made for awards, he had nothing to do with

3    that either.  And that is -- we have put all of that in our

4    papers.

5           THE COURT:  Put that aside just as a matter of plain

6    language because that is where I start before I go to parol

7    evidence about whether he did anything or not or earned it or

8    not, why isn't it just a matter of plain language, wouldn't it

9    fall into plain language?  You could have in the contract

10   excluded any judgments obtained before a particular date.  And

11   to the extent it doesn't do that, why wouldn't he be entitled

12   to?

13          MS. KIRSCH:  Mr. Quinn himself testified that he

14   would never expect to have been paid on work that he didn't do.

15   This is -- this is not related to the litigation that had to do

16   with why they passed JASTA, putting in the litigation against

17   the Kingdom and trying to lobby to get the government to do

18   something.  It was done.  This is -- it was case closed against

19   Iran before he showed up on the scene.  And then later,

20   submitting these claims, he had nothing to do with that either.

21          He is solely engaged with the JASTA case and trying

22   to get some sort of a diplomatic resolution to the litigation

23   primarily against Saudi Arabia.  And I know there is --

24          THE COURT:  I take it your answer is, I have to rely

25   on context rather than on the words of the agreement?

1          MS. KIRSCH:  I think that is fair.  And in that vein,

2    I think when the 2017 agreements were starting to be negotiated

3    there is an email from Mr. Quinn to Mr. Kreindler talking about

4    what he wanted to do.  It is PEX 38.  And he talks about why it

5    is so important that the work done is connected to any reward.

6    It is on the second page of PEX 38 and Quinn 160.  And this is

7    an email written in January of 2017 and next --

8          Oh, it is docket 52-37, if that is helpful.

9          THE COURT:  That is helpful.  Thank you.  Okay.  I am

10   on the document.

11         MS. KIRSCH:  And I think what he puts in bold on the

12   second page next to number 4, he writes, "Our contracts on this

13   matter clearly contemplate that our contingent compensation is

14   in exchange for services that will assist in obtaining a

15   recovery for the clients."  It is not seriously disputed that

16   he had nothing to do with obtaining the default against Iran.

17   And he had nothing to do with writing any applications or

18   helping those clients access the VSST funds for their awards.

19   That is his understanding of what this agreement is all about.

20         Your Honor, just to be clear, when we talked about a

21   judgment, getting compensated, you were talking about the VSST.

22   The VCF has nothing to do with judgments at all.

23         THE COURT:  Right, I understand.

24         MS. KIRSCH:  I thought so.

25         THE COURT:  I think I said the fund maybe just

1    generically so as to avoid stumbling over the various acronyms.

2    That is the one I was referring to.

3              MS. KIRSCH:  If Your Honor has no further questions,

4    I think that is most of what I wanted to point out.  I could

5    talk all day, but I won't.

6              THE COURT:  Fair enough.  Let me give Mr. Craig a

7    chance to briefly respond and then I will give you a chance to

8    briefly respond to him.

9              MS. KIRSCH:  Okay.

10             THE COURT:  If maybe we can keep this to 5 or 6

11   minutes.

12             MR. QUINN:  I will endeavor to be as brief as I can,

13   Your Honor.  First, I just want to note, again, our purpose

14   today is to determine what the contract means.  A lot of what I

15   am hearing I feel like are affirmative defenses, Mr. Quinn

16   didn't work hard enough or worked on a different part of the

17   case.

18             THE COURT:  Yeah, I think -- I don't understand the

19   argument that way.  I understood the argument to be that the

20   parol evidence --

21             MR. QUINN:  His action as parol evidence of the

22   meaning.

23             THE COURT:  I'm sorry?

24             MR. QUINN:  His action as parol evidence of the

25   meaning of the contract.

```
 1              THE COURT:  Well, I suppose so, yeah.  Or just that
 2    he himself said that he didn't -- he didn't understand the
 3    contract to include work that to -- compensation for work that
 4    he wasn't doing.
 5              MR. QUINN:  That is correct, but he did understand
 6    the work that he was doing to contribute to this recovery.
 7              THE COURT:  Right.  But did he do anything with
 8    respect to the obtaining the judgment against Iran?
 9              MR. QUINN:  I honestly don't know, Your Honor.  The
10    default judgment was entered in 2015.  It was -- they defaulted
11    in 2011, but the judgment was not entered until 2015.  I am not
12    representing that he worked on it, I am not representing he
13    didn't.  This is really the first time that I am really
14    addressing that issue.  Here is the -- I think the point is
15    going back to the meaning of the contract.  If -- even if the
16    contract is limited to just the SDNY case, I don't think you
17    parse out the different legal theories, the different pieces of
18    the -- if two law firms are working on a case and one is
19    working on breach and one is working on quantum meruit and
20    breach comes in and quantum doesn't, one guy doesn't get paid
21    and the other guy does -- the contract says he gets paid --
22    very clear as to the SDNY cases.  I don't think there is any
23    dispute that it would cover the SDNY cases.  So the fact that
24    the SDNY cases are being paid out based on the Iranian
25    judgment, which is frankly just a mechanical device to get
```

1    people in the door of the VSST, I don't think that

2    affects whether --

3            THE COURT:  Well, I don't think that is true at all

4    that getting a default judgment against a foreign country is --

5    I mean, I -- I have handled probably a least a dozen of these

6    cases against foreign terrorist states.  And I can tell you, I

7    have put in hundreds and hundreds of hours to resolving those

8    cases and read through dozens of expert declarations.  And

9    under the statute, at least if it is under the Foreign

10   Sovereign Immunities Act, the Court is required to actually

11   make findings and can't simply rely on the default and actually

12   has to conclude that the country actually did cause the

13   terrorist attack to occur.

14           MR. QUINN:  Sure.  I am not saying it is easy or it

15   is trivial.  I am not suggesting that.  What I am saying is

16   that as we discussed in the very beginning of the day, these

17   are the same claims, same facts, same legal claims.  Yes, the

18   default judgment is against one defendant.  I don't think there

19   is anything in the contracts that would suggest that the fact

20   that the default against Iran is the basis for the access to

21   the VSST.

22           THE COURT:  Do the contracts just not say anything

23   about -- I mean, I know they talk about there is a dividing

24   line between the old and new cases.  But with respect to the

25   earlier filed cases is there not some beginning date or is it

```
1    just anything that is recovered in the New York litigation,
2    even if there was a recovery before Mr. Quinn was involved, he
3    is entitled to a share of that?
4              MR. QUINN:  Well, there was no recovery before
5    Mr. Quinn.
6              THE COURT:  I'm sorry?
7              MR. QUINN:  There was no recovery before Mr. Quinn
8    was involved.  The default judgment happened in 2015.  The
9    default was entered in 2011, judgment wasn't entered until
10   2015.
11             THE COURT:  I see.  Okay.
12             MR. QUINN:  And so there may be an argument -- that
13   is why I described it as an affirmative defense.  It was like,
14   well, didn't work on that or didn't do enough to help with
15   that.  I don't know standing here what his role was.  I don't
16   know standing here what the Kreindler firm's role was, because
17   there were a lot of firms that worked on that.
18             THE COURT:  Okay.  I think I understand your point on
19   that.
20             Can you tell me how you read the second paragraph of
21   the August 2017 agreement?  Again, going word for word the way
22   I did with Ms. Kirsch.
23             MR. QUINN:  Certainly.  So I think --
24             THE COURT:  "In addition to other bases of
25   compensation," what is that referring to?
```

```
1              MR. QUINN:  I think that is a -- it is a very
2    important clause.  I think that is referring to the -- I think
3    it -- so I hesitate, because I hesitate to lard up the Court
4    with facts not in evidence.  But it is my understanding that
5    Mr. Quinn's concern was that the previous agreements weren't
6    clear enough.  He thought they covered the funds.  He thought,
7    maybe they are not clear enough.  So this, in addition to other
8    bases of compensation I think does refer to the things that
9    were clearly covered by the earlier contracts.
10             THE COURTROOM DEPUTY:  What does this next clause
11   refer to?  "Quinn shall receive compensation as specified in
12   those agreements."
13             MR. QUINN:  That is correct, meaning the percentages
14   set forth .775 for older cases, 1 percent for newer cases.
15             THE COURT:  So it sounds to me like you are agreeing
16   with defense counsel that the first and second clauses are
17   redundant?
18             MR. QUINN:  No, I don't think they are -- I don't
19   think they are redundant.  I think the first clause, "in
20   addition to," is important.  It is clarifying that this is
21   adding something.  So this is added.
22             THE COURT:  Okay.  So what does the second clause
23   add?
24             MR. QUINN:  I think it adds -- I think it clarifies,
25   but it adds that -- what comes next.  The representation of
```

1    each client on whose behalf K and K has filed claims and

2    received fee.

3              THE COURT:  So do you think "has filed claims" refers

4    to administrative as well as litigation claims?

5              MR. QUINN:  I believe it does, yes, Your Honor.  I

6    mean, there is reason --

7              THE COURT:  So why not say that?  That seems frankly

8    insane to me if you think you are entitled to potentially

9    millions of dollars that has already been recovered from a

10   fund, you wouldn't say administrative claims or refer to the

11   particular fund?

12             MR. QUINN:  I can give you my good faith belief, Your

13   Honor.

14             THE COURT:  Okay.

15             MR. QUINN:  I mean, we don't have the advantage of

16   Mr. Quinn.  And he was not in great health during the discovery

17   period of this and couldn't share a lot of information with us.

18   But I think the concern was that it needed to be broad because

19   there were all of these ideas out there.  There was this idea

20   that the Saudis would pay.  There was the idea that maybe the

21   international fund established -- obviously the VCF was going,

22   the VSST was going.  He didn't want to start listing funds,

23   because the money might end up coming from a different angle,

24   so he wrote it as broad as he could.

25             THE COURT:  And I think Ms. Kirsch said to me that

1    nowhere in the parol evidence is there any reference to

2    Mr. Quinn saying that he was entitled to compensation from any

3    of these funds.

4              MR. QUINN:  So I don't agree with that.  But I agree

5    that it is scant.

6              THE COURT:  Can you point me to any?

7              MR. QUINN:  There is the Exhibit Z that we looked at

8    earlier, his angry email to Mr. Kreindler.  It was not until

9    2020 when he sent the angry email to Mr. Kreindler saying I

10   just got out of a meeting with Chuck Schumer and now --

11             THE COURT:  I'm sorry.  You are going kind of fast

12   and quiet, so it is hard to hear you.

13             MR. QUINN:  I'm sorry.  Exhibit Z, which is an email

14   from Mr. Quinn -- it is not until 2020, we acknowledge that,

15   where he complains to Mr. Kreindler that the Kreindler firm is

16   not acknowledging that he is entitled to the payments from the

17   VSST.  And he describes Mr. Schumer -- Chuck Schumer telling

18   him -- telling him, Mr. Quinn, we are going to make sure this

19   fund is funded for 10 years.  And he is expressing his

20   frustration that despite his work on this, he is not getting

21   paid.

22             THE COURT:  Okay.  Anything before 2020?

23             MR. QUINN:  It was not until 2020.  One of the

24   things --

25             THE COURT:  That is a little odd, isn't it?

1          MR. QUINN:  It is, Your Honor.  But one of the things

2     to remember is Mr. Kreindler and Mr. Quinn worked together for

3     a long time.  They spoke on the phone frequently.  I assume

4     there were other conversations that are not recorded.  These

5     were -- you know, Mr. Quinn was kind of an old-school guy.  He

6     picked up the phone and called you.  Yes, if we had a document

7     from 2017 that said this expressly, we wouldn't be here.

8     But -- and I agree with that and I wish we had such a document.

9     But we also don't have a document that says he only gets paid

10    if the Saudis pay.

11         THE COURT:  I'm sorry.  I have to apologize -- go

12    ahead.  I wanted help finding one other document, but go ahead.

13         MR. QUINN:  So, yes, we do not have a document that

14    says VCF and VSST are included, that the contract is written

15    more broadly than that.  But we also don't have a document that

16    sets forth their position that he was -- that he only gets paid

17    if the Saudis pay something.

18         And this "in addition to" language must mean

19    something.  Something new is coming.  And the something new

20    that is coming are claims that are filed.  And the only claims

21    being filed during this time frame were the VSST claims.

22         THE COURT:  Well, I thought it was just represented

23    to me that there was an extension of the statute of

24    limitations, so there were new claims being filed.

25         MR. QUINN:  Sure, there were new claims.  But those

1     were already covered because the SDNY litigation we have

2     already agreed was covered.

3            THE COURT:  That gets back to the point that it is

4     just very strange to read this to say, in addition to the other

5     bases for compensation that is in the litigation, I am also

6     entitled to amounts recovered by filing claims and fees

7     received and not to say administrative claims, claims of any

8     type, just in some way indicate what that means.  You know, I

9     would think if you were coming and you were saying -- if you

10     are coming to me and saying, look, I know there is a lack of

11     clarity as to whether I only get it for the litigation or I

12     also get all of this other administrative stuff.  And I am

13     going to clear that up.  I am going to put this to rest.  I

14     get -- and I get anything what I was previously -- and I get

15     anything for any other claims filed.  What are you talking

16     about?  Your license ought to be taken away if you are

17     practicing law like that.  That makes no sense.

18            MR. QUINN:  I wouldn't write this like this, Your

19     Honor, but referring back to Plaintiff's 52, I guess it was

20     that Mr. Kirsch referred to, which was the email between

21     Mr. Kreindler and Mr. Quinn where they are suggesting Jerry

22     Goldman's suggestions, right -- so I think that is part of the

23     context here that all of these lawyers were talking to each

24     other about what language to use.

25            THE COURT:  That is interesting to me.  That is also

1    interesting to me because the second half of paragraph 2, he is

2    talking about -- and there is parol evidence that explains what

3    he is talking about there and he wants to make clear that if

4    there is a threat of litigation and it is settled before the

5    litigation is filed, I get compensated for that.  So you can

6    see parol evidence for that.  And again, I mean, I am not the

7    fact finder, but it is just bizarre to think that you would go

8    and be engaged in an email exchange that says that and not say,

9    oh, in addition, by the way, there is this other potential

10   multi-million dollar recovery out here and I am not going to

11   say anything about it.

12          MR. QUINN:  Again, I think he believed that

13   language -- the broader language would cover that.  And in this

14   email discussing his conversation with Jerry Goldman he says

15   that -- you know, he is talking to Goldman, Jerry, he says,

16   and -- let me find the language.

17          He is talking about the fact that he, Mr. Goldman, is

18   gathering clients with respect to whom he may never actually

19   file a claim, but still issued recovery or get a fee or

20   settlement via other resolution.  And the -- we believe that

21   other resolution may have referred to these funds.  He is --

22          THE COURT:  It is just so strange to me that you

23   would think you were getting something out of the funds and

24   there would not be a single piece of paper that says that

25   before 2020?

1          MR. QUINN:  I think he thought he had an

2    understanding.

3          THE COURT:  I have got two binders of materials here

4    and there is not a single reference before 2020 to that.  It is

5    just strange.

6          MR. QUINN:  I agree it is strange, Your Honor, but I

7    don't think it is -- I still think we have to figure out what

8    this language means.  And it can't mean only the SDNY cases or

9    why would they have had this language?

10          THE COURT:  Right.

11          MR. QUINN:  In addition to that, we are going to do

12    other things.  What could the other things be?  And the other

13    things are claims.  And what are the claims?  The claims we

14    made at the time were the claims in the VSST.

15          THE COURT:  I mean, it just doesn't feel like a clear

16    contract where I could grant summary judgment and say, okay,

17    now it is clear.  You are saying to me, it has got to mean

18    something, so it must mean something, it means what we want it

19    to mean.

20          MR. QUINN:  I think two things I would suggest are

21    clear.  One is that it is not merely the SDNY litigation.

22    There would be no need for these amendments to add these

23    additional bases, right.  But the other thing I think is clear

24    is that even if it were, the VSST is an alternative form of

25    recovery for the SDNY litigation.  There is nothing in the

1    language of these contracts that say that he will not recover

2    from SDNY unless the SDNY case recovers from the Saudis.  There

3    is nothing even close to that in these contracts.

4              THE COURT:  I'm sorry.  Say that again.

5              MR. QUINN:  There is nothing even close to the

6    concept -- in these contracts there is nothing close to the

7    concept that I believe defendants are advancing here which is

8    that he would only recover on the SDNY claims if the Saudis

9    were to pay.

10             THE COURT:  I am not sure I even heard that, frankly,

11   in the argument today.  I don't think that is what I was

12   hearing.

13             MR. QUINN:  Well, I think the same concept applies to

14   attempt to exclude the claim -- the VSST claims that are

15   reliant on the Iran default judgment.  The VSST is an

16   alternative recovery mechanism to the SDNY litigation.  SDNY is

17   clearly in this contract.

18             THE COURT:  Yeah.

19             MR. QUINN:  So I don't think you need parol evidence

20   to decide that, Your Honor.  Can you decide the VCF prong

21   today, perhaps not.  But I think the VSST prong is so closely

22   connected to the SDNY litigation it is clear from the contracts

23   that it should be included.

24             THE COURT:  The court reporter has been going a very

25   long time now.  I will tell you what, let me do this.  Let me

1    take a 10-minute break to give her a little rest.  I am going

2    to come back, I am going to ask you to give me your two or

3    three best pieces of parol evidence and give me those.  I will

4    ask you the same thing and I will ask both of you also, when I

5    come back out, if you can look at 56-22, which is Defendant's

6    Exhibit S.  And there is a paragraph 3 that refers to -- and

7    this is a 2017 email.  And it refers to Mr. Quinn's entitlement

8    to a share with respect to new categories of plaintiffs via

9    common benefit or PEC arrangements say for Zadroga and other

10   plaintiffs.  I didn't know what that was referring to.  And it

11   would be helpful if you could explain to me what that is

12   referring to.  Because I know that there are -- I think one of

13   the funds was named or referred to as the sort of Zadroga fund,

14   so I am curious what that means.  So let's come back in 10

15   minutes.  I will ask you to give me your best pieces of parol

16   evidence and I will give you a final word.

17              (Recess taken at 3:54 p.m.)

18              THE COURT:  All right.  Mr. Craig.

19              MR. QUINN:  Good afternoon, Your Honor.  I appreciate

20   the break.  You asked us, Your Honor, to comment on exhibit --

21   Defendant's Exhibit S.

22              THE COURT:  Correct.

23              MR. QUINN:  So Defendant's Exhibit S is an email --

24   that is it.

25              It is an email obviously between Mr. Quinn and

1    Mr. Kreindler discussing what looks like various aspects of the

2    deals between and amongst the different attorney groups, right.

3    And they were complicated and I won't pretend to understand all

4    of them.  I barely understand this one.  But there were

5    agreements as reflected in the first paragraph, between Jerry,

6    Jerry is Anderson Kill -- that is Bob Crowe -- on how they

7    would feasibly share in the class complaint and other issues.

8    I think the one thing that is -- that is relevant and perhaps

9    what the Court -- the three paragraphs where they talk about a

10   point where -- this is Mr. Quinn speaking, a point that has not

11   arisen, but that deserves clarification is my entitlement to my

12   designated share of fees that might arise as a result of new

13   categories of plaintiffs via common benefit or PEC arrangments

14   say for Zadroga or other plaintiffs.  I think the original

15   agreements clearly include this as injuries and recoveries, but

16   we might as well pin that down too.

17            So my understanding is that Zadroga was -- that is

18   the name of the act that reauthorized the VCF.  That this was

19   the person that was the inspiration or the lead for the VCF.

20            THE COURT:  What is PEC?

21            MR. QUINN:  Plaintiffs executive committee, I

22   believe.

23            THE COURT:  So then that would not seem to be

24   referring to VCF, because that is talking about the common

25   fund.

```
 1              MR. QUINN:  And I would love to tell you, Your Honor,
 2   that I am certain that this refers to fact that Mr. Quinn was
 3   entitled to recover from the VCF, but I can't in good faith
 4   tell you that because I believe Mr. Zadroga was also a
 5   plaintiff in the litigation.
 6              THE COURT:  Okay.
 7              MR. QUINN:  So this is certainly -- you know, I love
 8   the language about referring to new categories of plaintiffs,
 9   but I can't tell you what that means.  I don't know.  But this
10   is certainly, you know, sort of an affirmation that you wanted
11   to make sure the new agreements pinned down that he would
12   participate in all aspects of recovery from the SDNY case.
13              THE COURT:  What are your three best pieces of parol
14   evidence?
15              MR. QUINN:  So I have one that we haven't discussed
16   today, Your Honor, and that I would remind the Court is maybe
17   one that we have already talked about.
18              THE COURT:  The 2020 email?
19              MR. QUINN:  Well, I will start with Plaintiff's
20   Exhibit 58, which is at docket 58-7.
21              THE COURT:  Okay.
22              MR. QUINN:  So the bottom portion of this email is
23   from Mr. Quinn.  And you can tell from the top part that it is
24   going to Mr. Kreindler and Ms. Benett, right?
25              THE COURT:  Okay.
```

1          MR. QUINN:  And he says, "Long call today from Lucy

2     Panza in Chuck Schumer's office re his involvement with

3     Isaakson Graham on amendments to fund.  I'm sure you know the

4     background.  When I mentioned that K and K is both my client

5     and cocounsel, she revealed that she and Megan had spoken."

6     Presumably Megan Benett.  "So I won't repeat the whole

7     conversation.  The former had a hold on more money for

8     Zadroga" -- the Zadroga Act was the term generally used for the

9     VCF.  "But lifted it in return for Schumer commitment to

10    resolve"

11         THE COURT:  You -- please, for the court reporter.

12         MR. QUINN:  Okay.

13         THE COURT:  Write a note to yourself there.

14         MR. QUINN:  "Lifted it" -- as I get tired, I go

15    faster -- "but lifted it in return for Schumer commitment to

16    resolve imbalances among categories of survivors.  They also

17    question whether state law not fed law is what should be

18    changed and they want all other senators constituent interests

19    brought into the discussion."

20         And then he goes on to further discuss his

21    conversations with Mr. Schumer's staff.

22         So the reason I think that is important, Your Honor,

23    is because it belies this idea that Mr. Quinn wasn't on the VCF

24    and the VSST.  He has this readout of this meeting with Senator

25    Schumer.  He discusses the plan to get other senators onboard,

1    sends it to Mr. Kreindler and Ms. Benett.  And their reply

2    isn't, what the hell are you talking about, Jack?  They say,

3    oh, great, thanks.  That is consistent with what -- they don't

4    say thanks.  That is my interpretation.  They say, consistent

5    with what Zack Summers said, call me any time, Jack, and we can

6    conference Megan in, thanks.

7            So they don't say, hey, Jack, this isn't your job.

8    They don't go, why are you working on funding for the funds?

9    Why are you talking to Schumer and other senators about the

10   interplay between the VCF and the VSST?  Why are you trying to

11   nail down this funding?  That is not your job.  They say,

12   thanks, appreciate the update.  He was definitely working on

13   the VCF and VSST.

14           THE COURT:  Okay.  That is one.

15           MR. QUINN:  I mean, I think that the next one to

16   me -- I have two more, Your Honor.  The next one is that

17   exhibit Defendant's Exhibit Z, that 2020 email, which is at

18   docket 56-29.

19           THE COURT:  Yep.

20           MR. QUINN:  So the last statement we looked at was

21   2019.  This is the next year in 2020.  And we discussed this

22   document, but this is Mr. Quinn doing two things.  He's telling

23   Mr. Kreindler about his conversation with Chuck Schumer about

24   funding for the VSST.

25           THE COURT:  I'm sorry.  Which document are you on?

```
1              MR. QUINN:  I'm sorry, Defendant's Exhibit Z, which
2     is docket 56-29.
3              THE COURT:  So you are still on Z.  Okay.
4              MR. QUINN:  Yeah.  So he -- so the previous document
5     we talked about, the email we talked about that was 2019 just
6     for reference, the -- the previous conversation he had with
7     Schumer.  This is 2020, so it is a year later.
8              THE COURT:  Correct.
9              MR. QUINN:  And then, again, he is reporting back to
10    Kreindler about -- he is doing two things in this email.  He is
11    reporting back to Kreindler about his conversation with Schumer
12    about the VSST.  And he is expressing his frustration and
13    consternation over the fact that Mr. Kreindler and his firm are
14    not recognizing that the VSST funds are covered by the
15    contract.  So this is parol evidence --
16             THE COURT:  Is this VSST or the VCF?
17             MR. QUINN:  I believe it is the VSST.  What he says
18    is, "At least get funds from the new victims of terrorism
19    fund."
20             THE COURT:  Yeah.
21             MR. QUINN:  And then he later says that the senator
22    told him, we are going to fund this for 10 years.  I believe in
23    context that is the VSST.
24             THE COURT:  Okay.  Okay.
25             MR. QUINN:  And so then the last thing I would -- is
```

1    that the context I pointed back to before on the 2017

2    contracts, why were they nunc pro tunc to January 2017?  If the

3    point was to make sure they would include any future

4    state-to-state resolution from the Saudis or any other future

5    Saudi-funded endeavor, there would be no need to clarify that

6    they were effective the beginning of 2017.  The only reason

7    they clarified they were effective is they began in 2017 is

8    because the VSST payment commenced in 2017.  So that context I

9    think --

10           THE COURT:  Because of the -- that was when the

11   payments were authorized?

12           MR. QUINN:  Yeah.  The first payments were made in

13   March of 2017.  The first payments I believe were approved in

14   February.  You know, there is a lot of complications, as you

15   know better than I, Your Honor, how these VSST funds work out.

16           THE COURT:  But so you only have one piece of parol

17   evidence that goes to the VCF?

18           MR. QUINN:  This is the only one that that I have to

19   point to today, Your Honor, yes.

20           THE COURT:  Okay.  All right.  Thank you.

21           MR. QUINN:  If I could make one final point, Your

22   Honor.

23           THE COURT:  Yes.

24           MR. QUINN:  Which I made before, but I would like to

25   repeat myself.

```
 1              THE COURT:  It is a little late in the evening to be
 2    repeating yourself.
 3              MR. QUINN:  It is very quick.  Again, I think that
 4    one of our core arguments is that the VSST is -- the VSST's
 5    close relationship with the SDNY case is that --
 6              THE COURT:  No, I think you have a much stronger
 7    argument on the VSST than you do on the VCF.
 8              MR. QUINN:  I --
 9              THE COURT:  Because you don't need to rely on --
10              MR. QUINN:  I agree with Your Honor.
11              THE COURT:  -- on separate claims, you can rely on
12    being part of the SDNY litigation.
13              MR. QUINN:  The VCF claim is reliant on parol
14    evidence.  And I am not going to mislead the Court, there might
15    not be enough for you to make the decision today, but I think
16    there is for VSST.
17              THE COURT:  All right.  Thank you, Ms. Kirsch.
18              MS. KIRSCH:  So I will try to be succinct better than
19    I was before and answer some of the points.  I do want to
20    address -- this wasn't going to be one of my greatest hits of
21    parol evidence, but I do want to point Your Honor's attention
22    to something about the nunc pro tunc.  It was dated back the
23    beginning of January, because the new -- what they call the
24    JASTA case, the amended complaint that named Saudi Arabia as
25    the direct defendant was actually filed in March of 2017.  So
```

1    when they signed in May, they wanted to date back because they

2    wanted to be clear that they were capturing the JASTA case.  It

3    had nothing to do with the VSST.  And to the extent that is

4    helpful, there is Defendant's Exhibit Q, which is an April 12,

5    2017 email --

6              THE COURT:  Can you give me the docket on that?

7              MS. KIRSCH:  -- from Mr. Quinn to Mr. Goldman.

8              THE COURT:  Can you give me the docket?

9              MS. KIRSCH:  Hang on.

10             THE COURT:  This is plaintiff's or defendants'?

11             MS. KIRSCH:  It is 56-20.

12             THE COURT:  Okay.  I got it.

13             MS. KIRSCH:  And this is -- it is an odd document

14   because Mr. Quinn is actually responding to Mr. Goldman with a

15   copy to Mr. Kreindler.  We don't actually have the details of

16   what he is responding to.  But just to direct your attention to

17   number 1, he does talk about -- it looks like it was

18   Mr. Goldman's idea to go effective date of 1/1.  Mr. Quinn

19   says, "I can see some benefit re the incoming retainers."  It

20   had nothing to do with the VSST.  It all had to do with just

21   making sure they captured everybody who was involved with the

22   JASTA case in March of 2017.

23             This second point to make -- I'm sorry.

24             THE COURT:  Go ahead.

25             MS. KIRSCH:  You had asked about Zadroga -- I

1    actually -- Defendant's Exhibit T is the same document as S,

2    only it has Mr. Kreindler's response on this topic.

3              THE COURT:  I'm sorry.  Give me the docket number on

4    that one?

5              MS. KIRSCH:  Yeah.  It is 56-23.  So Zadroga

6    plaintiffs are a category of plaintiffs.  And once --

7              THE COURT:  57-23 you said?  I'm sorry.  56-23, I'm

8    sorry.  I have got that.  I just don't see the response to it.

9    You said this has the response as well?

10             MS. KIRSCH:  Yeah, it is short.

11             THE COURT:  I see, okay.  I see.

12             MS. KIRSCH:  So in response to Your Honor's question

13   about the Zadroga, it is a category of plaintiffs.  Those

14   people, those exposure -- the individuals who were exposed at

15   ground zero, who get into the Zadroga fund are considered a

16   category of plaintiffs for the litigation in a sense that they

17   have already shown that they have the causation.  So --

18             THE COURT:  Right.

19             MS. KIRSCH:  -- they are considered as a group, the

20   Zadroga plaintiffs.  They are the latent injury plaintiffs who

21   have already kind of overcome the first hurdle of showing

22   causation and that is how they are referred to.

23             The exhibit which I call T in 56-23, Mr. Kreindler's

24   response -- so Mr. Quinn is asking, hey, I'd like some

25   clarification about my entitlement to this new class of

1    plaintiffs.  And Mr. Kreindler says, your fee applies to the

2    thousands of new PI cases we are filing.  So it is cases.  It

3    is --

4            THE COURT:  Yeah.  Okay.

5            MS. KIRSCH:  We are not talking about anything to do

6    with the fund.

7            THE COURT:  Okay.

8            MS. KIRSCH:  In terms of -- yeah, in terms of our

9    parol evidence, I have already directed Your Honor to

10   Plaintiff's Exhibit 38.  I think that is a really important

11   one, so that certainly goes on our greatest hits.

12           THE COURT:  Give me the docket on that.

13           MS. KIRSCH:  Yes, I can.

14           52-37.  And this is the long email in January of 2017

15   written by Mr. Quinn to Mr. Kreindler.  And we talked about on

16   the second page of it where he writes, "Our contracts on this

17   matter clearly contemplate that our contingent compensation is

18   in exchange for circumstances that will assist in obtaining

19   recovery for the clients."  I wanted to point that out.  Before

20   we were talking about how he wouldn't want to be paid for

21   something that he didn't do, which is reflected in the language

22   of the agreement itself.  It also is important to remind

23   everybody that these reviewed as contingency agreements, which

24   is the other confusion that if they were intended to encompass

25   the funds, the VCF was up and running since 2011.  The VSST

1      from 2015.  Here we are in 2017 and we are still talking about

2      a contingency.  Money is -- they were operational.  Money had

3      come in.  That wouldn't -- if it covered that compensation, it

4      wouldn't be contingent.  And I think that is important.

5              The language of the agreement also talks --

6              THE COURT:  That might differ -- it would be

7      contingent for the VSST to the extent you still need to get the

8      judgment in order to go to the VSST, so it is contingent on

9      getting that judgment before you can then go and recover it

10     from the VSST.

11             MS. KIRSCH:  Well, a couple of things.  If it is read

12     the way --

13             THE COURT:  I mean, all of these lawyers I assume who

14     are -- I am confident all of the lawyers who are handling the

15     foreign sovereign immunity terrorism exception cases are doing

16     it on a contingent-fee basis.

17             MS. KIRSCH:  Yes.  But my point is, Mr. Quinn views

18     his agreement in 2017 as contingent on getting a judgment of

19     sorts.  If he really believed that it covered the default

20     judgment against Iran from years prior --

21             THE COURT:  No.  But --

22             MS. KIRSCH:  -- that wouldn't be contingent on

23     anything.  The money was there.  You'd be paid.

24             THE COURT:  But I think you are eliding the

25     distinction between the entry of default and a default

1    judgment, which are sort of massively different things.  You

2    get -- an entry of a default is a matter of simply submitting a

3    form to the clerk.  And the clerk enters that order without any

4    involvement from the judge in the case.  That then triggers the

5    obligation or the next step to a default judgment.  And that is

6    when all of the work gets done at that point in time and that

7    was after, as I understand it, Mr. Quinn was retained.  And not

8    only that, but also where there still is potential, sort of,

9    enormous uncertainty as to whether the judge is going to say,

10   you are entitled to a default judgment of a million dollars or

11   $100 million.

12            MS. KIRSCH:  Absolutely.  But in 2017, that had been

13   done.  Monies -- the default judgment had issued.  The

14   liability judgments against Iran had issued.

15            THE COURT:  Right.

16            MS. KIRSCH:  The Kreindler firm had already submitted

17   applications and received awards from the VSST.

18            So if he still thinks in 20 -- the next year that his

19   compensation is contingent that is reflective that he doesn't

20   think that he is entitled to those monies because those monies

21   are there.

22            THE COURT:  Okay.

23            MS. KIRSCH:  And incidentally, Your Honor made a good

24   point earlier that is also echoed in 52-37.  He writes --

25   Mr. Quinn writes that he told Mr. Crowe -- this is at the

1    bottom where it says new steps.  "In the end, I told Bob that
2    he needs to remember that these fees have to be justified to
3    the Court."  So that is reflective as well that he knew there
4    had to be a connection between the work that he was doing and
5    any fee that he might obtain out of the Court, that he
6    couldn't -- he wouldn't be able to justify receiving fees for
7    work that he didn't do just because he was otherwise affiliated
8    with the Kreindler firm.
9           The other documents to point out -- I also pointed to
10    this one before.
11           THE COURT:  I'm sorry.  Where was that one?
12           MS. KIRSCH:  That is at the bottom of that same page.
13    There is bold.  It says, "New steps."
14           THE COURT:  Yep.
15           MS. KIRSCH:  And then he says, "In the end, I told
16    Bob that he to needs to remember that fees have to be justified
17    to the Court."
18           The other thing on that page as well, up a couple of
19    paragraphs, Mr. Quinn writes, "Still, all of this pales
20    however, in relation to the bottom-line reality that the
21    enactment of JASTA has been the key to our achieving a
22    near-term settlement."  So, again, he is reiterating the work
23    that he did and he is I mean understandably promoting his
24    importance because he worked very hard on JASTA, but he is
25    making the point that it is the work that he did that will be

1    connected to a recovery.  He is not expecting that he is going

2    to get monies related to something that he didn't work on.  He

3    is understanding the importance of the connection.

4            So the other document we also looked at, which is

5    docket number 52-51, and this is the email that Mr. Quinn wrote

6    to Mr. Kreindler talking about the August amendment and what it

7    was intended to accomplish.  And we already talked about it,

8    but I just wanted to make sure that it is on my greatest hits

9    list.

10           Another one that I think is really relevant that

11   talks about, again, what the parties were doing when they

12   created the 2017 agreements is docket number 56-24.  And this

13   is a chain, but when you get to what is -- the third page,

14   Bates number KK2275, there is a Tuesday, May 16th, 2017 email

15   from Mr. Quinn to Mr. Kreindler and to Mr. Goldman where he is

16   actually reciting what it is he thinks the new contracts -- the

17   May 2017 contracts do.  And he says -- I will read slowly for

18   the court reporter.  "I would be embarrassed to admit how long

19   it has taken me over the weekend and today to redo these

20   things, but I wanted to harmonize them and meet our many

21   different objectives."

22           And he says, "There are three contracts for each of

23   your firms.  Each has one with Crowe, Nelson Mullins and two

24   with me.  The basic agreements with me and Bob revise the 50/50

25   to .775/.225 as agreed.  And Bob is limited to clients for whom

1    claims were asserted as of the date of the earlier agreements

2    with him.  My agreements, of course, cover clients not covered

3    by Bob's, including post earlier agreements."  Then he says,

4    "In Jerry's case also, Bob has the O'Neill, but not the class,

5    as that hasn't been certified or populated.  And the agreements

6    are all effective nunc pro tunc January 2017."

7                 It goes on just to say, I am attaching the exhibits

8    and then he tells Mr. Goldman that he is addressing a potential

9    concern of his double dipping.

10                And then he says, "I would like to get this wrapped

11   up soon.  We are going to get a deal.  I feel it and I think

12   it."  Reflecting the urgency of getting this done.  And then,

13   "If Bob tries bargaining, well never mind."  And, again, I feel

14   like this is pretty important parol evidence.  This reflects

15   what he thinks he is accomplishing with the contracts.  And,

16   again, no mention of an administrative fund, a claim, VCF,

17   VSST, any of that.

18                I guess on the topic of parol evidence, I would also

19   point out and I think it is -- the evidence that we are trying

20   to point you to, Your Honor, is evidence that predates the

21   agreement that shows what the parties were thinking about when

22   they entered into the agreement.  We have also pointed out that

23   there has been no request for any payment under the VCF or VSST

24   after the agreements until 2020.  The parol evidence that the

25   plaintiff has put in begins in 2020.  And then that is three

1    years thereafter.  And it is entitled I think to much less

2    weight than parol evidence that goes prior.

3              To address the document that the estate counsel

4    pointed Your Honor to that was reflecting a conversation in

5    2019 that Mr. Quinn had with Senator Schumer's office, what is

6    striking about that document is he doesn't seem to have -- he

7    went into a conversation not having been aware that Ms. Benett

8    had already had that very conversation with Senator Schumer's

9    office and that he was -- it appeared to be reporting on

10    something that he wasn't asked to do and that the Kreindler

11    firm was separately doing.  So I'm not really sure what weight

12    that can be afforded in terms of whether that can be seen as

13    doing work pursuant to the agreement or just having a

14    conversation.  It doesn't really state what the purpose of the

15    conversation was.  It does seem clear from the context that is

16    not a conversation that the Kreindler firm thought he was --

17    had asked him to have and they seem surprised that he had had

18    it.

19              THE COURT:  Okay.

20              MS. KIRSCH:  I think the last thing that I wanted to

21    respond to and just to point out that under the VCF and the

22    VSST, when an award is made to a claimant, that isn't a

23    recovery.  When the contracts talk about recovery, that is the

24    language of recovering something against the defendants.  The

25    administrative funds issue awards.  They are an effort by the

1    United States Government to provide some relief to an American

2    victim of terror, because they were harmed for no reason other

3    than they were American.  They are not issuing -- they are not

4    recovering on an actual judgment.  And so I just think that

5    language, if they wanted to talk about awards, we would have

6    seen the word awards in the contracts as well.

7            THE COURT:  Okay.  All right.  So let me tell you

8    what my reaction is to all of this and how I would like to

9    proceed with the case.

10           I think the contracts including the two May 2017

11   contracts and the August 2017 contract are not clear with

12   respect to the question of what actually is included.  And I

13   think that one can make a pretty coherent argument up until the

14   August 26, 2017 amendment that the contracts really are talking

15   in terms of cases and wrongful death cases and personal injury

16   cases.  I continue to be puzzled though by paragraph 2 in the

17   August 2017 agreement.  And I think it does inject a

18   significant ambiguity into what the agreement actually was

19   intended to cover or not.  And so I do think that the Court has

20   to look to the parol evidence.  Unfortunately, the parol

21   evidence is not entirely dispositive or all that clear.  But

22   the aspect of both the contract drafting and the parol

23   evidence, to my mind, that is clearest from the defense's

24   perspective is that this is just an example of the dog that

25   didn't bark.  And that if this were a case in which the -- in

1    which there was an intention to include the VCF, you would

2    expect to see something indicative of that in the contract

3    language or in the parol evidence.

4         I am not convinced at this point that plaintiffs are

5    entitled to summary judgment.  I will say, however, that I do

6    think that plaintiffs are correct that there also is nothing in

7    the contractual language that would in any way limit

8    Mr. Quinn's recovery to amounts recovered from Saudi Arabia.  I

9    just don't see that at all in the contractual language.  And I

10   think the contract language is actually to the contrary in that

11   regard.  And I also find persuasive the argument to the extent

12   that a judgment was obtained in the New York litigation and

13   that judgment was then collected upon through the VSST, I don't

14   know why that would not be included.  And the defense's

15   response to that is to say, well, Mr. Quinn was not involved at

16   the time that the default was entered.

17        But as I have indicated in response, it -- the date

18   the default was entered just means the date that Iran didn't

19   appear in the case.  And then all of the work that then comes

20   later in the case and leads up to the entry of the default

21   judgment, so I don't see a basis for excluding that.

22        On the other hand, I have to say that I am highly

23   doubtful that there was an intention to include the VCF for the

24   reasons that I stated, principally because it is the dog that

25   didn't bark or it is the elephant in the mouse hole.  But

1    either way, it is a huge potential recovery.  And the notion

2    that there is not any discussion of it until very late in the

3    process -- and it is true that there is this one email where

4    Mr. Quinn appears to be talking with folks on the Hill about

5    the VCF, but, again, if that was really what this was all

6    about, you would expect to see a lot more than that.  So this

7    is a case of the dog that didn't bark in that regard.

8           And I guess I am inclined and I think -- and I will

9    tonight deny plaintiff's motion for summary judgment with the

10   qualification that I think that plaintiff is correct that there

11   is not a Saudi Arabia limitation and that to the extent a

12   judgment was entered in the SDNY litigation and then was

13   collected upon, in any particular way, including through the

14   VSST, I am -- I am persuaded that would be covered.  As I said,

15   I am much more dubious about the VCF.  I don't think that by

16   any means that the plaintiff is entitled to summary judgment

17   with respect to the VCF.  I would like to think a little bit

18   further about whether the defense is entitled to the VCF.

19          And, frankly, maybe you all can point me to it, I am

20   not aware of any cases that rely on the dog that didn't bark

21   type analogy as a parol evidence basis for reaching a

22   particular conclusion.  I think the contracts are ambiguous on

23   this.  I think that Ms. Kirsch did her best to explain that

24   second clause in paragraph 2 of the August 2017 agreement.  She

25   may be right about what it means, but it is not as a matter of

1    plain language what it says in that regard.

2              But I want to think a little bit further about

3    whether the defense is entitled to summary judgment with

4    respect to the VCF on the dog that didn't bark type theory.

5    And if you want to point me to any authorities on that

6    proposition, I would be happy to consider them.  But I also am

7    happy, frankly, right now just to set a trial date.  And one of

8    the reasons I am telling you what I think from the bench now is

9    the case has been around for a long time.

10             Mr. Quinn unfortunately is deceased now.  I am sure

11   the estate would like to wrap things up if they could.  And so

12   if you want to set a trial date, it is possible that the need

13   for a trial will dissipate before we get there, but I am happy

14   to set a date to move things forward.

15             And also to the extent that what I have told you here

16   would be helpful for you all just to sit down and try and

17   resolve this case -- I think I said this early on in the case.

18   This is a case that just cries out, frankly, for a resolution.

19   And maybe the estate is in a better position to resolve it than

20   Mr. Quinn was.  I realize that he had some disabilities that he

21   was dealing with.  And I'm very sorry that he went through

22   that.  It sounds like a horrible situation.  But maybe this is

23   a point in time in which there would be some benefit in doing

24   that.  And if you would like me to appoint a magistrate judge

25   to sit down with all of you to try and resolve things, I would

```
 1    be happy to do that or refer the matter to the D.C. Circuit's
 2    mediation program, I would be happy to do that.  And as I said,
 3    if we want to pencil in a trial date -- and the parties I guess
 4    might have to agree or you would have to convince me that I
 5    could bifurcate this way, but I think the trial would have to
 6    be a bifurcated trial in which this would just simply be on
 7    liability and the damages would have to be for another day if
 8    we did it this way.
 9              Are you pulling your calendar out?
10              MR. QUINN:  Yes.
11              THE COURT:  That is fine.  This sounds to me like it
12    ought not be more than a week trial, but you can tell me if I
13    am wrong about that.
14              MR. QUINN:  It depends on how long Mr. Schumer is on
15    the stand, Your Honor.
16              THE COURT:  Senator Schumer.
17              MR. QUINN:  If we could talk for a minute.
18              THE COURT:  Yes.  That is fine.  Thanks.
19              (Pause.)
20              THE COURT:  Mr. Craig.
21              MR. QUINN:  So we have a question about bifurcation.
22              THE COURT:  Okay.
23              MR. QUINN:  Would you be inclined, Your Honor, to
24    have the trial be just on the meaning of the contract or would
25    we also litigate other liability issues such as the fact of
```

```
1    Mr. Quinn's purported termination, the effect of his death,

2    whether he worked --

3                  THE COURT:  I think it would be liability is what it

4    would be.

5                  MR. QUINN:  If it would be all of those things, we

6    might need some period of discovery, but I think it would be

7    short.  But we would also like to build in time to mediate.

8    And the parties agree that, you know, given what you have said

9    today, that puts some shape on this --

10                  THE COURT:  Yeah.

11                  MR. QUINN:  -- that should encourage --

12                  THE COURT:  I hope that will.  Do you have a

13   preference between the circuit mediation program, which is --

14   would be a private lawyer with some experience in the relevant

15   fields or a magistrate judge who wouldn't necessarily come with

16   that experience, but would --

17                  Yeah, you are welcome.

18                  -- comes with a black robe.

19                  MS. KIRSCH:  We are in agreement.

20                  MR. QUINN:  We agree a private mediator might be

21   better.

22                  THE COURT:  That always makes sense I think.

23                  So how much time would you like for that?

24                  MS. KIRSCH:  I mean, I -- we are here.

25                  MR. QUINN:  I think August is a problem.
```

```
1              THE COURT:  Yeah, August is not a great time to get
2    things done I know.
3              MS. KIRSCH:  If we could focus on September -- the
4    first few weeks of September.
5              MR. QUINN:  Mid September.
6              MS. KIRSCH:  Mid September is fine, but --
7              Before September 20th.  Can we do the week right --
8              THE COURT:  Why don't I require you all to file a
9    joint status report on September 30th?  And that will give the
10   flexibility about where you want to file things.  You can just
11   let me know on September 30th.
12             MR. QUINN:  Where we are at.
13             THE COURT:  And maybe what you can do then is if you
14   want, you can then -- if you want a trial date, you could --
15   both of you could contact the deputy clerk and find a date that
16   works for everyone.  And in the joint status report you can
17   say, we tried, we were unsuccessful and here is the date we
18   propose for trial.  And that way you can also figure out how
19   many days you think it will take and you can contact your
20   witnesses and find out if they are available.
21             MS. KIRSCH:  Perfect.
22             THE COURT:  So I will set a trial -- I mean, I will
23   require a joint status report on September 30th.  And I will
24   stay the case until then.  But if you want to, I would welcome
25   any submissions on this dog that didn't bark theory, which
```

1    sounds to me like an interesting question that I will need to

2    be prepared to answer at least come September 30th if you are

3    unable to resolve things.

4            MR. QUINN:  We will submit something and we'll --

5    I -- standing here, I don't know of any cases, Your Honor, but

6    just sequentially --

7            MS. KIRSCH:  Sure.  We'll submit something and then

8    you can respond.  And --

9            THE COURT:  That is fine.

10           MS. KIRSCH:  Do you want to give us a deadline?

11           THE COURT:  Why don't you tell me when you want to

12   file and I am open to your schedule, so tell me when you would

13   like to file anything addressing that question.  And I know you

14   are going to be working on trying to resolve the case as well,

15   so I will defer to your timing.

16           MS. KIRSCH:  We'll try to do something in two weeks.

17           THE COURT:  That is fine.

18           So today is the 15th and so why don't I give you

19   until the 29th of July.  And then how much time to respond?

20           MR. QUINN:  A week, Your Honor.

21           THE COURT:  A week, until August 5th to respond.

22   Okay.  That is helpful.  All right.  Thank you all.

23           MR. QUINN:  Thank you.

24           THE COURT:  It has been a long day.

25           (Proceedings concluded at 4:51 p.m.)

1                    C E R T I F I C A T E

2

3          I, SHERRY LINDSAY, Official Court Reporter, certify

4    that the foregoing constitutes a true and correct transcript of

5    the record of proceedings in the above-entitled matter.

6

7

8

9

10                        Dated this 18th day of July, 2025

11

12                        _____
                          Sherry Lindsay, RPR
13                        Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

MR. QUINN: [131]
MS. KIRSCH: [104]
THE COURT: [228]
THE COURTROOM DEPUTY: [2]
3/2 57/10

**$**

**$1 [1]** 20/18
**$1 million [1]** 20/18
**$10,000 [1]** 20/9
**$100 [3]** 42/5 42/6 77/11
**$100 million [1]** 77/11
**$150 [1]** 46/3
**$150 million [1]** 46/3

**.**

**.225 [2]** 13/21 79/25
**.775 [5]** 12/16 13/21 49/2
57/14 79/25
**.775 percent [2]** 12/16 49/2
**.775/.225 [1]** 79/25

**1**

**1 percent [5]** 12/17 13/24
46/3 48/11 49/1
**1/1 [1]** 73/18
**10 [4]** 24/17 59/19 65/14
70/22
**10 percent [2]** 45/19 46/8
**10,000 [3]** 20/9 20/9 20/10
**10-minute [1]** 65/1
**100 percent [2]** 29/9 45/23
**1000 [1]** 1/16
**10022 [1]** 1/21
**10th [2]** 11/8 12/13
**11 [10]** 9/4 11/4 31/10 33/5
33/6 44/12 44/15 45/4 48/9
48/14
**11th [2]** 4/16 12/22
**12 [1]** 73/4
**15 [3]** 1/6 18/1 19/14
**15 billion [2]** 46/3 46/6
**15th [1]** 89/18
**160 [1]** 52/6
**16th [1]** 79/14
**1751 [1]** 1/16
**1775 [1]** 2/4
**1824 [2]** 1/5 3/2
**18th [1]** 90/10
**19 [2]** 13/9 16/9
**19-3 [3]** 9/18 10/2 10/4
**19-4 [1]** 10/2
**19-5 [1]** 10/2
**1900 [1]** 1/20
**19F [1]** 12/11
**19th [4]** 10/3 10/4 12/13
37/8

**2**

**20 [2]** 73/11 77/18
**2000 [1]** 11/11
**20001 [1]** 2/9
**20006 [1]** 2/5
**2001 [1]** 12/22
**2005 [1]** 44/15
**2011 [6]** 41/14 44/16 50/21
54/11 56/9 75/25
**2013 [3]** 43/2 47/13 50/24

**2014 [15]** 10/6 11/8 12/13
34/7 37/8 37/20 37/24 40/22
41/6 43/2 43/3 47/21 48/17
48/22 49/1
**2015 [5]** 54/10 54/11 56/8
56/10 76/1
**2016 [2]** 43/5 43/6
**2017 [51]** 9/24 10/3 10/5
13/8 13/11 14/1 21/21 21/23
22/2 22/14 22/14 22/16 22/18
22/19 23/2 31/22 33/2 41/7
43/3 43/4 43/7 47/22 48/18
48/20 52/2 52/7 56/21 60/7
65/7 71/1 71/2 71/6 71/7
71/8 71/13 72/25 73/5 73/22
75/14 76/1 76/18 77/12 79/12
79/14 79/17 80/6 82/10 82/11
82/14 82/17 84/24
**2019 [3]** 69/21 70/5 81/5
**2020 [13]** 24/7 59/9 59/14
59/22 59/23 62/25 63/4 67/18
69/17 69/21 70/7 80/24 80/25
**2025 [2]** 1/6 90/10
**20th [2]** 31/17 88/7
**21-1824 [2]** 1/5 3/2
**21st [1]** 31/17
**22 [1]** 65/5
**22102 [1]** 1/17
**23 [4]** 74/5 74/7 74/7 74/23
**24 [1]** 79/12
**26 [1]** 82/14
**27 [1]** 12/6
**29 [2]** 69/18 70/2
**29th [1]** 89/19
**2:21 [1]** 1/8

**3**

**30 percent [2]** 46/15 46/17
**300-something [1]** 31/18
**30th [4]** 88/9 88/11 88/23
89/2
**333 [1]** 2/8
**37 [3]** 52/8 75/14 77/24
**38 [3]** 52/4 52/6 75/10
**3:54 [1]** 65/17

**4**

**4:51 [1]** 89/25

**5**

**50 [1]** 79/24
**50 billion [1]** 45/5
**50/50 [1]** 79/24
**51 [1]** 79/5
**52 [6]** 31/21 32/2 32/4 33/1
39/18 61/19
**52-37 [3]** 52/8 75/14 77/24
**52-51 [1]** 79/5
**56-20 [1]** 73/11
**56-22 [1]** 65/5
**56-23 [3]** 74/5 74/7 74/23
**56-24 [1]** 79/12
**56-29 [2]** 69/18 70/2
**5629 [2]** 24/1 24/3
**57-23 [1]** 74/7
**58 [1]** 67/20
**58-7 [1]** 67/20
**5th [3]** 31/22 33/2 89/21

**6**

**6710 [1]** 2/8

**8**

**800 [1]** 2/4

**9**

**9/11 [10]** 9/4 11/4 31/10
33/5 33/6 44/12 44/15 45/4
48/9 48/14
**950 [1]** 1/20
**9th [1]** 10/6

**A**

**able [4]** 17/19 33/25 34/13
78/6
**about [97]**
**above [2]** 11/6 90/5
**above-entitled [1]** 90/5
**absolutely [2]** 5/1 77/12
**abundantly [1]** 48/16
**access [5]** 33/25 34/13 41/11
52/18 55/20
**Accessing [1]** 40/13
**accomplish [3]** 10/24 49/19
79/7
**accomplishing [2]** 50/2 80/15
**achieve [2]** 33/18 39/21
**achieving [1]** 78/21
**acknowledge [2]** 11/8 59/14
**acknowledged [2]** 23/15
**acknowledging [1]** 59/16
**acknowledgment [1]** 13/17
**acronyms [1]** 53/1
**act [4]** 49/17 55/10 66/18
68/8
**action [4]** 1/4 11/15 53/21
53/24
**actions [1]** 10/9
**actual [2]** 4/15 82/4
**actually [39]** 5/16 7/17 7/19
17/19 18/21 22/17 24/20
26/12 31/2 31/17 32/18 33/14
33/18 34/1 35/5 35/15 36/16
38/8 38/11 38/22 39/13 42/7
45/22 46/17 48/4 50/10 50/11
55/10 55/11 55/12 62/18
72/25 73/14 73/15 74/1 79/16
82/12 82/18 83/10
**add [4]** 5/13 29/11 57/23
63/22
**added [4]** 10/17 34/15 38/1
57/21
**adding [4]** 30/7 30/11 38/3
57/21
**addition [18]** 16/7 30/5
34/18 35/11 35/24 37/3 37/10
38/4 38/15 38/20 39/9 54/24
57/7 57/20 60/18 61/4 62/9
63/11
**additional [3]** 35/6 36/22
63/23
**address [4]** 29/21 33/11
72/20 81/3
**addressed [1]** 26/4
**addressing [3]** 54/14 80/8
89/13
**adds [3]** 28/23 57/24 57/25
**adhering [1]** 10/22

**administrative [19]** 6/10
13/2 16/1 19/18 23/6 23/8
23/15 32/25 37/12 37/16
40/23 41/25 46/18 58/4 58/10
61/7 61/12 80/16 81/25
**admit [1]** 79/18
**advance [1]** 31/22
**advancing [1]** 64/7
**advantage [1]** 58/15
**advising [1]** 11/3
**advocacy [1]** 10/25
**affects [1]** 55/2
**affects whether [1]** 55/2
**affiliated [1]** 78/7
**affirmation [1]** 67/10
**affirmative [3]** 7/11 53/15
56/13
**afforded [1]** 81/12
**after [9]** 12/12 13/7 21/10
31/17 36/20 36/21 37/13 77/7
80/24
**afternoon [8]** 3/6 3/10 3/11
3/24 5/15 25/25 26/1 65/19
**again [20]** 16/13 19/1 19/22
38/3 39/6 39/16 39/18 40/3
53/13 56/21 62/6 62/12 64/4
70/9 72/3 78/22 79/11 80/13
80/16 84/5
**against [18]** 4/16 6/17 8/7
8/13 44/20 49/17 51/16 51/18
51/23 52/16 54/8 55/4 55/6
55/18 55/20 76/20 77/14
81/24
**ago [1]** 4/13
**agree [18]** 9/5 9/24 20/21
21/6 23/5 23/9 26/17 27/8
27/18 29/9 59/4 59/4 60/8
63/6 72/10 86/4 87/8 87/20
**agreed [3]** 38/20 61/2 79/25
**agreeing [2]** 27/10 57/15
**agreement [47]** 11/8 11/9
11/12 11/13 11/16 11/17 12/9
12/11 12/14 12/20 13/4 13/9
14/8 14/9 14/11 14/20 14/23
14/23 15/5 16/7 18/16 18/19
30/14 35/13 36/5 41/6 47/21
47/22 47/24 48/5 48/16 48/17
48/22 50/3 51/25 52/19 56/21
75/22 76/5 76/18 80/21 80/22
81/13 82/17 82/18 84/24
87/19
**agreements [37]** 11/17 12/3
13/11 13/12 16/9 21/4 21/19
21/22 23/14 31/17 32/11
34/20 35/21 36/6 37/8 37/19
38/6 39/11 41/7 41/8 42/1
47/7 48/21 52/2 57/5 57/12
66/5 66/15 67/11 75/23 79/12
79/24 80/1 80/2 80/3 80/5
80/24
**agrees [1]** 48/10
**ahead [3]** 60/12 60/12 73/24
**airlines [1]** 4/16
**al [2]** 1/7 3/3
**all [71]** 3/10 3/10 3/12 3/23
4/4 4/4 9/5 9/15 9/20 9/23
10/6 11/17 12/21 12/22 14/9
19/22 21/9 21/16 21/18 22/21

25/17 25/24 26/5 32/17 34/4
34/20 37/25 40/23 41/23 41/24
44/18 44/18 45/1 45/4 45/16
47/4 48/2 50/1 51/3 52/19
52/22 53/5 55/3 58/19 61/12
61/23 65/18 66/3 67/12 68/18
71/20 72/17 73/20 76/13
76/14 77/6 78/19 80/6 82/7
82/8 82/21 83/9 83/19 84/5
84/19 85/16 85/25 87/5 88/8
89/22 89/22
**allow [2]** 10/17 13/21
**allowed [1]** 18/10
**allowing [1]** 49/22
**alluded [1]** 48/20
**along [2]** 18/14 37/6
**already [13]** 30/13 35/21
48/19 58/9 61/1 61/2 67/17
74/17 74/21 75/9 77/16 79/7
81/8
**also [47]** 10/18 12/19 16/11
16/16 18/8 22/13 23/17 23/17
25/18 28/10 28/11 33/5 35/5
36/3 37/1 37/12 38/7 38/21
38/23 39/12 45/14 46/23
47/19 60/9 60/15 61/5 61/12
61/25 65/4 67/4 68/16 75/22
76/5 77/8 77/24 78/9 79/4
80/4 80/18 80/22 83/6 83/11
85/6 85/15 86/25 87/7 88/18
**alternative [6]** 8/3 17/13
28/14 37/13 63/24 64/16
**although [3]** 20/4 36/19
45/19
**always [3]** 16/24 32/16 87/22
**am [66]** 3/8 5/5 5/12 5/25
7/6 7/13 9/17 16/24 18/5
20/12 20/13 20/21 20/24
27/10 28/18 29/25 29/25
32/12 35/25 37/16 38/13
38/14 39/1 39/1 39/3 40/16
41/8 42/10 45/16 46/4 47/1
48/14 52/9 53/15 54/11 54/12
54/13 55/14 55/15 55/15 61/5
61/12 61/13 62/6 62/10 64/10
65/1 65/2 65/14 67/2 72/14
76/14 80/7 83/4 83/22 84/8
84/14 84/14 84/15 84/19 85/6
85/8 85/10 85/13 86/13 89/12
**ambiguity [2]** 32/19 82/18
**ambiguous [2]** 40/15 84/22
**amended [1]** 72/24
**amending [1]** 18/16
**amendment [11]** 29/22 31/23
32/7 32/9 33/9 33/9 34/7
37/21 39/19 79/6 82/14
**amendments [3]** 22/7 63/22
68/3
**American [2]** 82/1 82/3
**among [1]** 68/16
**amongst [1]** 66/2
**amount [2]** 41/9 46/10
**amounts [4]** 37/8 50/9 61/6
83/8
**analogy [1]** 84/21
**Anderson [2]** 33/4 66/6
**angle [1]** 58/23
**angry [2]** 59/8 59/9
**another [13]** 6/12 13/18
17/16 18/12 19/5 24/24 27/15

38/2 38/9 40/5 42/5 79/10
86/7
**answer [7]** 29/6 41/3 44/6
50/17 51/24 72/19 89/2
**answering [1]** 28/18
**answers [1]** 16/22
**anticipated [1]** 38/24
**anticipating [1]** 7/20
**any [50]** 4/18 4/20 5/3 7/22
7/22 9/3 11/17 11/19 14/13
15/22 15/23 18/2 25/19 31/4
35/6 42/1 43/16 46/2 47/13
49/10 49/11 50/13 50/16
50/19 50/19 50/24 51/10 52/5
52/17 54/22 59/1 59/2 59/6
61/7 61/15 69/5 71/3 71/4
77/3 78/5 80/17 80/23 83/7
84/2 84/13 84/16 84/20 85/5
88/25 89/5
**anymore [1]** 20/13
**anyone [4]** 5/7 15/9 15/14
19/11
**anything [18]** 8/14 20/20
45/2 45/15 48/15 49/22 51/7
54/7 55/19 55/22 56/1 59/22
61/14 61/15 62/11 75/5 76/23
89/13
**Anytime [1]** 15/14
**anyway [1]** 43/21
**anywhere [1]** 7/22
**apologize [4]** 14/8 24/3
38/11 60/11
**appear [1]** 83/19
**APPEARANCES [3]** 1/13 1/23
2/1
**appeared [1]** 81/9
**appears [1]** 84/4
**applicants [1]** 22/16
**application [1]** 49/22
**applications [5]** 43/5 45/24
51/2 52/17 77/17
**applied [1]** 18/19
**applies [3]** 14/1 64/13 75/1
**appoint [1]** 85/24
**appreciate [3]** 5/5 65/19
69/12
**approach [2]** 3/4 14/23
**appropriate [2]** 10/23 47/7
**approved [1]** 71/13
**approximately [1]** 11/11
**April [1]** 73/4
**April 12 [1]** 73/4
**Arabia [12]** 10/17 22/8 31/15
31/16 34/9 41/2 47/17 49/23
51/23 72/24 83/8 84/11
**are [180]**
**aren't [1]** 50/13
**arguably [2]** 20/5 45/2
**argue [2]** 22/6 32/10
**argument [16]** 7/20 22/12
23/8 23/11 25/1 30/17 32/8
32/13 42/11 53/19 53/19
56/12 64/11 72/7 82/13 83/11
**arguments [6]** 4/6 5/13 7/21
9/1 48/6 72/4
**arise [1]** 66/12
**arisen [1]** 66/11
**arising [6]** 11/15 11/19
12/21 12/23 15/19 49/11
**arms [1]** 31/19

**around [5]** 19/18 21/12 31/7 45/5 85/9
**arrangement [2]** 33/7 33/8
**arrangements [1]** 65/9
**arrangments [1]** 66/13
**as [101]**
**aside [2]** 7/14 51/5
**ask [8]** 15/8 40/5 43/25 46/20 65/2 65/4 65/4 65/15
**asked [6]** 9/8 24/6 65/20 73/25 81/10 81/17
**asking [2]** 7/6 74/24
**aspect [2]** 22/19 82/22
**aspects [2]** 66/1 67/12
**asserted [2]** 30/11 80/1
**asserting [1]** 11/14
**assist [10]** 5/19 10/14 10/16 10/19 16/19 17/2 19/9 40/10 52/14 75/18
**assisting [2]** 11/3 48/8
**associated [1]** 37/23
**associates [1]** 3/16
**assume [4]** 19/13 30/19 60/3 76/13
**assuming [1]** 50/7
**assurance [1]** 24/19
**assuring [1]** 24/15
**attached [1]** 33/9
**attaching [1]** 80/7
**attack [2]** 4/16 55/13
**attacks [6]** 11/15 12/21 12/23 15/19 15/23 21/10
**attempt [1]** 64/14
**attention [2]** 72/21 73/16
**attorney [3]** 11/3 13/18 66/2
**attorneys [1]** 21/11
**August [19]** 13/7 29/22 31/22 31/23 32/7 32/9 33/2 33/9 39/19 41/7 56/21 79/6 82/11 82/14 82/17 84/24 87/25 88/1 89/21
**August 2017 [3]** 56/21 82/11 82/17
**August 26 [1]** 82/14
**August 5th [3]** 31/22 33/2 89/21
**authorities [1]** 85/5
**authorized [1]** 71/11
**available [3]** 23/13 25/19 88/20
**Avenue [3]** 1/20 2/4 2/8
**avoid [1]** 53/1
**award [3]** 43/5 43/7 81/22
**awarded [2]** 35/7 37/9
**awards [7]** 45/24 51/2 52/18 77/17 81/25 82/5 82/6
**aware [3]** 7/13 81/7 84/20
**away [1]** 61/16

**B**

**back [21]** 17/14 20/18 32/6 34/3 37/19 39/6 41/4 42/15 43/15 47/6 54/15 61/3 61/19 65/2 65/5 65/14 70/9 70/11 71/1 72/22 73/1
**background [1]** 68/4
**backwards [1]** 29/21
**balance [2]** 25/10 25/11

**Bankruptcy [1]** 2/7
**bar [1]** 63/4
**bargaining [1]** 80/13
**bark [6]** 82/25 83/25 84/7 84/20 85/4 88/25
**barrier [1]** 18/10
**based [2]** 23/4 54/24
**bases [15]** 30/6 34/18 34/20 35/11 35/25 36/9 36/10 38/5 38/15 38/16 39/10 56/24 57/8 61/5 63/23
**basic [1]** 79/24
**basically [1]** 25/3
**basis [8]** 11/18 16/8 38/20 49/10 55/20 76/16 83/21 84/21
**Bates [1]** 79/14
**be [136]**
**beak [1]** 25/14
**because [48]** 7/20 8/25 9/5 13/12 14/22 19/1 20/7 21/7 25/14 27/20 34/10 37/4 37/22 37/24 38/18 41/4 42/12 42/16 42/20 43/24 44/1 44/18 45/16 46/18 47/8 47/23 51/6 56/16 57/3 58/18 58/23 61/1 62/1 65/12 66/24 67/4 68/23 71/8 71/10 72/9 72/23 73/1 73/14 77/20 78/7 78/24 82/2 83/24
**becomes [1]** 30/10
**been [25]** 4/9 7/17 15/12 17/1 18/1 22/24 23/1 23/7 23/12 32/7 37/20 38/20 41/13 43/21 48/25 51/14 58/9 64/24 77/12 78/21 80/5 80/23 81/7 85/9 89/24
**before [35]** 1/11 3/21 4/6 5/22 10/6 13/10 17/19 17/23 18/20 30/8 31/2 31/22 34/8 35/17 36/21 40/6 50/20 51/6 51/10 51/19 56/2 56/4 56/7 59/22 62/4 62/25 63/4 71/1 71/24 72/9 75/19 76/9 78/10 85/13 88/7
**began [1]** 71/7
**beginning [7]** 26/4 30/4 30/7 55/16 55/25 71/6 72/23
**begins [3]** 30/5 47/25 80/25
**behalf [13]** 3/7 9/3 11/4 16/10 16/14 16/17 19/4 19/7 35/14 36/7 40/8 50/15 58/1
**being [13]** 5/6 24/9 34/15 35/8 39/20 43/6 43/7 44/10 49/10 54/24 60/21 60/24 72/12
**belief [2]** 36/11 58/12
**belies [1]** 68/23
**believe [17]** 7/21 9/3 12/1 19/20 20/3 22/15 24/1 24/3 37/15 58/5 62/20 64/7 66/22 67/4 70/17 70/22 71/13
**believed [2]** 62/12 76/19
**bench [1]** 85/8
**benefit [4]** 65/9 66/13 73/19 85/23
**Benett [5]** 4/3 67/24 68/6 69/1 81/7
**best [6]** 9/12 21/17 65/3 65/15 67/13 84/23
**better [7]** 22/4 49/2 49/3

71/15 72/18 85/19 87/21 88/10 88/12 89/3 43/3
55/24 61/20 65/25 66/2 66/5 69/10 76/25 78/4 87/13
**beyond [2]** 32/23 35/12
**bifurcate [1]** 86/5
**bifurcated [1]** 86/6
**bifurcating [1]** 5/21
**bifurcation [1]** 86/21
**big [1]** 42/9
**bigger [1]** 31/13
**biggest [1]** 41/23
**billion [4]** 31/19 45/5 46/3 46/6
**billions [1]** 41/13
**binders [1]** 63/3
**binding [1]** 11/16
**bit [8]** 3/15 4/23 5/7 13/1 19/13 24/13 84/17 85/2
**bits [1]** 26/21
**bizarre [1]** 62/7
**black [1]** 87/18
**Bob [7]** 66/6 78/1 78/16 79/24 79/25 80/4 80/13
**Bob's [1]** 80/3
**bold [2]** 52/11 78/13
**both [9]** 19/20 19/24 20/2 21/6 34/21 65/4 68/4 82/22 88/15
**bothered [1]** 41/20
**bottom [4]** 67/22 78/1 78/12 78/20
**bottom-line [1]** 78/20
**breach [2]** 54/19 54/20
**breadth [1]** 18/23
**break [2]** 65/1 65/20
**brief [2]** 49/7 53/12
**briefing [2]** 29/13 47/25
**briefly [2]** 53/7 53/8
**broad [6]** 6/9 7/25 9/2 11/2 37/11 58/18 58/24
**broader [3]** 12/23 15/21 62/13
**broadly [3]** 7/22 10/14 60/15
**brought [1]** 68/19
**bucket [1]** 17/14
**build [1]** 87/7
**building [1]** 50/12
**buildings [1]** 50/13
**bumped [1]** 13/23
**business [2]** 20/8 20/11
**Byrnes [2]** 1/14 3/8

**C**

**calendar [1]** 86/9
**call [9]** 10/5 16/4 27/24 28/1 28/3 68/1 69/5 72/23 74/23
**called [1]** 60/6
**came [2]** 23/7 44/16
**can [48]** 8/22 9/7 10/9 15/8 16/13 17/7 21/5 23/19 23/25 24/19 39/2 40/18 41/4 41/11 45/19 47/4 50/12 50/14 53/10 53/12 55/6 56/20 58/12 59/6 62/5 64/20 65/5 67/23 69/5 72/11 73/6 73/8 73/19 75/13 76/9 81/12 81/12 82/13 84/19 86/12 88/7 88/10 88/13 88/14 88/16 88/18 88/19 89/8

can't [11]   4/14 8/13 24/14
  28/7 35/16 40/20 43/8 55/11
  63/8 67/3 67/9
candid [2]   5/6 14/15
candor [1]   19/23
canon [1]   43/17
capped [1]   46/18
captured [1]   73/21
capturing [1]   73/2
career [1]   15/13
carried [1]   12/22
carry [1]   45/19
carves [1]   14/8
case [42]   3/2 4/8 4/15 4/18
  4/24 4/25 5/21 8/2 8/5 15/24
  16/2 27/20 37/21 41/24 43/8
  45/3 48/12 48/12 51/18 51/21
  53/17 54/16 54/18 64/2 67/12
  72/5 72/24 73/2 73/22 77/4
  80/4 82/9 82/25 83/19 83/20
  84/7 85/9 85/17 85/17 85/18
  88/24 89/14
cases [45]   4/17 6/15 6/16
  10/5 10/6 12/12 12/12 12/21
  12/22 15/7 15/17 15/21 15/22
  16/23 16/23 31/10 32/19 33/5
  37/18 37/19 37/25 45/17
  47/19 48/24 48/25 48/25 49/5
  54/22 54/23 54/24 55/6 55/8
  55/24 55/25 57/14 57/14 63/8
  75/2 75/2 76/15 82/15 82/15
  82/16 84/20 89/5
categories [4]   65/8 66/13
  67/8 68/16
category [6]   6/23 7/1 7/16
  74/6 74/13 74/16
causation [2]   74/17 74/22
cause [1]   55/12
causes [1]   11/14
Centers [1]   4/14
cents [1]   45/15
certain [2]   45/23 67/2
certainly [8]   6/1 9/4 25/18
  39/24 56/23 67/7 67/10 75/11
certainty [1]   24/20
certificate [2]   44/15 50/21
certified [1]   80/5
certify [1]   90/3
chain [1]   79/13
chance [2]   53/7 53/7
change [3]   21/19 33/15 48/24
changed [4]   38/1 41/10 41/12
  68/18
changes [2]   48/24 49/16
characterize [1]   25/2
chronologically [1]   41/5
Chuck [5]   24/15 59/10 59/17
  68/2 69/23
chunk [1]   7/20
circuit [1]   87/13
Circuit's [1]   86/1
circumstances [2]   18/4 75/18
cite [2]   21/15 24/5
Civil [2]   1/4 3/2
claim [26]   6/14 6/20 6/21
  7/18 8/9 8/18 8/21 13/2 16/1
  16/3 16/4 17/3 17/9 17/10
  17/18 33/18 33/22 34/1 37/16

37/22 39/21 50/16 62/19
64/21 64/25 65/11 66/11 69/2
claimant [1]   81/22
claimants [3]   18/6 18/8 43/4
claims [76]   7/16 8/8 8/9
  8/10 8/25 9/6 11/1 11/4
  11/12 11/24 12/21 12/22
  13/15 13/17 13/20 13/23 14/2
  16/10 16/15 16/17 16/20
  16/25 17/1 18/19 19/5 19/8
  19/10 31/10 32/25 34/7 34/12
  35/15 35/16 36/7 37/5 37/11
  37/11 37/12 37/15 37/18
  37/24 38/6 38/8 38/17 38/22
  38/23 39/13 40/8 40/11 40/23
  42/2 48/25 51/20 55/17 55/17
  58/1 58/3 58/4 58/10 60/20
  60/20 60/21 60/24 60/25 61/6
  61/7 61/7 61/15 63/13 63/13
  63/13 63/14 64/8 64/14 72/11
  80/1
clarification [2]   66/11
  74/25
clarified [2]   28/21 71/7
clarifies [2]   13/4 57/24
clarify [2]   38/23 71/5
clarifying [1]   57/20
clarity [6]   10/8 26/21 36/13
  38/4 42/11 61/11
class [3]   66/7 74/25 80/4
clause [10]   36/4 36/9 36/24
  39/25 40/6 57/2 57/10 57/19
  57/22 84/24
clauses [1]   57/16
clawback [2]   8/18 8/20
cleaning [1]   33/14
clear [27]   13/22 14/25 17/6
  18/15 22/10 25/6 26/18 28/18
  28/20 30/20 42/18 48/16
  52/20 54/22 57/6 57/7 61/13
  62/3 63/15 63/17 63/21 63/23
  64/22 73/2 81/15 82/11 82/21
clearer [1]   22/7
clearest [1]   82/23
clearly [9]   12/23 25/9 40/22
  47/24 52/13 57/9 64/17 66/15
  75/17
clerk [3]   77/3 77/3 88/15
client [9]   16/10 16/14 19/4
  24/18 31/8 35/14 36/7 58/1
  68/4
client/cocounsel [1]   24/18
clients [14]   11/11 16/17
  19/7 31/12 33/17 39/20 40/8
  41/11 52/15 52/18 62/18
  75/19 79/25 80/2
clients' [1]   46/13
close [6]   45/8 45/15 64/3
  64/5 64/6 72/5
closed [1]   51/18
closely [1]   64/21
cocounsel [2]   24/18 68/5
coherent [1]   82/13
colleague [2]   3/8 37/2
collect [1]   45/19
collected [2]   83/13 84/13
collection [1]   6/13
COLUMBIA [1]   1/1
combined [1]   48/11
come [12]   10/9 18/12 22/1

23/9 47/17 47/17 65/2 65/5
65/12 75/9 89/2
comes [5]   21/1 54/20 57/25
  83/19 87/18
coming [10]   31/10 31/12
  33/21 42/17 44/18 58/23
  60/19 60/20 61/9 61/10
comma [2]   36/20 36/21
commenced [1]   71/8
comment [2]   25/5 65/20
commitment [2]   68/9 68/15
committee [2]   35/8 66/21
common [9]   15/25 37/9 38/5
  38/18 38/21 41/17 65/9 66/13
  66/24
compensated [2]   52/21 62/5
compensation [48]   16/8 16/8
  16/12 16/16 16/19 17/2 17/17
  17/19 19/7 19/9 30/6 34/19
  34/20 35/13 35/25 36/5 36/8
  36/10 36/25 37/10 38/5 38/6
  38/8 38/15 38/17 38/18 38/19
  38/21 38/23 39/10 39/11
  39/12 40/7 40/10 40/14 47/19
  48/7 50/5 52/13 54/3 56/25
  57/8 57/11 59/2 61/5 75/17
  76/3 77/19
complained [1]   24/9
complaining [1]   24/24
complains [1]   59/15
complaint [5]   15/12 17/21
  34/8 66/7 72/24
complete [2]   28/6 28/11
completely [2]   30/12 49/25
complicated [1]   66/3
complications [1]   71/14
concept [3]   64/6 64/7 64/13
concern [5]   4/22 5/8 57/5
  58/18 80/9
concerned [1]   5/7
concerns [1]   5/3
conclude [7]   26/17 28/16
  28/17 29/3 30/21 40/21 55/12
concluded [2]   13/8 89/25
conclusion [3]   25/20 28/14
  84/22
conclusions [2]   27/16 29/4
conference [1]   69/6
confident [2]   4/24 76/14
confuse [1]   35/4
confusion [1]   75/24
connected [3]   52/5 64/22
  79/1
connection [7]   11/19 15/19
  15/23 34/14 49/12 78/4 79/3
consider [1]   85/6
considered [2]   74/15 74/19
consistent [6]   15/12 21/14
  23/11 24/25 69/3 69/4
consolidated [1]   48/14
consternation [1]   70/13
constituent [1]   68/18
constitutes [1]   90/4
Constitution [1]   2/8
construction [4]   26/11 38/15
  40/20 43/17
contact [2]   88/15 88/19
contemplate [3]   15/16 52/13
  75/17
contemplated [2]   15/6 38/9

**C**

contend [1]   10/15
context [24]   19/18 21/3 21/5
  21/7 21/9 21/20 21/21 22/21
  23/2 26/9 26/13 27/5 28/24
  30/5 41/4 47/7 48/3 48/19
  51/25 61/23 70/23 71/1 71/8
  81/15
contingency [2]   75/23 76/2
contingent [10]   46/16 52/13
  75/17 76/4 76/7 76/8 76/16
  76/18 76/22 77/19
contingent-fee [1]   76/16
continue [2]   47/4 82/16
CONTINUED [2]   1/23 2/1
contract [22]   10/7 10/11
  10/18 40/20 42/11 43/19 51/9
  53/14 53/25 54/3 54/15 54/16
  54/21 60/14 63/16 64/17
  70/15 82/11 82/22 83/2 83/10
  86/24
contracting [1]   27/4
contracts [44]   5/22 5/24 6/5
  6/6 7/8 7/21 9/2 9/12 9/13
  9/16 9/23 9/24 14/1 20/3
  22/18 22/20 24/21 25/15
  25/17 26/10 26/11 26/18 27/5
  42/13 52/12 55/19 55/22 57/9
  64/1 64/3 64/6 64/22 71/2
  75/16 79/16 79/17 79/22
  80/15 81/23 82/6 82/10 82/11
  82/14 84/22
contractual [2]   83/7 83/9
contrary [1]   83/10
contribute [1]   54/6
control [1]   9/24
conversation [11]   62/14 68/7
  69/23 70/6 70/11 81/4 81/7
  81/8 81/14 81/15 81/16
conversations [2]   60/4 68/21
convince [1]   86/4
convinced [2]   32/13 83/4
copy [3]   23/24 31/25 73/15
core [1]   72/4
correct [11]   6/22 21/23 29/8
  46/14 54/5 57/13 65/22 70/8
  83/6 84/10 90/4
correction [1]   33/12
costs [1]   46/2
could [32]   3/14 18/8 18/8
  20/7 22/4 23/6 23/7 27/16
  27/24 28/1 28/2 28/14 29/3
  29/20 37/16 40/21 40/24
  42/12 42/16 51/9 53/4 58/24
  63/12 63/16 65/11 71/21
  85/11 86/5 86/17 88/3 88/14
  88/15
couldn't [3]   41/20 58/17
  78/6
counsel [9]   3/4 3/5 3/8 4/3
  10/12 48/1 49/16 57/16 81/3
countries [2]   6/18 44/9
country [2]   55/4 55/12
couple [3]   21/2 76/11 78/18
course [5]   17/25 22/4 27/18
  46/25 80/2
court [28]   1/1 2/6 2/7 5/19
  5/20 5/25 9/8 15/10 15/11
  22/13 23/21 26/8 35/7 40/21

55/10 57/3 64/24 66/9 67/16
69/20 72/18 73/3 76/20 78/13
79/18 82/19 90/3 90/13
Court's [1]   23/16
Courts [1]   2/7
cover [18]   6/7 6/9 7/8 7/22
  8/1 9/2 9/3 9/5 9/5 10/5
  18/23 19/11 19/17 25/15
  54/23 62/13 80/2 82/19
covered [10]   43/2 57/6 57/9
  61/1 61/2 70/14 76/3 76/19
  80/2 84/14
covering [2]   30/22 30/23
covers [4]   12/11 17/6 17/11
  46/23
Craig [8]   1/14 1/18 3/6 4/1
  32/21 53/6 65/18 86/20
create [1]   29/14
created [1]   79/12
creating [1]   33/15
credibility [1]   28/8
credit [1]   21/11
cries [1]   85/18
Crime [1]   16/2
crossing [1]   5/16
Crowe [7]   13/20 13/22 34/4
  49/2 66/6 77/25 79/23
Cuba [1]   44/9
curiosity [1]   43/25
curious [1]   65/14

**D**

D.C [1]   86/1
damages [2]   5/22 86/7
darn [1]   20/14
date [14]   51/10 55/25 73/1
  73/18 80/1 83/17 83/18 85/7
  85/12 85/14 86/3 88/14 88/15
  88/17
dated [4]   11/8 31/22 72/22
  90/10
day [8]   12/10 31/18 42/5
  53/5 55/16 86/7 89/24 90/10
days [4]   44/3 44/3 44/5
  88/19
DC [3]   1/6 2/5 2/9
deadline [1]   89/10
deal [5]   20/25 31/19 31/20
  34/8 80/11
dealing [4]   13/12 43/12 44/3
  85/21
deals [1]   66/2
death [4]   11/14 48/12 82/15
  87/1
decade [1]   4/13
deceased [2]   1/4 85/10
decedent's [1]   48/12
December [1]   43/4
December 2017 [1]   43/4
decide [2]   64/20 64/20
deciding [2]   4/24 4/25
decision [2]   29/5 72/15
declaration [1]   47/12
declarations [1]   55/8
deeply [1]   41/17
default [27]   16/17 8/7 44/11
  44/14 44/16 44/20 50/19
  50/21 52/16 54/10 55/4 55/11
  55/18 55/20 56/8 56/9 64/15
  76/19 76/25 76/25 77/2 77/5

77/10 77/13 83/16 83/18
83/20
defaulted [2]   44/14 54/10
defendant [3]   49/23 55/18
  72/25
Defendant's [10]   9/14 23/21
  23/22 65/5 65/21 65/23 69/17
  70/1 73/4 74/1
defendants [13]   1/8 1/18 2/3
  3/25 7/7 7/15 18/9 21/22
  23/5 31/1 34/14 64/7 81/24
defendants' [3]   5/11 21/7
  73/10
defense [4]   56/13 57/16
  84/18 85/3
defense's [2]   82/23 83/14
defenses [2]   7/11 53/15
defer [2]   46/4 89/15
defies [1]   41/17
define [1]   14/24
defined [4]   12/20 15/20 36/5
  49/9
defining [1]   36/9
definitely [1]   69/12
definition [4]   12/19 18/24
  32/20 36/21
definitional [1]   36/8
definitive [1]   40/19
delighted [1]   17/23
deny [1]   84/9
depends [2]   28/7 86/14
deposition [3]   21/15 47/11
  47/14
deputy [1]   88/15
derogatory [1]   41/19
described [2]   24/22 56/13
describes [2]   10/13 59/17
deserves [1]   66/11
designated [1]   66/12
designed [1]   19/17
despite [1]   59/20
detail [1]   41/9
details [1]   73/15
determine [3]   5/21 28/23
  53/14
device [1]   54/25
DEX [1]   29/25
did [15]   14/22 17/12 22/5
  32/21 43/14 50/18 51/7 54/5
  54/7 55/12 56/22 78/23 78/25
  84/23 86/8
didn't [23]   22/23 25/1 38/12
  50/23 51/14 53/16 54/2 54/2
  54/13 56/14 56/14 58/22
  65/10 75/21 78/7 79/2 82/25
  83/18 83/25 84/7 84/20 85/4
  88/25
differ [1]   76/6
difference [1]   8/8
different [15]   21/2 27/6
  27/16 29/25 32/22 33/6 33/7
  37/23 53/16 54/17 54/17
  58/23 66/2 77/1 79/21
differently [1]   14/12
difficult [1]   28/8
diplomatic [3]   33/23 47/18
  51/22
dipping [1]   80/9
direct [2]   72/25 73/16
directed [1]   75/9

**direction [1]**  42/17
**directly [2]**  6/7 23/9
**disabilities [1]**  85/20
**disagree [6]**  13/3 30/12 30/19 36/16 37/6 48/2
**disagreement [2]**  26/10 47/13
**discounted [1]**  46/12
**discovery [2]**  58/16 87/6
**discuss [2]**  43/14 68/20
**discussed [5]**  17/11 29/22 55/16 67/15 69/21
**discusses [1]**  68/25
**discussing [2]**  62/14 66/1
**discussion [3]**  43/1 68/19 84/2
**disingenuous [1]**  25/13
**dispositive [1]**  82/21
**dispute [8]**  6/2 7/3 7/8 26/19 28/17 29/19 37/17 54/23
**disputed [1]**  52/15
**disrespectful [1]**  41/16
**dissipate [1]**  85/13
**distinction [1]**  76/25
**distributions [4]**  43/6 43/7 44/7 44/10
**DISTRICT [7]**  1/1 1/1 1/11 2/7 7/17 11/13 49/9
**dividing [1]**  55/23
**do [78]**  5/23 6/6 6/7 8/13 9/8 9/9 9/16 10/8 10/14 12/15 15/3 15/15 17/20 17/20 21/17 21/18 22/4 23/11 23/24 26/6 26/13 27/21 28/5 28/5 29/11 29/20 31/20 34/9 40/17 41/22 42/2 42/2 42/23 44/25 47/5 47/10 47/23 48/2 49/15 49/15 50/24 51/2 51/11 51/14 51/15 51/17 51/20 52/4 52/16 52/17 52/22 54/7 55/22 56/14 58/3 60/13 63/11 64/25 72/7 72/19 72/21 73/3 73/20 73/20 75/5 75/21 78/7 79/17 81/10 82/19 83/5 86/1 86/2 87/12 88/7 88/13 89/10 89/16
**docket [12]**  9/18 10/4 52/8 67/20 69/18 70/2 73/6 73/8 74/3 75/12 79/5 79/12
**dockets [1]**  10/2
**document [21]**  14/24 24/5 24/10 25/2 25/6 25/7 52/10 60/6 60/8 60/9 60/12 60/13 60/15 69/22 69/25 70/4 73/13 74/1 79/4 81/3 81/6
**documents [2]**  15/5 78/9
**does [27]**  4/20 11/21 12/15 14/7 14/25 15/25 26/8 26/19 29/18 29/19 32/23 32/25 33/9 40/11 40/17 43/18 44/1 45/9 47/23 54/21 57/8 57/10 57/22 58/5 73/17 81/15 82/17
**doesn't [15]**  18/23 20/17 20/18 21/19 21/19 24/19 27/7 45/14 51/11 54/20 54/20 63/15 77/19 81/6 81/14
**dog [6]**  82/24 83/24 84/7 84/20 85/4 88/25
**doing [13]**  17/9 49/21 50/24

54/4 54/6 63/22 70/10 76/15 76/21 77/11 80/10 84/2 84/6
**dollar [3]**  31/19 45/15 62/10
**dollars [4]**  41/14 44/22 58/9 77/10
**don't [79]**  4/9 4/13 4/17 5/3 5/13 6/25 7/7 9/9 9/11 10/11 10/15 12/1 13/3 17/7 17/8 18/3 18/5 18/6 18/7 18/22 19/19 21/15 23/25 25/3 25/5 29/15 34/12 36/16 36/18 36/24 37/17 39/4 40/3 40/23 41/16 41/18 43/25 44/6 44/11 44/25 45/21 45/23 45/25 46/8 47/13 49/7 53/18 54/9 54/16 54/22 55/1 55/3 55/18 56/15 56/15 57/18 57/18 58/15 59/4 60/9 60/15 63/7 64/11 64/19 67/9 69/3 69/7 69/8 72/9 73/15 74/8 83/9 83/13 83/21 84/15 88/8 89/5 89/11 89/18
**Donald [1]**  31/14
**done [10]**  14/13 21/5 28/24 28/25 51/18 52/5 77/6 77/13 80/12 88/2
**door [1]**  55/1
**double [1]**  80/9
**doubtful [1]**  83/23
**down [8]**  16/2 16/13 20/11 66/16 67/11 69/11 85/16 85/25
**dozen [1]**  55/5
**dozens [1]**  55/8
**draft [1]**  17/21
**drafting [2]**  33/14 82/22
**Drive [1]**  1/16
**dubious [1]**  84/15
**during [2]**  58/16 60/21

_____

**E**

**each [18]**  16/9 16/10 16/14 19/4 23/20 26/22 35/14 36/6 36/7 37/23 41/5 41/8 48/11 48/12 58/1 61/23 79/22 79/23
**earlier [20]**  11/12 11/13 13/17 13/20 14/1 17/11 18/18 23/1 23/10 32/11 34/21 39/11 48/24 49/4 55/25 57/9 59/8 77/24 80/1 80/3
**early [3]**  10/5 13/13 85/17
**earned [1]**  51/7
**easiest [1]**  9/14
**easy [1]**  55/14
**echoed [1]**  77/24
**Edward [1]**  41/3
**effect [1]**  87/1
**effective [7]**  10/24 22/21 22/23 71/6 71/7 73/18 80/6
**effort [4]**  10/22 21/10 50/5 81/25
**efforts [3]**  12/14 48/8 49/19
**either [4]**  28/14 51/3 51/20 84/1
**element [1]**  10/10
**elements [1]**  23/19
**elephant [2]**  41/12 83/25
**elephants [3]**  42/3 44/1 47/2
**eliding [1]**  76/24
**else [5]**  17/3 22/14 35/12 36/18 36/24

**email [26]**  24/10 25/12 27/23 31/22 58/25 59/1 59/2 59/8 59/9 59/13 61/20 62/8 62/14 65/7 65/23 65/25 67/18 67/22 69/17 70/5 70/10 73/5 75/14 79/5 79/14 84/3
**emails [2]**  43/15 43/16
**embarrassed [1]**  79/18
**Emily [1]**  1/19 3/24
**enacted [2]**  43/4 51/1
**enactment [2]**  19/25 78/21
**encompass [4]**  22/24 23/1 25/18 75/24
**encompassed [2]**  30/13 43/22
**encourage [2]**  4/21 87/11
**encouraging [1]**  47/15
**end [6]**  22/4 42/5 43/6 58/23 78/1 78/15
**endeavor [2]**  53/12 71/5
**enforceable [1]**  10/10
**enforcement [1]**  6/13
**enforcing [1]**  50/11
**engaged [2]**  51/21 62/8
**enormous [2]**  43/20 77/9
**enough [15]**  4/9 4/17 6/9 7/13 9/2 14/19 18/3 29/15 39/4 53/6 53/16 56/14 57/6 57/7 72/15
**enter [1]**  8/4
**entered [9]**  6/17 54/10 54/11 56/9 56/9 80/22 83/16 83/18 84/12
**enters [1]**  77/3
**entirely [3]**  39/3 44/25 82/21
**entirety [2]**  43/14 43/19
**entitled [25]**  7/4 17/17 23/7 37/5 37/8 41/25 44/4 44/5 46/11 50/8 51/11 56/3 58/8 59/2 59/16 61/6 67/3 77/10 77/20 81/1 83/5 84/16 84/18 85/3 90/5
**entitlement [3]**  65/7 66/11 74/25
**entity [1]**  18/12
**entry [3]**  76/25 77/2 83/20
**Eric [2]**  2/3 4/2
**errantly [1]**  25/4
**essentially [2]**  8/2 29/13
**establish [1]**  22/9
**established [1]**  58/21
**estate [7]**  1/3 3/7 7/4 48/1 81/3 85/11 85/19
**estate's [1]**  44/3
**et [2]**  1/7 3/3
**even [13]**  8/19 9/2 17/8 17/12 29/5 36/19 44/18 54/15 56/2 63/24 64/3 64/5 64/10
**evening [1]**  72/1
**event [1]**  49/3
**ever [1]**  43/1
**every [1]**  8/9
**everybody [2]**  73/21 75/23
**everyone [3]**  4/5 4/24 88/16
**everything [1]**  49/20
**evidence [54]**  9/9 19/20 19/21 19/23 20/5 20/6 21/1 21/5 23/19 24/8 25/19 26/9 26/19 26/20 26/22 27/1 27/7 27/7 27/14 28/15 28/21 28/23

## E

evidence... **[32]**   29/2 29/19
40/19 42/23 51/7 53/20 53/21
53/24 57/4 59/1 62/2 62/6
64/19 65/3 65/16 67/14 70/15
71/17 72/14 72/21 75/9 80/14
80/18 80/19 80/20 80/24 81/2
82/20 82/21 82/23 83/3 84/21
**exact [1]**   25/3
**exactly [2]**   24/22 30/24
**example [6]**   18/13 23/9 27/13
27/22 40/22 82/24
**exception [1]**   76/15
**exchange [3]**   52/14 62/8
75/18
**exclude [1]**   64/14
**excluded [1]**   51/10
**excluding [1]**   83/21
**exclusion [1]**   43/18
**Excuse [1]**   23/24
**executed [3]**   12/9 13/12
22/19
**execution [4]**   19/23 20/6
23/19 24/7
**executive [2]**   35/8 66/21
**exhibit [26]**   9/15 9/17 9/18
23/22 27/22 30/1 31/21 32/2
32/4 33/1 47/22 48/4 59/7
59/13 65/6 65/20 65/21 65/23
67/20 69/17 69/17 70/1 73/4
74/1 74/23 75/10
**Exhibit 3 [1]**   9/17
**Exhibit 4 [1]**   9/18
**Exhibit 52 [2]**   31/21 33/1
**exhibits [3]**   9/15 23/22 80/7
**existed [1]**   18/11
**existence [1]**   37/25
**existing [1]**   36/25
**expands [1]**   12/19
**expect [4]**   21/1 51/14 83/2
84/6
**expected [1]**   36/21
**expecting [1]**   79/1
**expects [1]**   28/7
**expeditious [1]**   10/25
**expenses [1]**   46/24
**experience [2]**   87/14 87/16
**expert [1]**   55/8
**explain [3]**   18/25 65/11
84/23
**explained [1]**   39/16
**explains [3]**   22/22 28/24
62/2
**exposed [1]**   74/14
**exposure [1]**   74/14
**express [2]**   6/8 16/25
**expressing [2]**   59/19 70/12
**expression [1]**   43/17
**expressly [4]**   15/20 17/8
19/17 60/7
**extended [1]**   31/9
**extension [1]**   60/23
**extent [7]**   42/22 51/11 73/3
76/7 83/11 84/11 85/15
**extinguishes [1]**   11/16
**extra [2]**   23/24 31/25
**extrinsic [1]**   27/1

## F

**face [2]**   13/22 14/24

**fact [17]**   16/20 20/17 23/14
24/23 26/16 27/18 28/1 29/7
29/15 29/19 38/16 54/23
55/19 62/7 62/17 67/2 70/13
86/25
**facts [2]**   55/17 57/4
**factual [1]**   8/9
**factually [2]**   8/10 9/1
**failed [1]**   22/3
**fair [11]**   7/13 10/25 14/19
23/4 25/6 28/10 39/4 41/9
48/6 52/1 53/6
**fairly [1]**   28/6
**faith [2]**   58/12 67/3
**fall [1]**   51/9
**familiar [1]**   45/16
**families [4]**   45/1 45/1 45/4
48/9
**family [1]**   45/7
**fantastic [1]**   34/8
**far [1]**   34/5
**fast [3]**   15/10 48/18 59/11
**faster [1]**   68/15
**feasibly [1]**   66/7
**February [2]**   22/16 71/14
**February 2017 [1]**   22/16
**fed [1]**   68/17
**federal [1]**   49/21
**fee [26]**   16/11 16/15 16/16
16/21 19/5 23/7 33/19 34/4
36/20 36/21 37/23 39/22
41/10 41/11 41/18 46/10
46/16 47/24 48/11 48/13 49/1
58/2 62/19 75/1 76/16 78/5
**feel [6]**   5/8 36/12 53/15
63/15 80/11 80/13
**feels [1]**   42/22
**fees [7]**   24/16 35/15 61/6
66/12 78/2 78/6 78/16
**felt [1]**   21/15
**few [2]**   13/7 88/4
**FH [1]**   1/15
**fields [1]**   87/15
**Fifteen [2]**   46/21 46/22
**Fifteen percent [1]**   46/22
**figure [3]**   30/18 63/7 88/18
**file [22]**   5/23 15/18 16/25
17/1 17/8 17/9 17/18 17/20
17/22 17/24 33/18 33/22 34/1
34/8 34/12 39/21 50/14 62/19
88/8 88/10 89/12 89/13
**filed [48]**   10/6 11/12 12/12
12/12 12/13 14/2 15/17 15/17
15/21 16/2 16/3 16/10 16/15
16/18 17/1 18/19 18/20 18/21
19/5 19/8 30/16 31/11 31/11
34/5 34/6 34/22 35/15 35/16
36/7 37/20 38/7 38/8 38/17
38/22 38/24 39/13 40/9 48/25
49/4 55/25 58/1 58/3 60/20
60/21 60/24 61/15 62/5 72/25
**filing [15]**   13/2 16/19 17/3
18/8 19/9 31/2 35/17 37/5
37/16 38/25 40/10 40/23 43/4
61/6 75/2
**final [2]**   65/16 71/21
**finally [2]**   23/18 47/18
**find [5]**   9/14 62/16 83/11
88/15 88/20
**finder [2]**   27/16 62/7

**finding [1]**   60/12
**findings [1]**   59/21
**fine [7]**   12/7 26/6 86/11
86/18 88/6 89/9 89/17
**firm [14]**   4/2 6/7 7/23 9/4
13/8 35/7 44/19 50/22 59/15
70/13 77/16 78/8 81/11 81/16
**firm's [1]**   56/16
**firms [5]**   33/5 50/22 54/18
56/17 79/23
**first [25]**   4/11 11/7 13/25
15/4 21/9 22/16 24/8 24/13
28/17 28/22 31/14 31/15
33/10 36/24 43/7 48/24 53/13
54/13 57/16 57/19 66/5 71/12
71/13 74/21 88/4
**flexibility [1]**   88/10
**flow [1]**   22/18
**flowing [1]**   25/14
**focus [1]**   88/3
**focused [1]**   47/17
**focusing [1]**   49/4
**folks [3]**   3/12 3/19 84/4
**follow [2]**   38/12 39/3
**followed [1]**   39/17
**following [1]**   38/25
**foregoing [1]**   90/4
**foreign [5]**   6/15 55/4 55/6
55/9 76/15
**forgot [1]**   43/8
**form [6]**   33/9 34/7 37/20
38/19 63/24 77/3
**former [1]**   68/7
**forms [1]**   10/10
**forth [3]**   43/15 57/14 60/16
**fortunately [1]**   13/4
**forward [4]**   20/13 20/15
48/18 85/14
**found [1]**   18/6
**four [1]**   44/9
**frame [1]**   60/21
**framed [1]**   49/8
**frames [1]**   48/3
**framework [1]**   26/24
**frankly [7]**   4/8 54/25 58/7
64/10 84/19 85/7 85/18
**free [1]**   5/8
**frequently [1]**   60/3
**front [6]**   6/16 9/16 10/2
27/21 30/2 31/21
**frustration [2]**   59/20 70/12
**full [5]**   3/21 12/16 13/24
14/3 24/14
**function [1]**   14/11
**functionally [1]**   8/6
**fund [36]**   6/11 6/15 6/20
6/20 7/18 16/2 22/9 22/10
22/11 22/11 22/16 23/10
24/16 24/17 37/9 37/16 38/5
38/18 38/21 46/18 50/9 50/14
50/14 52/25 58/10 58/11
58/21 59/19 56/13 66/25 68/3
70/19 70/22 74/15 75/6 80/16
**funded [5]**   8/14 25/9 40/13
59/19 71/5
**funding [3]**   69/8 69/11 69/24
**funds [28]**   6/10 6/19 8/15
23/8 23/15 30/13 30/17 30/21
32/10 33/25 34/13 35/6 40/22
41/25 44/4 52/18 57/6 58/22

**F**

funds... **[10]**  59/3 62/21
62/23 65/13 69/8 70/14 70/18
71/15 75/25 81/25
further **[5]**  32/9 53/3 68/20
84/18 85/2
future **[3]**  8/17 71/3 71/4

**G**

gallery **[3]**  3/12 3/20 3/21
gathered **[1]**  39/20
gathering **[2]**  33/17 62/18
general **[2]**  15/8 21/9
generally **[3]**  26/24 29/2
68/8
generically **[1]**  53/1
genuine **[1]**  29/15
genuinely **[1]**  44/6
get **[52]**  4/6 17/9 17/10
21/12 21/17 22/2 24/16 25/14
29/1 29/1 30/12 31/1 31/11
32/20 33/18 34/7 34/12 35/5
37/1 37/10 37/25 38/23 39/22
41/18 42/5 45/17 47/1 50/6
50/6 51/17 51/22 54/20 54/25
61/11 61/12 61/14 61/14
61/14 62/5 62/19 68/14 68/25
70/18 74/15 76/7 77/2 79/2
79/13 80/10 80/11 85/13 88/1
gets **[14]**  7/24 8/16 27/9
31/2 34/21 38/21 41/10 41/10
42/10 54/21 60/9 60/16 61/3
77/6
getting **[14]**  10/16 13/21
17/22 25/16 35/22 49/2 49/3
52/21 55/4 59/20 62/23 76/9
76/18 80/12
give **[19]**  4/19 31/24 38/13
39/2 53/6 53/7 58/12 65/1
65/2 65/3 65/15 65/16 73/6
73/8 74/3 75/12 88/9 89/10
89/18
given **[2]**  38/16 87/8
giving **[1]**  41/13
Glad **[1]**  3/18
go **[26]**  8/14 15/9 31/16 32/6
34/3 37/12 37/19 39/6 41/4
42/15 42/23 43/15 44/1 47/6
49/6 50/12 51/6 60/11 60/12
62/7 68/14 69/8 73/18 73/24
76/8 76/9
goes **[11]**  10/18 10/18 26/25
46/23 48/14 49/6 68/20 71/17
75/11 80/7 81/2
going **[53]**  4/6 4/9 14/19
20/12 20/15 21/17 21/18
24/17 26/7 28/3 31/4 31/20
32/17 34/9 37/10 38/23 39/23
40/16 40/16 41/8 42/5 42/6
44/11 46/4 48/23 49/1 49/15
49/15 49/15 50/1 50/5 50/6
54/15 56/21 58/21 58/22
59/11 59/18 61/13 61/13
62/10 63/11 64/24 65/1 65/2
67/24 70/22 72/14 72/20 77/9
79/1 80/11 89/14
Goldman **[9]**  33/4 33/11 62/14
62/15 62/17 73/7 73/14 79/15
80/8

Goldman's **[2]**  61/22 73/18
good **[28]**  3/10 3/18 3/24
5/15 25/25 26/1 32/22 58/12
65/19 67/3 77/23
got **[10]**  8/13 24/2 31/2 32/5
46/20 59/10 63/3 63/17 73/12
74/8
governing **[1]**  11/9
government **[7]**  8/18 8/21
8/22 10/24 18/11 51/17 82/1
Grace **[2]**  1/15 3/9
Graham **[1]**  68/3
grant **[1]**  63/16
great **[4]**  31/19 58/16 69/3
88/1
greatest **[3]**  72/20 75/11
79/8
ground **[2]**  28/16 74/15
group **[1]**  74/19
groups **[1]**  66/2
guess **[8]**  18/7 18/8 46/11
46/12 61/19 80/18 84/8 86/3
guy **[3]**  54/20 54/21 60/5
guys **[1]**  43/23

**H**

had **[47]**  3/21 14/17 14/21
16/22 17/20 18/1 21/24 22/1
22/2 22/24 23/1 27/23 31/7
31/9 33/7 34/1 48/25 50/24
51/2 51/15 51/20 52/16 52/17
60/6 60/8 63/1 63/9 68/5
68/7 70/6 73/3 73/20 73/20
73/25 76/2 77/12 77/13 77/14
77/16 78/4 81/5 81/8 81/8
81/17 81/17 81/17 85/20
half **[2]**  43/7 62/1
hand **[2]**  23/25 83/22
handled **[1]**  55/5
handling **[1]**  76/14
Hang **[1]**  73/9
happen **[1]**  48/20
happened **[9]**  18/9 22/25 25/4
27/25 31/7 31/16 34/11 43/3
56/8
happening **[4]**  8/6 22/14
43/10 43/13
happens **[1]**  34/9
happy **[6]**  5/13 85/6 85/7
85/13 86/1 86/2
hard **[6]**  15/10 15/10 15/11
53/16 59/12 78/24
harmed **[1]**  82/2
harmonize **[1]**  79/20
has **[48]**  4/8 7/17 7/23 8/18
8/21 15/12 16/10 16/15 18/9
18/10 18/12 19/5 23/8 23/11
23/12 27/24 29/14 30/11 31/8
35/15 36/7 39/17 41/13 47/11
48/1 48/13 49/21 52/22 53/3
55/12 58/1 58/3 58/9 63/17
64/24 66/10 68/24 74/2 74/9
78/21 79/19 79/23 80/4 80/23
80/25 82/19 85/9 89/24
hasn't **[2]**  34/11 80/5
have **[115]**
haven't **[3]**  20/19 30/16
67/15
having **[5]**  34/1 35/16 46/20
81/7 81/13

he **[192]**
He's **[2]**  38/15 59/22
head **[1]**  32/17
health **[1]**  58/16
hear **[4]**  5/13 24/15 28/19
59/12
heard **[1]**  64/10
hearing **[3]**  1/10 53/15 64/12
hell **[1]**  69/2
help **[5]**  24/15 26/22 47/15
56/14 60/12
helpful **[14]**  19/19 20/7 21/3
21/4 32/1 32/17 33/1 47/6
52/8 52/9 65/11 73/4 85/16
89/22
helping **[1]**  52/18
helps **[1]**  27/1
her **[2]**  65/1 84/23
here **[45]**  3/13 3/16 4/20
5/10 5/11 5/18 5/20 6/2 6/4
9/24 15/20 16/25 20/25 24/8
24/25 26/10 28/11 29/4 30/3
30/4 31/24 34/18 35/25 37/17
38/4 38/14 39/2 42/5 48/23
49/4 49/8 50/5 54/14 56/15
56/16 60/7 61/23 62/10 63/3
64/7 76/1 85/15 87/24 88/17
89/5
hereto **[1]**  11/7
heretofore **[2]**  11/9 11/18
hesitate **[2]**  57/3 57/3
hey **[3]**  25/13 69/7 74/24
highlight **[1]**  19/22
highly **[1]**  83/22
Hill **[1]**  84/4
him **[12]**  13/24 25/4 28/3
37/6 37/8 47/15 53/8 59/18
59/18 70/22 80/2 81/17
himself **[3]**  41/20 51/13 54/2
hired **[1]**  14/16
his **[39]**  10/9 10/12 11/2
12/16 21/14 24/10 31/15
31/15 32/21 33/11 35/6 36/7
41/11 41/18 47/11 47/11
47/14 50/3 50/5 50/6 52/19
53/21 53/24 56/15 59/8 59/19
59/20 62/14 68/2 68/20 69/23
70/11 70/12 70/13 76/18
77/18 78/23 80/9 87/1
history **[1]**  20/1
hits **[3]**  72/20 75/11 79/8
hold **[1]**  68/7
hole **[1]**  83/25
holes **[3]**  42/3 44/2 47/2
honestly **[1]**  54/9
Honor **[68]**  3/6 3/24 5/2 5/4
5/15 7/1 7/19 8/2 8/25 9/7
10/4 12/1 13/3 14/4 14/15
14/22 15/13 16/4 16/23 17/6
18/1 18/15 18/22 22/20 23/18
23/25 24/6 24/13 24/23 24/25
25/22 25/25 30/24 34/2 36/24
38/11 39/17 42/22 46/4 48/21
52/20 53/3 53/13 54/9 58/5
58/13 60/1 61/19 63/6 64/20
65/19 65/20 67/1 67/16 68/22
69/16 71/15 71/19 71/22
72/10 75/9 77/23 80/20 81/4
86/15 86/23 89/5 89/20
Honor's **[2]**  72/21 74/12

**H**

HONORABLE [1]   1/11
hope [3]   22/4 22/5 87/12
hopeful [3]   44/3 44/3 44/5
hopefully [1]   5/19
horrible [1]   85/22
hours [1]   55/7
how [35]   7/15 16/24 17/7
23/20 25/9 27/16 30/18 36/18
36/24 39/14 40/15 40/24 41/1
41/18 41/20 42/12 43/22 44/2
44/4 44/11 44/21 45/22 45/23
48/23 56/20 66/6 71/15 74/22
75/20 79/18 82/8 86/14 87/23
88/18 89/19
however [2]   78/20 83/5
huge [1]   84/1
hundreds [2]   55/7 55/7
hurdle [1]   74/21
hurt [1]   26/22
hypothetical [1]   34/8

**I**

I'd [1]   74/24
I'm [24]   3/14 5/11 14/6 15/8
16/13 21/25 29/24 32/2 53/23
56/6 59/11 59/13 60/11 64/4
68/3 69/25 70/1 73/23 74/3
74/7 74/7 78/11 81/11 85/21
idea [7]   21/16 34/6 44/24
58/19 58/20 68/23 73/18
ideas [1]   58/19
identical [2]   8/10 9/1
identified [3]   18/9 30/25
33/24
illuminate [1]   27/2
imagine [1]   40/20
imbalances [1]   68/16
Immunities [1]   55/10
immunity [2]   6/16 76/15
impact [1]   44/12
implausible [1]   36/14
importance [2]   78/24 79/3
important [14]   6/3 23/2
24/25 30/3 37/17 49/24 52/5
57/2 57/20 68/22 75/10 75/22
76/4 80/14
importantly [2]   33/16 47/21
improbable [1]   42/4
incidentally [1]   77/23
inclined [2]   84/8 86/23
include [14]   12/21 15/6
15/16 15/25 18/17 24/19
32/25 37/12 43/8 54/3 66/15
71/3 83/1 83/23
included [6]   30/21 32/11
60/14 64/23 82/12 83/14
includes [1]   32/25
including [3]   80/3 82/10
84/13
incoming [1]   73/19
incorporated [2]   32/11 34/4
incorporates [1]   12/13
increases [1]   12/16
incredibly [1]   49/24
indicate [1]   61/8
indicated [1]   83/17
indicative [1]   83/2
indisputably [2]   27/13 28/21

**individuals** [1]   74/14
individuals [1]   64/12
information [1]   58/17
informed [1]   22/17
informs [1]   23/16
inject [1]   82/17
injuries [1]   66/15
injury [5]   8/11 11/14 48/12
74/20 82/15
insane [1]   58/8
inspiration [1]   66/19
instead [2]   5/23 50/14
institutionally [2]   28/12
29/4
intended [8]   10/5 27/8 29/2
39/19 42/17 75/24 79/7 82/19
intent [1]   26/14
intention [2]   83/1 83/23
interchangeable [1]   33/12
interesting [4]   23/20 61/25
62/1 89/1
interests [1]   68/18
international [3]   23/10
43/12 58/21
interplay [1]   69/10
interpretation [1]   69/4
interpreted [1]   10/12
involved [5]   18/14 56/2 56/8
73/21 83/15
involvement [3]   44/19 68/2
77/4
Iran [22]   6/17 8/7 8/13
18/13 44/9 44/12 44/14 44/21
50/10 50/13 50/15 50/16
50/19 50/25 51/19 52/16 54/8
55/20 64/15 76/20 77/14
83/18
Iranian [1]   54/24
is [637]
is useless [1]   20/22
Isaakson [1]   68/3
isn't [6]   37/4 51/8 59/25
69/2 69/7 81/22
issue [12]   4/18 4/20 5/24
6/3 6/4 29/12 29/14 29/15
41/23 47/3 54/14 81/25
issued [4]   50/20 62/19 77/13
77/14
issues [4]   6/2 22/3 66/7
86/25
issuing [1]   82/3
it [354]
It's [1]   19/25
itself [1]   75/22

**J**

Jack [3]   69/2 69/5 69/7
James [1]   3/25
January [8]   22/21 22/23
22/25 52/7 71/2 72/23 75/14
80/6
January 2017 [2]   71/2 80/6
JASTA [11]   10/14 10/16 49/17
49/21 51/16 51/21 72/24 73/2
73/22 78/21 78/24
Jerry [7]   33/3 33/4 61/21
62/14 62/15 66/5 66/6
Jerry's [1]   80/4
Jim [1]   4/3
job [2]   69/7 69/11

**John** [3]   1/4 48/10 49/11
joined [1]   48/18
joint [3]   88/9 88/16 88/23
judge [7]   1/11 4/18 4/24
77/4 77/9 85/24 87/15
judging [1]   28/7
judgment [43]   5/12 5/24 6/13
7/17 8/5 8/7 8/13 26/10 27/9
29/13 44/11 44/20 50/10
50/12 50/20 52/21 54/8 54/10
54/11 54/25 55/4 55/18 56/8
56/9 63/16 64/15 76/8 76/9
76/18 76/20 77/1 77/5 77/10
77/13 82/4 83/5 83/12 83/13
83/21 84/9 84/12 84/16 85/3
judgments [7]   6/17 44/17
50/21 50/25 51/10 52/22
77/14
July [6]   1/6 10/6 11/8 12/13
89/19 90/10
July 9th [1]   10/6
jurisdiction [2]   49/21 49/24
jury [5]   26/23 28/13 29/3
29/7 42/11
jury's [1]   28/12
just [92]
Justice [1]   49/17
justified [2]   78/2 78/16
justify [1]   78/6

**K**

keep [2]   15/11 53/10
Kevin [2]   1/14 3/8
key [1]   78/21
Kill [2]   33/4 66/6
kind [7]   15/23 19/13 21/6
21/12 59/11 60/5 74/21
kingdom [2]   49/23 51/17
Kirsch [10]   1/19 1/19 3/25
3/25 25/24 56/22 58/25 61/20
72/17 84/23
KK2275 [1]   79/14
knew [2]   43/13 78/3
know [61]   4/13 4/17 4/17
4/20 4/22 9/1 16/1 18/3 18/5
18/6 18/22 20/2 21/10 21/10
21/24 23/3 23/19 26/8 30/6
32/17 36/18 36/19 36/24
40/18 40/23 40/24 41/1 44/6
44/7 44/11 44/25 44/25 45/22
45/23 45/25 46/8 46/15 47/11
51/23 54/9 55/23 56/15 56/16
60/5 61/8 61/10 62/15 65/10
65/12 67/7 67/9 67/10 68/3
71/14 71/15 83/14 87/8 88/2
88/11 89/5 89/13
Korea [1]   44/10
KREINDLER [61]   1/7 1/7 3/3
3/3 4/1 4/1 4/1 4/3 6/7 7/23
9/4 10/13 10/13 11/3 11/3
13/8 13/21 15/17 15/18 15/22
15/22 24/11 24/23 33/3 35/7
44/19 45/1 45/7 47/11 47/15
48/8 48/8 48/10 48/10 48/13
48/13 50/22 52/3 56/16 59/8
59/9 59/15 59/15 60/2 61/21
66/1 67/24 69/1 69/23 70/10
70/11 70/13 73/15 75/1 75/15
77/16 78/8 79/6 79/15 81/10
81/16

**K**

Kreindler's [3]   23/5 74/2
74/23

**L**

lack [4]   26/20 36/13 38/4
61/10
language [36]   17/5 17/11
18/17 19/11 25/17 27/1 27/3
28/15 28/18 28/20 28/22
32/10 34/17 48/21 49/4 51/6
51/8 51/9 60/18 61/24 62/13
62/13 62/16 63/8 63/9 64/1
67/8 75/21 76/5 81/24 82/5
83/3 83/7 83/9 83/10 85/1
lard [1]   57/3
larger [1]   43/20
last [8]   27/11 27/11 39/24
39/25 40/6 69/20 70/25 81/20
late [6]   18/6 18/8 18/8
50/24 72/1 84/2
late-filing [1]   18/8
late-found [1]   18/6
latent [1]   74/20
later [11]   12/12 13/13 13/23
14/9 14/12 34/11 34/22 51/19
70/7 70/21 83/20
law [6]   33/5 49/11 54/18
61/17 68/17 68/17
lawful [1]   10/23
lawsuit [6]   17/20 18/21 31/2
33/22 33/23 33/24
lawsuits [1]   31/5
lawyer [3]   14/16 33/4 87/14
lawyers [6]   14/15 17/20
43/11 61/23 76/13 76/14
lays [1]   48/23
lead [2]   26/7 66/19
leads [1]   83/20
learning [1]   24/23
least [10]   7/16 14/24 24/16
30/24 40/15 50/8 55/5 55/9
70/18 89/2
leave [1]   29/6
left [1]   50/13
legal [4]   8/11 10/22 54/17
55/17
legally [1]   9/1
legislation [1]   31/8
legislative [1]   19/25
Leibeler [1]   4/2
less [4]   45/7 45/8 45/13
81/1
let [13]   4/19 4/22 7/2 25/14
32/6 37/6 40/5 53/6 62/16
64/25 64/25 82/7 88/11
let's [4]   5/11 12/7 34/17
65/14
letters [2]   41/21 43/5
level [5]   16/11 16/16 19/6
39/12 40/7
liability [6]   44/17 50/21
77/14 86/7 86/25 87/3
license [1]   61/16
Liebeler [1]   2/3
lieu [2]   50/9 50/15
lifted [1]   68/9 68/14 68/15
light [8]   27/7 27/12 27/13
27/14 27/15 27/17 27/17

31/14
lights [1]   27/13
like [40]   10/3 15/2 19/23
20/25 25/13 29/20 36/17
40/17 42/2 42/15 42/22 48/6
53/15 56/13 57/15 61/17
61/18 63/15 66/1 71/24 73/17
74/24 80/10 80/14 82/8 84/17
85/11 85/22 85/24 86/11 87/7
87/23 89/1 89/13
likely [2]   6/3 12/10
limit [2]   42/18 83/7
limitation [1]   84/11
limitations [2]   31/9 60/24
limited [5]   12/1 17/7 19/23
54/16 79/25
Lindsay [3]   2/6 90/3 90/12
line [2]   55/24 78/20
lines [1]   18/14
list [1]   79/9
listing [1]   58/22
litigate [1]   86/25
litigation [93]
little [12]   3/14 9/7 13/1
19/13 19/22 24/12 24/13
59/25 65/1 72/1 84/17 85/2
LLP [3]   1/7 2/3 3/3
lobby [1]   51/17
lobbying [1]   43/11
local [1]   4/2
long [9]   4/9 60/3 64/25 68/1
75/14 79/18 85/9 86/14 89/24
look [17]   8/13 9/14 12/5
12/7 16/6 20/12 26/13 27/5
27/6 30/4 34/17 41/4 47/23
48/2 61/10 65/5 82/20
looked [5]   15/6 25/4 59/7
69/20 79/4
looking [7]   9/17 10/3 26/11
27/22 28/14 28/15 32/7
looks [2]   66/1 73/17
lot [8]   20/25 21/11 49/7
53/14 56/17 58/17 71/14 84/6
lots [2]   44/10 45/17
love [2]   67/1 67/7
lower [2]   18/10 46/18
Lucy [1]   68/1

**M**

mad [1]   25/12
made [21]   7/18 19/24 20/2
22/15 22/21 22/23 22/25 23/1
25/5 31/15 32/22 43/6 43/7
44/10 45/24 51/2 63/14 71/12
71/24 77/23 81/22
magistrate [2]   85/24 87/15
magnitude [1]   43/24
maintained [1]   15/5
make [20]   4/23 10/24 14/25
22/7 25/8 26/2 39/7 40/3
41/7 47/6 55/11 59/18 62/3
67/11 71/3 71/21 72/15 73/23
79/8 82/13
makes [5]   8/7 41/5 44/7
61/17 87/22
making [4]   26/4 32/8 73/21
78/25
manner [1]   18/16
many [6]   21/13 39/2 45/22
45/25 79/20 88/19
March [2]   22/18 71/13 72/25

73/22
massively [1]   7/1
material [2]   26/19 29/14
materials [2]   5/10 63/3
math [1]   46/5
matter [17]   6/4 8/9 8/11
15/25 25/10 33/12 40/20
42/13 45/9 51/5 51/8 52/13
75/17 77/2 84/25 86/1 90/5
matters [4]   15/19 35/4 37/18
37/22
maximized [1]   41/18
may [44]   7/11 7/14 10/3 10/4
12/2 12/5 12/13 13/11 13/25
16/9 22/19 22/20 27/13 31/17
31/17 32/6 33/17 33/21 33/25
34/6 34/20 36/5 36/6 36/12
36/15 37/8 37/19 37/19 37/21
39/21 41/7 47/7 47/8 47/8
47/22 48/20 56/12 62/18
62/21 73/1 79/14 79/17 82/10
84/25
May 19th [2]   10/3 10/4
May 2017 [3]   13/11 79/17
82/10
May 20th [1]   31/17
maybe [16]   3/19 27/10 32/21
37/4 40/18 42/3 45/18 52/25
53/10 57/7 58/20 67/16 84/19
85/19 85/22 88/13
McLean [1]   1/17
MDL [1]   48/17
me [79]   3/13 4/1 4/7 4/10
4/11 4/18 4/19 4/22 5/8 6/16
7/2 9/11 9/16 14/20 15/11
18/15 18/25 20/18 21/1 22/10
22/11 23/24 24/12 24/15
24/17 24/19 25/14 26/3 26/6
30/2 31/8 31/24 32/6 37/6
38/25 39/17 40/5 40/18 42/13
48/6 53/6 56/20 57/15 58/8
58/25 59/6 60/23 61/10 61/25
62/1 62/16 62/22 63/17 64/25
64/25 65/2 65/3 65/11 65/15
69/5 69/16 73/6 73/8 74/3
75/12 79/19 79/24 79/24 82/7
84/19 85/5 85/24 86/4 86/11
86/12 88/11 89/1 89/11 89/12
mean [37]   12/25 13/1 14/25
18/7 26/14 27/8 28/9 28/10
30/16 31/4 32/14 35/24 36/14
40/11 40/18 41/16 41/18
43/25 45/1 45/2 47/9 55/5
55/23 58/6 58/15 60/18 62/6
63/8 63/15 63/17 63/18 63/19
69/15 76/13 78/23 87/24
88/22
meaning [10]   26/12 33/15
38/13 39/2 48/25 53/22 53/25
54/15 57/13 86/24
meaningful [1]   27/17
meanings [1]   27/6
means [17]   19/13 26/23 27/2
33/11 36/10 37/3 39/9 41/2
53/14 61/8 63/8 63/18 65/14
67/9 83/18 84/16 84/25
meant [8]   5/24 20/3 20/9
20/10 20/12 20/14 27/4 42/14
mechanical [1]   54/25
mechanism [3]   8/3 17/13

**M**

mechanism... **[1]**   64/16
mediate **[1]**   87/7
mediation **[2]**   86/2 87/13
mediator **[1]**   87/20
meet **[1]**   79/20
meeting **[3]**   27/25 59/10 68/24
Megan **[4]**   4/3 68/5 68/6 69/6
mention **[3]**   4/7 42/1 80/16
mentioned **[6]**   4/10 23/3 23/10 23/18 33/3 68/4
merely **[1]**   63/21
meruit **[1]**   54/19
Mid **[2]**   88/5 88/6
might **[19]**   18/11 18/18 26/2 30/25 34/13 35/6 36/21 37/7 43/20 45/2 58/23 66/12 66/16 72/14 76/6 78/5 86/4 87/6 87/20
million **[7]**   20/18 42/5 42/6 46/3 62/10 77/10 77/11
millions **[1]**   58/9
mind **[4]**   8/7 43/10 80/13 82/23
mine **[1]**   23/25
minute **[4]**   9/10 30/19 65/1 86/17
minutes **[2]**   53/11 65/15
mislead **[1]**   72/14
modify **[1]**   37/6
moment **[1]**   32/6
money **[9]**   10/9 23/13 25/13 40/13 58/23 68/7 76/2 76/2 76/23
monies **[4]**   77/13 77/20 77/20 79/2
months **[1]**   13/7
more **[15]**   4/13 7/14 12/15 17/13 20/5 26/12 29/2 33/16 41/5 60/15 68/7 69/16 84/6 84/15 86/12
MOSS **[1]**   1/11
most **[9]**   3/12 3/13 6/2 26/2 36/15 44/2 44/3 44/5 53/4
mostly **[2]**   20/24 24/1
motion **[4]**   1/10 5/11 5/12 84/9
motions **[3]**   5/16 5/19 5/23
mouse **[4]**   42/3 44/2 47/2 83/25
move **[5]**   13/10 27/9 36/22 40/6 85/14
moving **[1]**   5/22
Mr **[16]**   25/4 33/7 34/4 35/12 37/5 38/5 39/18 41/17 43/16 44/2 44/19 46/10 47/12 58/16 59/9 59/17
Mr. **[113]**
Mr. Craig **[4]**   32/21 53/6 65/18 86/20
Mr. Crowe **[5]**   13/20 13/22 34/4 49/2 77/25
Mr. Goldman **[6]**   33/11 62/17 73/7 73/14 79/15 80/8
Mr. Goldman's **[1]**   73/18
Mr. Jim **[1]**   4/3
Mr. Kirsch **[1]**   61/20
Mr. Kreindler **[21]**   13/21

24/11 24/23 33/3 47/11 47/15 49/25 50/9 51/10 51/16 53/13 66/1 67/24 69/1 69/23 70/13 73/15 75/1 75/15 79/6 79/15
Mr. Kreindler's **[3]**   23/5 74/2 74/23
Mr. Obama **[1]**   22/2
Mr. Quinn **[57]**   6/6 7/24 10/8 13/8 17/17 22/6 23/6 23/13 24/6 24/8 24/11 25/1 25/3 25/7 25/8 27/23 27/24 33/2 34/21 47/14 47/19 50/18 50/23 51/13 52/3 53/15 56/2 56/5 56/7 59/2 59/14 59/18 60/2 60/5 61/21 65/25 66/10 67/2 67/23 68/23 69/22 73/7 73/14 73/18 74/24 75/15 76/17 77/7 77/25 78/19 79/5 79/15 81/5 83/15 84/4 85/10 85/20
Mr. Quinn's **[9]**   10/16 12/14 21/14 41/10 49/1 57/5 65/7 83/8 87/1
Mr. Schumer **[1]**   86/14
Mr. Schumer's **[1]**   68/21
Mr. Trump **[1]**   22/4
Mr. Zadroga **[1]**   67/4
Ms **[1]**   58/25
Ms. **[7]**   25/24 56/22 67/24 69/1 72/17 81/7 84/23
Ms. Benett **[3]**   67/24 69/1 81/7
Ms. Kirsch **[4]**   25/24 56/22 72/17 84/23
much **[14]**   18/7 27/12 44/2 44/4 44/11 44/21 45/23 46/18 49/8 72/6 81/1 84/15 87/23 89/19
Mullins **[2]**   48/10 79/23
multi **[1]**   62/10
multi-million **[1]**   62/10
must **[5]**   21/6 30/16 38/18 60/18 63/18
my **[31]**   4/2 6/3 7/20 15/13 16/2 17/10 19/24 24/18 25/14 28/12 28/13 29/5 31/7 32/17 33/12 36/11 45/17 57/4 58/12 66/11 66/11 66/17 68/4 69/4 72/20 74/25 76/17 79/8 80/2 82/8 82/23
myself **[2]**   41/23 71/25

**N**

nail **[1]**   69/11
name **[1]**   66/18
named **[3]**   49/23 65/13 72/24
natural **[1]**   36/15
near **[1]**   78/22
near-term **[1]**   78/22
necessarily **[3]**   13/22 26/15 87/15
necessary **[1]**   18/16
need **[19]**   9/9 11/6 12/2 12/5 19/19 22/23 26/8 26/13 39/4 42/23 49/7 63/22 64/19 71/5 72/9 76/7 85/12 87/6 89/1
needed **[2]**   22/25 58/18
needs **[2]**   78/2 78/16
negotiated **[2]**   35/5 52/2
negotiating **[1]**   43/15

negotiation **[11]**   18/14
neither **[1]**   17/8
Nelson **[2]**   48/10 79/23
net **[3]**   7/5 7/6 48/11
never **[12]**   18/20 24/6 33/17 38/8 39/21 42/6 42/20 43/13 43/15 51/14 62/18 80/13
new **[38]**   1/21 3/22 11/13 18/2 18/11 19/14 24/16 30/7 30/11 30/17 30/22 31/10 31/12 33/21 34/11 34/15 35/22 37/20 50/12 50/13 55/24 56/1 60/19 60/19 60/24 60/25 65/8 66/12 67/8 67/11 70/18 72/23 74/25 75/2 78/1 78/13 79/16 83/12
newer **[1]**   57/14
newly **[1]**   33/24
next **[16]**   1/23 12/2 31/18 38/16 45/20 49/14 50/4 52/7 52/12 57/10 57/25 69/15 69/16 69/21 77/5 77/18
Niehaus **[2]**   1/19 3/25
nine **[1]**   34/10
no **[31]**   1/5 5/1 8/7 20/8 20/8 20/9 20/10 26/9 28/13 29/3 32/12 41/22 41/22 41/22 44/24 46/9 46/9 46/9 49/22 53/3 56/4 56/7 57/18 61/17 63/22 71/5 72/6 76/21 80/16 80/23 82/2
nobody **[1]**   27/9
North **[1]**   44/9
not **[142]**
note **[3]**   4/19 53/13 68/13
nothing **[16]**   3/22 17/13 23/13 50/24 51/2 51/20 52/16 52/17 52/22 63/25 64/3 64/5 64/6 73/3 73/20 83/6
notice **[1]**   3/11
noticed **[1]**   22/20
notion **[3]**   30/15 38/3 84/1
now **[16]**   4/11 14/20 20/3 20/13 21/18 24/2 24/18 30/15 34/10 35/21 59/10 63/17 64/25 85/7 85/8 85/10
nowhere **[1]**   59/1
number **[14]**   3/2 3/11 3/19 30/24 32/4 48/3 48/4 48/20 52/12 73/17 74/3 79/5 79/12 79/14
numbered **[2]**   15/1 15/4
numbers **[2]**   45/21 45/22
nunc **[3]**   71/2 72/22 80/6
NW **[2]**   2/4 2/8
NY **[1]**   1/21

**O**

O'Neill **[1]**   80/4
Obama **[1]**   22/2
objection **[1]**   5/1
objective **[1]**   27/1
objectively **[1]**   28/23
objectives **[1]**   79/21
obligation **[3]**   11/18 49/10 77/5
obtain **[2]**   17/19 78/5
obtained **[4]**   6/14 9/4 51/10 83/12
obtaining **[7]**   11/4 48/9

**obtaining... [5]** 50/25 52/14 52/16 54/8 75/18
**obviously [8]** 4/13 12/10 21/18 37/15 46/1 46/2 58/21 65/25
**occur [1]** 55/13
**occurred [3]** 4/7 4/10 4/11 73/13
**odd [4]** 13/1 48/5 59/25 73/13
**off [5]** 13/10 17/21 26/7 35/6 40/6
**offended [1]** 4/23
**office [6]** 21/24 22/1 49/11 68/2 81/5 81/9
**Official [3]** 2/7 90/3 90/13
**oh [7]** 5/11 14/7 42/4 45/9 52/8 62/9 69/3
**okay [49]** 5/5 5/17 8/24 9/19 13/6 14/5 14/19 17/4 20/23 24/5 25/21 27/19 32/5 32/15 35/10 36/12 39/15 45/6 45/20 45/22 47/1 47/5 48/7 52/9 53/9 56/11 56/18 57/22 58/14 59/22 63/16 67/6 67/21 67/25 68/12 69/14 70/3 70/24 70/24 71/20 73/12 74/11 75/4 75/7 77/22 81/19 82/7 86/22 89/22
**old [2]** 55/24 60/5
**old-school [1]** 60/5
**older [1]** 57/14
**onboard [1]** 68/25
**once [5]** 27/5 43/14 43/16 51/1 74/6
**one [58]** 4/7 6/3 7/20 9/1 9/8 10/14 12/8 12/13 21/22 22/5 22/6 22/19 23/18 23/21 24/25 26/12 27/14 28/7 29/3 33/4 37/16 38/14 41/5 41/8 43/18 49/18 49/21 53/2 54/18 54/19 54/20 55/18 59/23 60/1 60/12 63/21 65/12 66/4 66/8 67/15 67/17 69/14 69/15 69/16 71/16 71/18 71/21 72/2 72/20 74/4 75/11 78/10 78/11 79/10 79/23 82/13 84/3 85/7
**ones [3]** 44/12 45/9 45/10
**ongoing [3]** 19/14 20/7 20/11
**only [27]** 6/7 8/1 13/21 14/1 14/7 14/7 14/8 18/19 23/12 24/19 28/13 29/8 29/11 38/19 44/12 46/11 60/9 60/16 60/20 61/11 63/8 64/8 71/6 71/16 71/18 74/2 77/8
**open [1]** 89/12
**operate [1]** 6/15
**operating [3]** 8/6 43/11 43/23
**operational [1]** 76/2
**opinion [1]** 19/24
**opportunity [3]** 4/19 33/22 34/12
**opposing [2]** 17/22 37/2
**optimism [2]** 31/13 31/19
**order [7]** 13/21 26/13 34/3 34/3 47/17 76/8 77/3
**ordered [1]** 5/23
**organizations [1]** 8/16
**original [1]** 66/14

**originally [1]** 5/20
**other [16]** 3/18 7/23 14/23 16/7 22/8 26/21 29/4 30/6 31/12 33/5 33/24 34/18 34/19 35/24 36/9 36/24 38/4 38/15 38/16 38/19 38/20 39/9 39/22 40/3 42/17 43/18 49/20 49/22 50/2 50/22 54/21 56/24 57/7 60/4 60/12 61/4 61/12 61/15 61/24 62/9 62/20 62/21 63/12 63/12 63/12 63/23 65/9 66/7 66/14 68/18 68/25 69/9 71/4 75/24 78/9 78/18 79/4 82/2 86/25
**other's [1]** 23/20
**otherwise [15]** 15/18 16/20 17/3 18/11 19/10 40/11 40/11 40/17 40/18 40/21 41/1 42/2 43/18 43/22 78/7
**ought [2]** 61/16 86/12
**our [24]** 3/8 3/13 3/16 4/2 7/21 8/7 8/19 9/1 20/25 21/11 21/17 24/20 28/6 51/3 52/12 52/13 53/13 72/4 75/8 75/11 75/16 75/17 78/21 79/20
**out [45]** 10/7 11/15 12/21 12/22 12/23 14/9 15/19 18/12 18/13 20/15 21/1 21/2 21/22 22/13 23/9 30/18 33/16 41/13 43/5 43/25 45/15 47/12 47/15 48/22 48/23 53/4 54/17 54/24 58/19 59/10 62/10 62/23 63/7 65/5 71/15 75/19 78/5 78/9 80/19 80/22 81/21 85/18 86/9 88/18 88/20
**over [4]** 45/19 53/1 70/13 79/19
**overcome [1]** 74/21
**owe [1]** 20/18

**P**
**p.m [3]** 1/8 65/17 89/25
**page [10]** 1/23 26/16 27/2 39/2 52/6 52/12 75/16 78/12 78/18 79/13
**paid [17]** 10/8 10/10 17/9 22/17 23/12 24/9 25/16 38/21 51/14 54/20 54/21 54/24 59/21 60/9 60/16 75/20 76/23
**pales [1]** 78/19
**Panza [1]** 68/2
**paper [3]** 42/14 43/1 62/24
**papers [4]** 4/8 21/8 21/23 51/4
**paragraph [24]** 11/7 14/3 15/4 16/7 19/1 24/14 30/4 30/7 32/20 32/22 34/16 37/14 39/23 39/24 39/25 40/7 49/14 50/4 56/20 62/1 65/6 66/5 82/16 84/24
**paragraphs [5]** 15/2 33/10 39/19 66/9 78/19
**parenthetical [1]** 36/20
**parol [49]** 9/9 19/19 19/21 19/23 20/5 20/6 20/25 21/5 23/19 24/7 25/19 26/8 26/18 26/20 26/22 27/7 27/7 27/14 28/15 28/21 28/23 29/2 40/19 42/23 51/6 53/20 53/21 53/24

59/1 62/2 62/6 64/19 65/3 65/17 67/20 70/16 71/16 72/13 72/21 75/9 80/14 80/18 80/24 81/2 82/20 82/20 82/22 83/3 84/21
**parse [1]** 54/17
**part [7]** 10/16 13/16 33/25 53/16 61/22 67/23 72/12
**partial [2]** 5/12 5/23
**participate [1]** 67/12
**particular [5]** 6/6 51/10 58/11 84/13 84/22
**parties [19]** 6/2 7/3 10/15 11/7 14/21 19/20 19/24 20/2 21/6 23/20 26/15 27/3 27/4 27/8 29/2 79/11 80/21 86/3 87/8
**parties' [1]** 30/13
**parts [1]** 24/13
**party [2]** 17/22 19/14
**passed [3]** 10/16 27/24 51/16
**past [1]** 29/1
**Pause [1]** 86/19
**pay [11]** 20/20 22/9 40/16 45/15 48/10 50/14 50/15 58/20 60/10 60/17 64/9
**paying [1]** 24/24
**payment [6]** 6/19 7/18 17/19 25/16 37/8 71/8 80/23
**payments [10]** 22/17 23/1 24/9 25/15 34/21 50/10 59/16 71/11 71/12 71/13
**PEC [3]** 65/9 66/13 66/20
**pencil [1]** 86/3
**pending [2]** 5/19 18/1
**pennies [2]** 20/9 20/10
**Pennsylvania [1]** 2/4
**people [2]** 55/1 74/14
**percent [18]** 12/16 12/17 13/24 29/9 45/19 45/23 46/1 46/3 46/8 46/10 46/11 46/15 46/17 46/22 48/11 49/1 49/2 57/14
**percentage [7]** 7/5 12/16 35/6 41/10 49/3 49/3 50/9
**percentages [2]** 50/6 57/13
**Perfect [1]** 88/21
**perfectly [1]** 22/10
**perhaps [6]** 12/15 14/21 18/10 20/5 64/21 66/8
**period [2]** 58/17 87/6
**permutation [1]** 6/12
**person [1]** 66/19
**personal [4]** 1/3 11/14 48/12 82/15
**perspective [1]** 82/24
**persuaded [1]** 84/14
**persuasive [1]** 83/11
**PEX [4]** 36/9 39/18 52/4 52/6
**phase [1]** 5/22
**phone [2]** 60/3 60/6
**PI [1]** 75/2
**picked [1]** 60/6
**piece [5]** 31/12 31/13 35/5 62/24 71/16
**pieces [6]** 26/21 50/18 54/17 65/3 65/15 67/13
**pieces of [1]** 54/17
**pin [1]** 66/16
**Pinnacle [1]** 1/16

## P

**pinned [1]** 67/11
**pissed [1]** 25/14
**placed [1]** 47/7
**plain [9]** 19/10 25/17 26/25
28/15 28/18 51/5 51/8 51/9
85/1
**plaintiff [12]** 1/5 1/14 3/7
4/15 8/12 30/11 37/20 43/9
67/5 80/25 84/10 84/16
**plaintiff's [13]** 3/5 5/12
29/12 30/1 32/4 32/8 33/5
35/8 61/19 67/19 73/10 75/10
84/9
**plaintiffs [28]** 5/14 11/11
30/16 30/25 32/10 33/6 33/21
33/25 34/5 34/5 34/11 41/24
48/1 65/8 65/10 66/13 66/14
66/21 67/8 74/6 74/6 74/13
74/16 74/20 74/20 75/1 83/4
83/6
**plan [1]** 68/25
**plans [1]** 25/16
**plausibly [1]** 37/7
**please [2]** 3/4 68/11
**plenty [2]** 40/4 47/10
**PLLC [2]** 1/15 1/19
**podium [1]** 3/4
**point [46]** 6/21 13/5 18/3
20/11 21/2 21/22 22/13 23/21
27/11 30/20 32/8 32/13 33/2
34/2 37/7 39/7 40/3 40/18
41/23 42/3 44/1 53/4 54/14
56/18 59/6 61/3 66/10 66/10
71/3 71/19 71/21 72/21 73/23
75/19 76/17 77/6 77/24 78/9
78/25 80/19 80/20 81/21 83/4
84/19 85/5 85/23
**pointed [5]** 48/21 71/1 78/9
80/22 81/4
**pointing [1]** 24/17
**points [3]** 32/22 33/16 72/19
**politics [1]** 43/12
**pool [2]** 40/13 41/11
**populated [1]** 80/5
**portion [1]** 67/22
**portions [2]** 27/14 27/15
**pose [1]** 4/20
**poses [1]** 4/18
**position [9]** 7/25 21/14
24/18 24/19 27/3 39/8 39/9
60/16 85/19
**positions [1]** 23/20
**possibilities [1]** 23/17
**possibility [1]** 23/15
**possible [4]** 17/16 33/24
38/14 85/12
**possibly [2]** 40/24 42/12
**post [9]** 19/23 19/25 20/6
23/19 24/7 34/6 37/22 37/24
80/3
**post-2014 [3]** 34/6 37/22
37/24
**post-enactment [1]** 19/25
**post-execution [1]** 24/7
**potential [7]** 18/2 38/2
38/10 62/9 77/8 80/8 84/1
**potentially [1]** 58/8
**practice [1]** 4/12

**practicing [1]** 61/17
**predict [3]** 37/6 37/16
37/17
**pre-2014 [2]** 34/5 37/20
**precedent [1]** 10/23
**predated [1]** 44/19
**predates [1]** 80/20
**preexisting [1]** 38/19
**preference [1]** 87/13
**premise [1]** 32/21
**prepared [2]** 38/24 89/2
**present [2]** 6/24 40/16
**presentation [1]** 26/4
**presented [3]** 8/10 19/20
31/1
**preservation [1]** 49/16
**preserve [1]** 7/12
**President [5]** 21/24 22/1
31/14 31/20 34/9
**pressure [1]** 47/16
**Presumably [1]** 68/6
**pretend [1]** 66/3
**pretty [6]** 17/5 28/6 28/11
33/13 80/14 82/13
**previous [3]** 57/5 70/4 70/6
**previously [3]** 4/10 4/10
61/14
**primarily [1]** 51/23
**principally [1]** 83/24
**principle [1]** 14/23
**prior [6]** 11/17 20/5 35/21
48/25 76/20 81/2
**priority [1]** 31/15
**private [3]** 4/12 87/14 87/20
**pro [3]** 71/2 72/22 80/6
**probably [6]** 6/2 9/13 28/1
42/14 43/20 55/5
**probative [2]** 20/6 20/20
**problem [4]** 5/9 42/9 42/10
87/25
**procedure [1]** 10/24
**proceed [1]** 82/9
**proceeding [1]** 40/23
**proceedings [3]** 13/13 89/25
90/5
**process [2]** 50/11 84/3
**processing [1]** 11/24
**profession [1]** 21/11
**program [2]** 86/2 87/13
**promised [1]** 20/20
**promoting [1]** 78/23
**prong [2]** 64/20 64/21
**Properties [1]** 4/14
**proportions [1]** 47/2
**propose [1]** 88/18
**proposed [1]** 49/16
**proposing [1]** 33/8
**proposition [2]** 24/6 85/6
**prosecuted [1]** 50/22
**protect [1]** 41/20
**provide [6]** 10/22 15/18
15/23 34/20 47/19 82/1
**provided [1]** 34/13
**provision [2]** 15/7 15/16
**pulled [2]** 17/14 31/11
**pulling [1]** 86/9
**pure [2]** 11/22 11/24
**purely [1]** 36/8
**purported [1]** 87/1
**purpose [3]** 47/12 53/13
81/14

**purposes [3]** 6/24 40/16 47/2
**pursuant [1]** 90/8
**push [1]** 20/17
**put [9]** 7/2 27/11 42/14
42/23 51/3 51/5 55/7 61/13
80/25
**puts [2]** 52/11 87/9
**putting [2]** 7/14 51/16
**puzzled [1]** 82/16

## Q

**quaint [1]** 34/10
**qualification [1]** 84/10
**quantum [2]** 54/19 54/20
**question [18]** 7/6 7/15 12/25
16/22 26/23 27/12 28/11
28/19 29/18 30/10 40/5 44/7
68/17 74/12 82/12 86/21 89/1
89/13
**questions [3]** 9/8 28/7 53/3
**quick [1]** 72/3
**quickly [1]** 47/23
**quiet [1]** 59/12
**QUINN [82]** 1/3 1/4 3/3 3/7
3/7 6/6 7/4 7/24 10/8 11/10
11/19 13/8 16/8 17/17 22/6
23/6 23/13 24/6 24/8 24/11
25/1 25/3 25/7 25/8 27/23
27/24 33/2 33/7 34/21 35/12
36/4 37/5 38/5 39/10 39/18
41/17 46/11 47/12 47/14
47/19 48/11 49/11 49/11
50/18 50/23 51/13 52/3 52/6
53/15 56/2 56/5 56/7 57/11
58/16 59/2 59/14 59/18 60/2
60/5 61/21 65/25 66/10 67/2
67/23 68/23 69/22 73/7 73/14
73/18 74/24 75/15 76/17 77/7
77/25 78/19 79/5 79/15 81/5
83/15 84/4 85/10 85/20
**Quinn's [13]** 10/16 12/14
21/14 34/4 41/10 43/16 44/2
44/19 49/1 57/5 65/7 83/8
87/1
**quite [5]** 4/8 36/18 41/12
41/17 47/24
**quote [2]** 10/21 10/22

## R

**radar [1]** 42/20
**raise [1]** 5/7
**raised [2]** 41/10 43/15
**rallied [1]** 21/12
**RANDOLPH [1]** 1/11
**rate [2]** 34/22 35/14
**rather [3]** 11/22 26/4 51/25
**re [2]** 68/2 73/19
**reach [4]** 27/16 28/14 29/3
32/23
**reached [1]** 47/15
**reaching [2]** 47/12 84/21
**react [1]** 23/20
**reaction [1]** 82/8
**read [16]** 17/7 24/13 24/20
25/10 25/11 30/18 36/18
36/24 37/7 39/14 41/1 55/8
56/20 61/4 76/11 79/17
**reading [14]** 4/8 9/12 15/9
17/16 19/10 25/6 34/21 35/23
36/14 36/15 37/13 38/3 38/10

**R**

reading... [1]   42/13
readout [1]   68/24
reads [1]   15/14
ready [1]   17/22
reality [1]   78/20
realize [1]   85/20
really [20]   10/15 27/21
28/15 37/24 40/19 42/13
42/17 43/25 47/1 47/23 50/23
54/13 54/13 75/10 76/19
79/10 81/11 81/14 82/14 84/5
reason [8]   13/11 13/23 18/13
37/18 58/6 68/22 71/6 82/2
reasonable [8]   10/19 27/3
27/15 28/13 28/16 29/3 49/19
50/2
reasonably [1]   26/12
reasons [4]   22/6 48/3 83/24
85/8
reauthorized [1]   66/18
recall [3]   5/25 34/2 35/9
receive [14]   16/8 16/11
16/16 16/20 19/6 35/12 36/4
36/5 38/6 38/7 39/10 39/12
40/7 57/11
received [6]   6/19 35/15
48/13 58/2 61/7 77/17
receives [7]   7/23 16/11
16/15 16/15 16/21 19/5 36/8
receiving [1]   78/6
Recess [1]   65/17
recitation [1]   36/25
reciting [1]   79/16
recognizing [1]   70/14
recollection [1]   45/17
record [7]   3/5 27/21 28/6
28/11 29/19 47/10 90/5
recorded [1]   60/4
recover [7]   7/4 41/25 50/8
64/1 64/8 67/3 76/9
recovered [6]   43/21 50/9
56/1 58/9 61/6 83/8
recoveries [2]   6/9 66/15
recovering [6]   16/19 17/2
19/9 40/10 81/24 82/4
recovers [1]   64/2
recovery [37]   6/7 7/5 7/6
7/9 7/22 7/24 7/24 8/3 8/12
8/16 8/17 9/3 16/20 17/13
19/12 33/18 39/21 46/12
46/13 48/9 48/11 52/15 54/6
56/2 56/4 56/7 62/10 62/19
63/25 64/16 67/12 75/19 79/1
81/23 81/23 83/8 84/1
redo [1]   79/19
redundant [2]   57/17 57/19
refer [7]   13/2 17/3 38/18
57/8 57/11 58/10 86/1
reference [4]   42/6 59/1 63/4
70/6
references [1]   15/5
referred [5]   37/21 61/20
62/21 65/13 74/22
referring [11]   19/1 35/16
36/8 53/2 56/25 57/2 61/19
65/10 65/12 66/24 67/8
refers [8]   33/4 33/11 40/2
40/22 58/3 65/6 65/7 67/2

reflect [1]   24/19
reflected [3]   21/1 65/21 67/1
75/21
reflecting [2]   80/12 81/4
reflective [1]   77/19 78/3
reflects [1]   80/14
refuse [1]   24/20
regard [3]   83/11 84/7 85/1
regardless [2]   17/15 19/21
reiterating [2]   23/4 78/22
related [7]   11/21 11/23
11/25 49/25 50/4 51/15 79/2
relating [3]   4/16 11/9 11/15
relation [1]   78/20
relations [1]   31/15
relationship [5]   20/8 20/11
48/4 50/19 72/5
relative [1]   49/16
relevant [4]   48/15 66/8
79/10 87/14
reliant [2]   64/15 72/13
relief [2]   21/12 82/1
rely [5]   51/24 55/11 72/9
72/11 84/20
remember [7]   4/9 4/15 24/1
25/3 60/2 78/2 78/16
remind [3]   5/20 67/16 75/22
reminded [1]   26/8
rendered [2]   7/17 11/10
repeat [2]   68/6 71/25
repeating [2]   35/21 72/2
replaces [2]   11/17 48/22
reply [1]   69/1
report [4]   18/12 88/9 88/16
88/23
reporter [9]   2/6 2/7 15/10
15/11 64/24 68/11 79/18 90/3
90/13
reporting [3]   70/9 70/11
81/9
represent [1]   45/11
representation [9]   11/10
16/9 16/12 16/17 19/7 35/14
36/6 40/8 57/25
representations [1]   25/8
Representative [1]   1/3
represented [4]   4/12 7/23
45/10 60/22
representing [2]   54/12 54/12
represents [1]   33/6
request [1]   80/23
require [2]   88/8 88/23
required [1]   55/10
requirements [1]   10/23
resolution [23]   10/19 10/25
11/4 11/20 22/3 22/8 33/19
33/23 34/14 34/24 35/2 39/22
43/13 47/18 49/12 49/13
49/20 50/2 51/22 62/20 62/21
71/4 85/18
resolve [10]   6/4 28/13 47/18
68/10 68/16 83/17 85/19
85/25 89/3 89/14
resolves [1]   26/20
resolving [2]   5/19 55/7
respect [15]   7/4 16/21 19/12
26/20 33/17 36/13 39/20 44/8
54/8 55/24 62/18 65/8 82/12
84/17 85/4
respond [9]   20/19 26/3 28/2

53/7 53/8 81/21 89/8 89/19
89/24
responding [2]   73/14 73/16
response [7]   74/2 74/8 74/9
74/12 74/24 83/15 83/17
rest [2]   61/13 65/1
result [1]   66/12
retained [9]   15/18 15/22
16/18 17/2 17/18 19/8 40/9
50/20 77/7
retainers [1]   73/19
retroactive [1]   22/25
return [2]   68/9 68/15
revealed [1]   68/5
reviewed [2]   5/10 75/23
revise [1]   79/24
reward [1]   52/5
right [58]   3/10 3/23 4/4
5/25 7/6 7/10 8/18 8/20 9/25
10/2 14/19 15/24 16/5 18/2
19/6 19/24 20/2 20/5 20/13
20/14 25/24 26/5 26/25 28/9
28/17 28/22 29/6 29/10 30/9
31/17 32/24 36/2 36/12 38/2
39/1 40/1 41/15 42/24 44/13
46/20 47/4 52/23 54/7 61/22
63/10 63/23 65/18 66/2 67/24
71/20 72/17 74/18 77/15 82/7
84/25 85/7 88/7 89/22
Riyadh [1]   31/16
robe [1]   87/18
role [9]   10/12 10/16 11/2
28/12 28/12 28/13 35/7 56/15
56/16
rolled [1]   50/23
room [2]   2/8 41/12
rough [1]   47/1
roughly [2]   45/19 46/7
RPR [1]   90/12
running [1]   75/25

**S**

said [17]   18/12 19/19 20/9
24/17 32/3 48/1 52/25 54/2
58/25 60/7 69/5 74/7 74/9
84/14 85/17 86/2 87/8
same [24]   6/15 8/8 8/11 9/6
9/20 9/21 12/10 14/22 16/11
16/16 19/6 22/12 35/13 39/12
40/7 41/23 42/16 55/17 55/17
55/17 64/13 65/4 74/1 78/12
Saudi [16]   10/17 22/8 23/13
31/15 31/16 34/9 40/13 40/22
41/2 47/17 49/23 51/23 71/5
72/24 83/8 84/11
Saudi-funded [2]   40/13 71/5
Saudis [9]   22/3 23/11 23/12
58/20 60/10 60/17 64/2 64/8
71/4
say [59]   4/21 8/1 10/18 16/1
16/3 17/22 20/4 20/8 20/10
20/12 20/18 21/1 23/4 23/14
24/7 29/5 29/15 32/9 36/22
37/3 37/4 37/6 37/7 37/16
40/16 40/24 42/4 42/11 42/13
42/16 43/19 44/18 45/14
47/23 47/25 48/2 55/22 58/7
58/10 61/4 61/7 62/8 62/11
63/16 64/1 64/4 65/9 66/14
69/2 69/4 69/4 69/7 69/11

say... **[6]** 77/9 80/7 83/5 83/15 83/22 88/17
saying **[20]** 5/6 14/12 19/21 20/13 20/19 20/21 20/24 24/12 25/2 34/19 35/24 37/10 45/10 55/14 55/15 59/2 59/9 61/9 61/10 63/17
says **[43]** 8/13 10/12 11/7 14/1 14/7 15/4 16/7 17/8 17/10 24/1 24/11 24/14 33/3 33/8 33/16 36/3 36/4 37/5 40/7 43/9 48/7 48/21 50/4 54/21 60/9 60/14 62/8 62/14 62/15 62/24 68/1 70/17 70/21 73/19 75/1 78/1 78/13 78/15 79/17 79/22 80/3 80/10 85/1
scant **[1]** 59/5
scenario **[1]** 35/19
scene **[1]** 51/19
schedule **[1]** 89/12
school **[1]** 60/5
Schumer **[17]** 24/15 25/4 25/7 25/8 27/24 59/10 59/17 59/17 68/9 68/15 68/25 69/9 69/23 70/7 70/11 86/14 86/16
Schumer and **[1]** 59/10
Schumer's **[4]** 68/2 68/21 81/5 81/8
scope **[3]** 5/22 6/5 12/14
scratch **[1]** 42/25
SDNY **[35]** 6/8 7/4 8/1 8/3 8/4 8/9 8/9 8/12 8/17 9/5 10/17 12/24 15/1 17/7 17/12 17/14 18/1 54/16 54/22 54/23 54/24 61/1 63/8 63/21 63/25 64/2 64/2 64/8 64/16 64/16 64/22 67/12 72/5 72/12 84/12
sea **[1]** 33/15
second **[18]** 12/9 13/16 14/3 14/8 14/11 16/6 31/3 31/24 50/1 52/6 52/12 56/20 57/16 57/22 62/1 73/23 75/16 84/24
see **[23]** 5/11 14/10 15/1 17/7 21/7 24/10 24/15 26/11 32/15 45/10 45/13 46/19 46/19 56/11 62/6 73/19 74/8 74/11 74/11 83/2 83/9 83/21 84/6
seeking **[1]** 19/12
seem **[7]** 11/21 32/23 48/6 66/23 81/6 81/15 81/17
seems **[5]** 25/6 42/3 48/5 48/15 58/7
seen **[2]** 81/12 82/6
seize **[2]** 50/12 50/13
seized **[1]** 8/15
senator **[7]** 25/7 27/24 68/24 70/21 81/5 81/8 86/16
senators **[3]** 68/18 68/25 69/9
send **[1]** 17/21
sends **[1]** 69/1
sense **[9]** 21/6 26/2 41/5 41/17 41/19 47/1 61/17 74/16 87/22
sent **[1]** 59/9
sentence **[2]** 33/13 38/17
separate **[5]** 6/23 6/25 13/11

34/3 72/11
separately **[1]** 85/15
September **[11]** 4/16 12/22 88/3 88/4 88/5 88/6 88/7 88/9 88/11 88/23 89/2
September 11th **[2]** 4/16 12/22
September 20th **[1]** 88/7
September 30th **[4]** 88/9 88/11 88/23 89/2
sequentially **[1]** 89/6
seriously **[2]** 10/15 52/15
services **[6]** 11/9 15/7 15/17 15/18 15/23 52/14
serving **[1]** 4/18
set **[7]** 23/10 33/6 57/14 85/7 85/12 85/14 88/22
sets **[2]** 10/7 60/16
settle **[1]** 17/23
settled **[5]** 18/20 31/2 31/5 33/23 62/4
settlement **[15]** 6/8 6/8 8/20 10/19 33/19 34/1 34/13 34/23 35/2 35/17 39/22 49/19 50/2 62/20 78/22
settlements **[2]** 23/7 31/6
shall **[15]** 11/18 16/8 16/11 16/16 19/6 35/12 36/3 36/5 37/1 38/5 38/7 39/10 39/12 40/7 57/11
shape **[1]** 87/9
share **[9]** 7/24 17/10 21/18 46/6 56/3 58/17 65/8 66/7 66/12
sharing **[1]** 49/1
she **[3]** 68/5 68/5 84/24
shed **[5]** 27/7 27/14 27/15 27/17 27/17
sheds **[2]** 27/12 27/13
Sherry **[3]** 2/6 90/3 90/12
shoes **[1]** 50/15
short **[7]** 33/9 33/13 34/7 37/20 48/16 74/10 87/7
shorthand **[1]** 35/20
shortly **[1]** 50/23
should **[12]** 4/21 4/25 5/8 14/16 33/22 41/19 41/19 42/14 45/14 64/23 68/17 87/11
shouldn't **[1]** 48/1
showed **[1]** 51/19
showing **[1]** 74/21
shown **[1]** 74/17
shows **[1]** 80/21
side **[2]** 26/22 42/16
sign **[2]** 34/7 37/21
signed **[8]** 9/24 10/3 10/4 21/4 31/1 31/18 31/18 73/1
significant **[1]** 82/18
Silverstein **[1]** 4/14
similar **[1]** 33/8
simple **[1]** 33/13
simplest **[1]** 19/10
simply **[6]** 4/11 36/9 43/25 55/11 77/2 86/6
simultaneously **[1]** 12/10
since **[2]** 41/14 75/25
single **[3]** 42/25 62/24 63/4
sit **[3]** 20/11 85/16 85/25
situation **[4]** 22/12 24/22

28/8 65/22
skipping **[1]** 48/19
slightest **[3]** 4/22 4/23 5/6
slow **[1]** 16/13
slowly **[1]** 79/17
so **[168]**
sole **[3]** 11/9 11/18 49/10
solely **[2]** 50/3 51/21
solitary **[1]** 42/25
solution **[1]** 22/24
some **[30]** 5/21 18/11 19/13 19/18 20/20 21/7 21/12 22/9 25/13 26/3 29/21 30/25 32/22 33/23 34/6 38/4 47/18 48/23 51/22 55/25 61/8 72/19 73/19 74/24 82/1 85/20 85/23 87/6 87/9 87/14
somebody **[3]** 4/25 17/18 20/8
someday **[1]** 42/11
someone **[2]** 20/17 20/18
something **[34]** 4/9 17/9 18/9 18/14 20/15 21/2 21/5 21/17 22/14 29/12 30/7 30/21 31/18 35/12 38/2 40/24 51/18 57/21 60/17 60/19 60/19 60/19 62/23 63/18 63/18 72/22 75/21 79/2 81/10 81/24 83/2 89/4 89/7 89/16
sometime **[1]** 8/17
sometimes **[3]** 6/17 6/18 17/21
somewhat **[1]** 21/11
soon **[1]** 80/11
sophisticated **[1]** 43/11
sorry **[22]** 3/14 5/11 14/6 15/8 16/13 21/25 29/24 32/2 53/23 56/6 59/11 59/13 60/11 64/4 69/25 70/1 73/23 74/3 74/7 74/8 78/11 85/21
sort **[11]** 26/25 34/17 35/20 35/23 37/25 44/2 51/22 65/13 67/10 77/1 77/8
sorts **[1]** 76/19
sounds **[5]** 34/10 57/15 85/22 86/11 89/1
Southern **[3]** 7/17 11/13 49/9
sovereign **[3]** 6/16 55/10 76/15
speak **[3]** 3/14 7/7 39/20
speaking **[2]** 10/14 66/10
specific **[2]** 41/12 44/17
specifically **[2]** 10/21 21/21
specified **[6]** 16/9 35/13 36/6 38/6 39/11 57/11
specifies **[1]** 41/9
spoke **[1]** 60/3
spoken **[1]** 68/5
sponsors **[3]** 6/18 44/8 49/17
staff **[1]** 68/21
stand **[2]** 50/15 86/15
standing **[3]** 56/15 56/16 89/5
start **[7]** 5/14 11/6 41/4 50/24 51/6 58/22 67/19
started **[3]** 22/15 22/18 44/17
starting **[2]** 3/5 52/2
starts **[1]** 24/11
state **[14]** 3/4 6/10 6/18 22/2 22/2 22/8 22/8 22/24

**S**

state... **[6]**  22/24 44/8
68/17 71/4 71/4 81/14
stated **[1]**  83/24
statement **[1]**  69/20
statements **[2]**  20/3 22/15
states **[5]**  1/1 1/11 47/16
55/6 82/1
status **[3]**  88/9 88/16 88/23
statute **[4]**  31/9 49/21 55/9
60/23
statutory **[1]**  10/23
stay **[1]**  88/24
step **[3]**  12/2 28/22 77/5
steps **[3]**  26/25 78/1 78/13
still **[15]**  18/23 20/7 27/5
33/18 39/21 42/10 47/8 62/19
63/7 70/3 76/1 76/7 77/8
77/18 78/19
STINSON **[2]**  2/3 4/2
stopping **[1]**  20/13
strange **[5]**  35/23 61/4 62/22
63/5 63/6
stretch **[1]**  19/13
strike **[1]**  37/4
striking **[1]**  81/6
stronger **[1]**  72/6
strongly **[1]**  33/20
stuff **[1]**  61/12
stumbling **[1]**  53/1
subject **[2]**  10/25 45/3
subjective **[1]**  26/14
submissions **[1]**  88/25
submit **[2]**  89/4 89/7
submitted **[2]**  6/14 77/16
submitting **[3]**  6/20 51/20
77/2
subrogate **[1]**  8/18
subrogated **[4]**  6/21 8/12
8/21 50/16
subrogation **[1]**  8/23
substantial **[1]**  32/19
succinct **[1]**  72/18
such **[5]**  7/9 10/24 18/17
60/8 86/25
sue **[1]**  18/10
sufficient **[2]**  10/7 42/10
suggest **[3]**  18/23 55/19
63/20
suggesting **[4]**  38/14 39/1
55/15 61/21
suggestions **[1]**  61/22
suggests **[3]**  33/14 33/19
43/1
Suite **[3]**  1/16 1/20 2/4
summary **[10]**  5/12 5/24 26/10
27/9 29/13 63/16 83/5 84/9
84/16 85/3
summer **[2]**  3/13 3/16
Summers **[1]**  69/5
Summit **[1]**  31/16
supercedes **[1]**  48/22
supersedes **[1]**  11/16
support **[2]**  11/10 25/19
Supported **[1]**  6/11
suppose **[5]**  12/25 17/16 38/2
38/9 54/1
sure **[24]**  4/23 5/25 9/13
9/19 16/24 18/5 20/16 32/13

39/3 39/7 42/10 47/6 55/14
59/21 61/18 64/15 65/7 71/2
71/3 73/21 79/8 81/11 85/10
89/7
surprised **[2]**  6/1 81/17
survivors **[1]**  68/16
SUSANNA **[3]**  1/3 3/3 3/7
susceptible **[2]**  26/12 27/6
sustained **[2]**  10/22 50/5
Syria **[2]**  6/18 44/10

**T**

table **[2]**  3/8 47/17
take **[13]**  12/5 12/7 14/20
16/6 22/10 22/11 24/18 25/11
34/19 49/7 51/24 65/1 88/19
taken **[5]**  21/24 23/6 61/16
65/17 79/19
taking **[1]**  9/14
talk **[10]**  9/7 9/10 43/3 53/5
55/23 66/9 73/17 81/23 82/5
86/17
talked **[6]**  52/20 67/17 70/5
70/5 75/15 79/7
talking **[27]**  20/19 25/7 30/5
30/15 32/19 33/20 43/9 47/24
48/17 49/13 52/3 52/21 61/15
61/23 62/2 62/3 62/15 62/17
66/24 69/2 69/9 75/5 75/20
76/1 79/6 82/14 84/4
talks **[7]**  38/17 49/6 49/10
49/14 52/4 76/5 79/11
Tarasoff **[2]**  1/18 4/2
targets **[1]**  18/3
task **[1]**  50/3
teamed **[1]**  21/13
technically **[1]**  8/23
tell **[12]**  5/8 55/6 56/20
64/25 67/1 67/4 67/9 67/23
82/7 86/12 89/11 89/12
telling **[5]**  35/25 59/17
59/18 69/22 85/8
tells **[1]**  80/8
tend **[1]**  15/9
term **[7]**  14/24 15/20 31/14
37/15 49/9 68/8 78/22
termination **[1]**  87/1
terms **[6]**  44/22 49/8 75/8
75/8 81/12 82/15
terror **[4]**  12/21 12/23 44/8
82/2
terrorism **[8]**  6/11 6/19
24/16 43/12 44/9 49/17 70/18
76/15
terrorist **[5]**  8/15 11/15
48/14 55/6 55/13
testified **[3]**  47/11 47/14
47/20 51/13
testify **[1]**  27/24
testimony **[3]**  3/5 23/5 28/8
than **[27]**  4/13 7/15 11/22
12/15 12/23 14/12 15/21
17/13 18/10 26/4 26/12 36/25
43/20 45/8 45/8 45/13 49/22
51/25 60/15 71/15 72/7 72/18
81/2 82/3 84/6 85/19 86/12
Thank **[10]**  3/23 4/4 24/2
25/22 25/23 52/9 71/20 72/17
89/22 89/23
thanks **[6]**  24/4 69/3 69/4

69/6 69/12 86/18
That's **[1]**  12/7
their **[26]**  4/24 4/25 7/24
8/9 18/16 22/12 23/8 23/11
24/8 25/1 25/3 30/17 32/13
33/22 34/7 34/7 34/12 35/7
43/4 43/10 47/25 48/8 48/9
52/18 60/16 69/11
them **[10]**  3/12 3/12 3/13
9/14 10/1 41/8 45/25 66/4
79/20 85/6
themes **[1]**  24/25
themselves **[1]**  26/18
then **[50]**  6/19 6/20 6/20
8/22 27/5 27/6 27/8 29/1
29/4 30/10 32/25 33/16 34/18
36/3 36/22 36/25 37/12 40/12
41/6 44/17 45/19 46/16 49/6
49/14 50/4 51/1 51/19 53/7
66/23 68/20 70/9 70/21 70/25
76/9 77/4 78/15 80/3 80/8
80/10 80/12 80/25 83/13
83/19 83/19 84/12 88/13
88/14 88/24 89/7 89/19
theories **[1]**  54/17
theory **[2]**  85/4 88/25
there **[134]**
thereafter **[3]**  44/18 50/23
81/1
these **[50]**  5/19 5/22 5/23
6/5 6/15 7/21 9/2 9/8 21/4
21/10 21/12 21/19 22/6 22/9
22/18 22/19 23/13 25/15
25/15 25/16 25/17 26/11
33/10 33/24 34/11 38/13 41/6
41/25 42/1 43/10 43/23 45/17
51/20 55/15 56/19 58/19 59/3
60/4 61/23 62/21 63/22 63/22
64/1 64/3 64/6 71/15 75/23
76/13 78/2 79/19
they **[106]**
thing **[14]**  4/7 17/23 19/6
29/8 29/11 31/3 34/15 35/22
63/23 65/4 66/8 70/25 78/18
81/20
things **[33]**  10/13 12/15
12/15 21/3 21/22 22/5 26/3
28/24 29/21 30/24 33/10
33/10 43/20 48/20 57/8 59/24
60/1 63/12 63/12 63/13 63/20
69/22 70/10 76/11 77/1 79/20
85/11 85/14 85/25 87/5 88/2
88/10 89/3
think **[173]**
think that **[1]**  9/8
thinking **[4]**  41/17 41/19
41/23 80/21
thinks **[3]**  77/18 79/16 80/15
third **[13]**  1/20 13/4 13/8
14/16 14/20 14/22 14/23 35/5
45/8 45/8 45/13 46/7 79/13
this **[181]**
Thomas **[1]**  1/14
those **[23]**  9/6 18/14 29/1
35/11 43/19 44/9 44/12 45/21
45/22 45/22 45/24 48/6 49/4
52/18 55/7 57/12 60/25 65/3
74/13 74/14 77/20 77/20 87/5
though **[5]**  31/13 36/13 39/8

**T**

**though... [2]** 46/12 82/16
**thought [17]** 5/21 14/17
14/22 27/4 28/20 28/20 29/6
32/18 32/18 41/24 42/12
52/24 57/6 57/6 60/22 63/1
81/16
**thousands [1]** 75/2
**threat [1]** 62/4
**three [8]** 10/1 15/1 41/21
65/3 66/9 67/13 79/22 80/25
**through [21]** 4/8 6/8 6/14
7/18 8/15 9/11 12/2 16/19
17/2 19/9 32/17 34/3 35/2
37/20 40/10 41/9 49/7 55/8
83/13 84/13 85/21
**throughout [4]** 14/17 15/13
30/12 43/5
**ticket [1]** 8/4
**time [24]** 4/11 7/22 17/25
24/8 25/11 31/7 31/12 39/18
47/16 49/8 54/13 60/3 60/21
63/14 64/25 69/5 77/6 83/16
85/9 85/23 87/7 87/23 88/1
89/19
**times [1]** 21/13
**timing [1]** 89/15
**tired [1]** 68/14
**today [16]** 3/17 4/6 5/18 6/5
7/20 16/2 53/14 64/11 64/21
67/16 68/1 71/19 72/15 79/19
87/9 89/18
**together [5]** 21/13 21/16
31/11 39/19 60/2
**told [6]** 31/8 70/22 77/25
78/1 78/15 85/15
**Tom [1]** 3/6
**tonight [1]** 84/9
**too [3]** 43/9 45/16 66/16
**took [1]** 29/12
**top [2]** 31/15 67/23
**topic [2]** 74/2 80/18
**touch [1]** 50/19
**Trade [1]** 4/14
**transcript [2]** 1/10 90/4
**transparency [1]** 32/16
**transparent [1]** 36/23
**treated [2]** 6/23 14/12
**trial [12]** 27/9 85/7 85/12
85/13 86/3 86/5 86/6 86/12
86/24 88/14 88/18 88/22
**tried [2]** 22/2 88/17
**tries [1]** 80/13
**triggers [1]** 77/4
**trip [1]** 31/15
**trivial [1]** 55/15
**troubled [1]** 5/7
**true [4]** 29/17 55/3 84/3
90/4
**Trump [6]** 21/24 22/1 22/4
31/14 31/20 34/9
**Trump's [1]** 31/14
**try [7]** 21/12 21/17 28/2
72/19 85/16 85/25 89/16
**trying [9]** 31/11 38/13 39/1
47/1 51/17 51/21 69/10 80/19
89/14
**Tuesday [1]** 79/14
**tunc [3]** 71/2 72/22 80/6

**turns [1]** 18/12
**Twitter [1]** 71/17
**two [25]** 10/13 12/2 12/15
12/15 13/11 14/15 15/5 27/6
29/1 30/24 33/10 41/6 48/3
49/19 50/18 54/18 63/3 63/20
65/2 69/16 69/22 70/10 79/23
82/10 89/16
**type [4]** 22/9 61/8 84/21
85/4
**typically [2]** 6/17 15/24

**U**

**U.S [1]** 2/7
**ultimately [1]** 6/4
**unable [1]** 10/11 89/3
**uncertainty [1]** 77/9
**unclear [1]** 32/7
**under [6]** 44/2 44/5 55/9
55/9 80/23 81/21
**understand [18]** 7/3 7/25
12/2 26/14 26/15 28/10 32/24
39/7 39/8 46/25 52/23 53/18
54/2 54/5 56/18 66/3 66/4
77/7
**understandably [1]** 78/23
**understanding [7]** 14/13
23/16 52/19 57/4 63/2 66/17
79/3
**understands [1]** 25/15
**understood [2]** 32/12 53/19
**unfortunately [4]** 27/23 28/6
82/20 85/10
**unifying [1]** 32/10
**UNITED [4]** 1/1 1/11 47/16
82/1
**unless [2]** 29/3 64/2
**unsuccessful [1]** 88/17
**unsure [1]** 47/8
**until [15]** 24/7 32/20 37/7
50/24 54/11 56/9 59/8 59/14
59/23 80/24 82/13 84/2 88/24
89/19 89/21
**unusual [3]** 3/19 22/19 27/20
**up [31]** 3/14 11/6 13/24
15/11 21/13 23/10 23/25
27/10 30/20 31/1 32/13 32/20
33/14 34/2 37/7 41/7 47/18
49/1 49/2 49/7 51/19 57/3
58/23 60/6 61/13 75/25 78/18
80/11 82/13 83/20 85/11
**update [1]** 69/12
**upon [2]** 83/13 84/13
**upset [1]** 25/10
**urgency [1]** 80/12
**us [8]** 3/16 5/23 21/1 27/22
34/10 58/17 65/20 89/10
**usage [2]** 16/1 37/17
**use [6]** 13/1 16/23 33/12
42/1 42/7 61/24
**used [3]** 16/24 26/9 68/8
**useless [1]** 20/22
**using [2]** 10/22 29/25
**usually [3]** 16/23 16/23
45/17

**V**

**VA [1]** 1/17
**vague [1]** 10/11
**value [1]** 19/23

**varies [1]** 45/18
**variety [1]** 74/11
**various [3]** 8/15 53/1 66/1
**VCF [35]** 6/11 17/11 23/17
25/18 41/13 41/13 41/21 43/2
52/22 58/21 60/14 64/20
66/18 66/19 66/24 67/3 68/9
68/23 69/10 69/13 70/16
71/17 72/7 72/13 75/25 80/16
80/23 81/21 83/1 83/23 84/5
84/15 84/17 84/18 85/4
**vein [1]** 52/1
**vent [1]** 24/12
**version [1]** 29/25
**versions [1]** 9/17
**versus [3]** 3/3 28/12 42/11
**very [21]** 3/21 5/6 15/10
30/3 33/7 33/19 33/20 34/10
36/23 47/16 49/8 54/22 55/16
57/1 61/4 64/24 72/3 78/24
81/8 84/2 85/21
**via [5]** 33/19 39/22 62/20
65/8 66/13
**victim [4]** 7/23 9/4 33/6
82/2
**victims [8]** 6/10 11/5 21/13
22/9 24/16 44/8 48/9 70/18
**Victims' [1]** 16/2
**view [4]** 6/3 8/19 24/8 36/4
**views [1]** 76/17
**vs [1]** 1/6
**VSST [67]** 6/10 8/2 8/4 8/10
8/11 8/14 9/5 17/11 17/12
17/13 22/11 22/14 23/1 23/16
24/7 24/9 25/1 25/5 25/8
25/18 41/13 41/21 43/2 43/4
44/7 45/14 45/24 51/1 52/18
52/21 55/1 55/21 58/22 59/17
60/14 60/21 63/14 63/24
64/14 64/15 64/21 68/24
69/10 69/13 69/24 70/12
70/14 70/16 70/17 70/23 71/8
71/15 72/4 72/7 72/16 73/3
73/20 75/25 76/7 76/8 76/10
77/17 80/17 80/23 81/22
83/13 84/14
**VSST's [1]** 72/4

**W**

**walk [2]** 9/11 41/8
**want [27]** 4/23 5/13 7/7 7/12
21/2 26/6 28/19 32/24 47/23
48/2 53/13 58/22 63/18 68/18
72/19 72/21 75/20 85/2 85/5
85/12 86/3 88/10 88/14 88/14
88/24 89/10 89/11
**wanted [15]** 4/7 4/19 22/6
47/6 52/4 53/4 60/12 67/10
73/1 73/2 75/19 79/8 79/20
81/20 82/5
**wants [1]** 62/3
**was [163]**
**Washington [3]** 1/6 2/5 2/9
**wasn't [7]** 24/9 28/3 54/4
56/9 68/23 72/20 81/10
**way [26]** 6/15 7/2 13/10
14/14 20/20 26/8 27/11 27/15
27/15 28/24 36/18 42/1 42/4
47/25 50/19 53/19 56/21 61/8
62/9 76/12 83/7 84/1 84/13

**W**

way... **[3]**   86/5 86/8 88/18
we **[157]**
we'll **[4]**   30/12 89/4 89/7
89/16
week **[4]**   86/12 88/7 89/20
89/21
weekend **[1]**   79/19
weeks **[2]**   88/4 89/16
weight **[2]**   81/2 81/11
welcome **[4]**   3/18 4/5 87/17
88/24
well **[37]**   3/13 3/17 3/18 5/5
7/13 7/19 18/7 18/18 21/8
22/6 29/5 35/9 37/9 38/16
40/25 42/19 45/20 46/24
47/14 47/20 54/1 55/3 56/4
56/14 58/4 60/22 64/13 66/16
67/19 74/9 76/11 78/3 78/18
80/13 82/6 83/15 89/14
went **[5]**   16/2 30/8 43/5 81/7
85/21
were **[76]**   5/7 10/1 10/3
11/12 13/12 13/12 18/2 18/5
21/4 22/8 22/16 22/18 23/6
23/17 26/3 27/21 27/22 28/24
28/24 29/21 30/13 31/10
31/10 31/12 31/18 32/11
36/20 37/25 38/24 38/24 43/4
43/6 43/7 43/9 43/23 46/15
47/16 50/22 52/2 52/21 56/17
57/9 58/19 60/4 60/5 60/21
60/24 60/25 61/1 61/9 61/9
61/23 62/23 63/14 63/24 64/9
66/3 66/4 71/2 71/6 71/7
71/11 71/12 71/13 73/2 74/14
75/20 75/24 76/2 79/11 80/1
80/21 82/2 82/3 82/25 88/17
weren't **[2]**   31/6 57/5
what **[138]**
whatever **[5]**   5/13 7/5 26/6
37/3 40/17
whatnot **[1]**   8/16
whatsoever **[1]**   49/22
when **[25]**   15/9 20/7 20/9
22/14 22/16 30/4 32/19 37/18
43/3 48/18 52/2 52/20 59/9
65/4 68/4 71/10 73/1 77/6
79/11 79/13 80/21 81/22
81/23 89/11 89/12
where **[26]**   7/16 7/23 10/9
10/9 13/25 14/6 15/22 18/11
24/14 30/5 48/13 50/10 51/6
59/15 61/21 63/16 66/9 66/10
75/16 77/8 78/1 78/11 79/15
84/3 88/10 88/12
whether **[26]**   4/11 4/17 4/20
8/8 15/21 16/19 16/25 17/2
19/9 23/16 26/20 27/12 27/12
27/17 28/23 40/10 43/18 51/7
55/2 61/11 68/17 77/9 81/12
84/18 85/3 87/2
which **[58]**   6/5 6/13 8/14 9/3
10/6 11/7 12/9 12/12 13/9
13/16 15/17 16/21 16/23 21/3
21/5 21/23 26/7 27/23 28/24
29/13 29/24 30/7 30/25 32/23
33/11 33/19 34/10 34/20 35/5
40/21 43/20 46/10 46/10 47/5

47/22 50/18 54/25 59/13
62/25 67/12 68/6 68/8 68/23
69/25 70/1 71/24 73/4 74/23
75/21 75/23 77/1 79/4 82/25
83/1 85/23 86/6 87/13 88/25
while **[1]**   4/12
who **[24]**   3/20 4/15 4/25 11/3
11/11 16/20 30/16 33/4 33/5
33/21 34/5 34/5 34/6 34/11
39/20 40/9 41/17 73/21 74/14
74/15 74/20 76/13 76/14
87/15
whole **[1]**   68/6
whom **[7]**   19/11 33/7 33/17
39/21 41/11 62/18 79/25
whose **[9]**   11/12 16/10 16/14
16/17 19/4 19/7 35/14 40/8
58/1
why **[30]**   5/13 9/7 9/10 9/11
12/2 14/13 18/25 22/6 22/10
22/22 28/24 41/25 42/18 45/9
50/8 51/8 51/11 51/16 52/4
56/13 58/7 63/9 69/8 69/9
69/10 71/2 83/14 88/8 89/11
89/18
will **[46]**   3/11 4/22 5/25 6/1
10/8 10/8 10/10 10/14 10/21
13/9 14/12 17/20 24/10 24/13
24/15 34/2 34/3 36/23 50/14
50/15 52/14 53/7 53/12 64/1
64/25 65/3 65/4 65/15 65/16
67/19 72/18 75/18 78/25
79/17 83/5 84/8 85/13 87/12
88/9 88/19 88/22 88/22 88/23
89/1 89/4 89/15
Williams **[2]**   1/15 3/9
wish **[1]**   60/8
without **[3]**   34/1 46/20 77/3
witnesses **[1]**   88/20
won't **[4]**   25/11 53/5 66/3
68/6
word **[10]**   13/1 15/24 27/8
34/18 34/18 43/22 56/21
56/21 65/16 82/6
words **[13]**   21/19 22/8 25/3
26/14 26/15 26/21 27/2 27/4
38/14 39/2 42/1 42/7 51/25
work **[25]**   20/15 25/1 29/20
43/19 47/15 48/23 50/1 50/24
51/14 52/5 53/16 54/3 54/3
54/6 56/14 59/20 71/15 77/6
78/4 78/7 78/22 78/25 79/2
81/13 83/19
worked **[7]**   21/13 53/16 54/12
56/17 60/2 78/24 87/2
working **[11]**   21/16 25/9
25/16 27/21 48/19 54/18
54/19 54/19 69/8 69/12 89/14
works **[1]**   88/16
world **[4]**   10/10 36/13 40/21
43/11
worry **[1]**   39/4
worth **[1]**   23/3
would **[122]**
wouldn't **[18]**   15/25 16/1
21/1 28/1 36/17 37/24 50/8
51/8 51/11 58/10 60/7 61/18
75/20 76/3 76/4 76/2 78/6
87/15
wrap **[1]**   85/11

wrapped **[1]**   80/10
write **[6]**   14/16 59/20 61/18
68/13
writes **[6]**   33/2 52/12 75/16
77/24 77/25 78/19
writing **[1]**   52/17
written **[8]**   7/22 17/25 27/23
36/17 39/17 52/7 60/14 75/15
wrong **[1]**   86/13
wrongful **[3]**   11/14 48/12
82/15
wrote **[2]**   58/24 79/5

**Y**

yeah **[22]**   5/11 9/11 9/22
19/16 30/2 42/8 42/21 44/23
45/12 53/18 54/1 64/18 70/4
70/20 71/12 74/5 74/10 75/4
75/8 87/10 87/17 88/1
year **[6]**   45/18 45/18 45/20
69/21 70/7 77/18
years **[8]**   18/1 19/14 24/18
34/10 59/19 70/22 76/20 81/1
Yep **[5]**   12/18 24/4 30/9
69/19 78/14
yes **[24]**   8/25 13/14 13/19
14/17 16/23 19/3 28/4 29/23
31/6 34/25 35/9 36/11 39/14
40/2 55/17 58/5 60/6 60/13
71/19 71/23 75/13 76/17
86/10 86/18
yet **[3]**   22/25 28/19 30/16
York **[6]**   1/21 11/14 50/12
50/13 56/1 83/12
you **[263]**
You'd **[1]**   76/23
you're **[1]**   28/22
your **[97]**
yourself **[2]**   68/13 72/2

**Z**

Zack **[1]**   69/5
Zadroga **[12]**   65/9 65/13
66/14 66/17 67/4 68/8 68/8
73/25 74/5 74/13 74/15 74/20
zero **[1]**   74/15