**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SUSANNA QUINN, personal representative,)
of the Estate of John M. Quinn                   )
                                                                    )          Case No. 1:21-cv-01824-RDM
            *Plaintiff*                                     )
v.                                                                 )          Date:    August 5, 2025
                                                                    )
KREINDLER & KREINDLER LLP, *et al.*      )
                                                                    )
            *Defendants.*                                )
_____)

**PLAINTIFF'S RESPONSE TO**
**DEFENDANTS' SUPPLEMENTAL AUTHORITIES BRIEF**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

I.    The Dog that Did Not Bark Theory is Ill-suited for Contract Interpretation ..................... 2

II.   None of the Cases Cited by the Defendants Involve Relying on Pre-Drafting Parol Evidence of Silence to Interpret the Text of a Contract ....................................................... 5

III.  *Expressio unius est exclusio alterius* is also Inapplicable to the Clause ............................ 7

IV.   Including VCF as Source of Remedy is in line with the Parties' Expectation for How Much Quinn Could Have been Entitled to ..................................................................................... 9

V.    Defendants' Review of VSST Parol Evidence is Beyond the Scope of the Briefing Ordered by the Court ....................................................................................................................... 12

VI.   Parol Evidence Establishes that the 2018 Agreement Reaches the Administrative Funds ................................................................................................................................. 14

CERTIFICATE OF SERVICE ................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Chi.*,
    956 F. Supp. 814 (N.D. Ill. 1997) ....................................................................... 9

*Ben-Zvi v. Edmar, Co.*,
    40 Cal. App. 4th 468 (Cal. Ct. App. 1995) ...................................................... 12

*Chisom v. Roemer*,
    01 U.S. 380 (1991) ............................................................................................. 5

*Drescher v. Baby, It's You, LLC*,
    544 Fed. App'x 783 (9th Cir. 2013) ................................................................... 7

*Encino Motorcars, LLC v. Navarro*,
    584 U.S. 79 (2018) .............................................................................................. 5

*Esteras v. United States*,
    145 S. Ct. 2031 (2025) ........................................................................................ 8

*Facebook, Inc. v. Wint*,
    199 A.3d 625 (D.C. 2019) ................................................................................... 5

*Integral Dev. Corp. v. Tolat*,
    2016 WL 8929073 (N.D. Cal. Dec. 23, 2016) ................................................... 6

*Kennecott Corp. v. Union Oil Co.*,
    196 Cal. App. 3d 1179 (Cal. Ct. App. 1987) ..................................................... 6

*Lamps Plus, Inc. v. Varela*,
    587 U.S. 176 (2019) ............................................................................................ 4

*Patterson v. District of Columbia*,
    795 A.2d 681 (D.C. Ct. App. 2002) .................................................................... 7

*Zahr v. Wingate Creek Acquisition Corp.*,
    827 F. Supp. 1061, 1069 (S.D.N.Y. 1993) ......................................................... 6

**Statutes**

D.C. Code § 28:1-303 ................................................................................................. 4

**Other Authorities**

Antonin Scalia & Bryan A. Gamer,
    Reading Law: The Interpretation of Legal Texts 107 (2012) ............................................ 8

William N. Eskridge, Jr. & Philip P. Frickey,
    *Quasi-Constitutional Law: Clear Statement Rules as Constitutional Lawmaking*, 45 VAND
    L. REV. 593, 611–12 (1992) ................................................................................................. 2

**Rules**

Fed. R. App. P. 28(j) ............................................................................................................ 13

Pursuant to July 15, 2025, hearing on the parties' summary judgment motions and the subsequent minute order, Plaintiff, through undersigned counsel, hereby submits this response to Defendants' Supplemental Authorities Brief.

## **INTRODUCTION**

On July 15, 2025, the Court held oral argument on Plaintiff's motion for partial summary judgment and Defendants' cross motion for partial summary judgment. The Parties discussed whether Quinn's contract entitles him to payments from two administrative funds: VCF and the VSST.

As to the VSST, the Court indicated willingness to grant-in-part Plaintiff's motion for partial summary judgment, noting that the plain language of the contract could entitle Quinn to fees received through the VSST. *See* Tr. 84:9-18. The Court stated: "I will tonight deny plaintiff's motion for summary judgment with the qualification that I think that plaintiff is correct that there is not a Saudi Arabia limitation and that to the extent a judgment was entered in the SDNY litigation and then was collected upon, in any particular way, including through the VSST, [] I am persuaded that would be covered" as a matter of contract's plain language. *Id*. The Court apparently agreed with Plaintiff's contention that the VSST is merely a funding source for the 9/11 claimants who have already filed suit who use this congressionally structured system to resolve their claims for the torts arising from the September 11, 2001, terrorist attacks.

With respect to the VCF, the Court expressed a more significant concern. It rejected that compelling facts existed to support the Plaintiff's request for summary judgment but also hesitated to grant the Defendant's summary judgment regarding payouts from the VCF. *Id*. (leaving open the question of "whether the defense is entitled to the VCF.").

The Court appeared to agree that the intent of the parties to include the VCF in payment calculations to Mr. Quinn might be factual in nature and, therefore, was a question for the fact finder. *See* Tr. at 85:6-9.

Nevertheless, the Court invited additional briefing on the very narrow question of whether Defendant was entitled to summary judgment on the VCF claim. Opining on Mr. Quinn's lack of confirmation of the claim that the VCF was to be included as a source of payouts to him, the Court sought authority on specifically, the "cases that rely on the dog that didn't bark type analogy as a parol evidence basis for reaching a particular conclusion." Tr. 84:19-23.

The Defendants attempt to use this submission, to relitigate the Court's decision on the VSST, but that should be rejected as *res judicata*. The sole issue is: "[W]hether the defense is entitled to summary judgment with respect to the VCF on the dog that didn't bark type theory." *Id*. at 85:2-4. The definitive answer to that question is no.

## ARGUMENT

### I.    The Dog that Did Not Bark Theory is Ill-suited for Contract Interpretation

Defendants' brief references a number of cases where the concept is used in the context of statutory construction. *See* Br. at 7 (discussing the application of the dog that did not bark in interpreting the Voting Rights Act Amendment of 1982). The statutory construction cases that deploy the dog that did not bark theory are not applicable to breach of contract claims in the first instance. In statutory construction cases, the concept is deployed to protect constitutional norms, such as federalism limitations on the national government, state sovereignty, the nondelegation doctrine, or the separation of powers between branches. *See* William N. Eskridge, Jr. & Philip P. Frickey, *Quasi-Constitutional Law: Clear Statement Rules as Constitutional Lawmaking*, 45 VAND L. REV. 593, 611–12 (1992).

2

But statutory construction regarding divining Congressional intent has a safety mechanism, not present in a contract case. If the Court is incorrect in its assessments, Congress can always enter the field and amend the statute. In contract cases, however, the parties have already entered into a written agreement that is supposed to express their understanding. The Court seeks to encourage the creation and enforcement of binding written agreements. A later dispute over the meaning of the actions of the parties or silence in response to some aspect of the relationship does not convey the authority for the Court to speculate on what should have been done. At best it presents a fact issue, for a fact-finder to assess why a party failed to raise or advocate a particular point. It may be true, after all that Mr. Quinn would have been expected to forcefully raise the specific payouts of the VCF in his discussions with Defendants. Due to his untimely death, of course, Quinn is not in a position to state why he did not. But to conclude that a party should have done something is not the same as finding that its lack of doing so is conclusive evidence that it waived its position. As the Court itself has noted, the parties to this contract were experienced lawyers, who had worked together in the past. One explanation for the failure to demand VCF payouts, forcefully in writing, could have something to do with that relationship. Ironically, the experience level and relationship may have rendered them less likely to set forth the scope of the actual net payout, with more specificity than the "any source" language in the contract itself. Once the Court asserts a conclusive legal analysis as to why Quinn has not produced documentary support for the inclusion of the VCF in the corpus of potential recovery, it is in effect, travelling back in time to rearticulate the mutual assent of the parties

The Defendants' position conflates legal authority that posits the significance of silence in legislative analysis to that in breach of contract cases. It is tricky to equate silence with evidence,

particularly here, where one side can take advantage of the inability of a decedent to counter that claim.

A contract, however, is a matter of consent, and when the Supreme Court has analyzed whether silence can signify anything in cases involving contractual matters, the answer has been clear: no, "[s]ilence is not enough." *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 177 (2019) (finding that in arbitration agreements which are "strictly a matter of consent," silence cannot be used to infer the intent of the parties).

For this reason, the Restatement (Second) of Contracts discourages the use of the dog that did not bark theory. In this case, the absence of parol evidence highlighted by the Court is course of dealing evidence. Tr. at 41:22-42:7 (inquiring why there is not more evidence in the record of the parties' negotiations over VCF and VSST before the "or otherwise" language was agreed to). In particular, the Restatement disfavors relying on any course of dealing evidence, let alone silence of course of dealing, for interpreting contract terms. Restatement (Second) of Contracts § 203 (1981) (indicating that both express terms and course of performance should be given greater weight than course of dealing).[1]

Defendants do not cite to any controlling authority that establishes this specific concept to be as useful in contract cases. *See* Br. at 7 n.1 (citing to a footnote from a district court opinion in New York for the general statements that it is not "uncommon" for the courts to borrow linguistic cannons in contract cases).

---

[1] While the parties have not extensively briefed the issue of choice of law in this case, the law of District of Columbia, which likely applies to this contract, also explicitly disfavors relying on course of dealing to interpret contractual provisions, let alone course of dealing gleaned from silence. *See* D.C. Code § 28:1-303 (Course of performance, course of dealing and usage of trade).

Furthermore, even in the statutory construction cases, the use of the concept is now disfavored. While the Defendants rely on Justice Stevens' characteristically eloquent opinion in *Chisom v. Roemer*, for the proposition that Congress's silence in some instances can be likened to the dog that did not bark, the Supreme Court's position today is closer to Justice Scalia's dissent in that case which disfavored the concept and stated that the Court must "apply the statute, not legislative history, and certainly not the absence of legislative history," or silence. 501 U.S. 380, 406 (1991) (Scalia, J., dissenting). In essence, non-evidence should be sparingly used as evidence.

Most recently, in *Encino Motorcars, LLC v. Navarro*, the Supreme Court pointedly stated that even "if the text is ambiguous, silence in the legislative history cannot lend any clarity." 584 U.S. 79, 90 (2018).

Defendants have not relied on any D.C. Circuit authority post-*Encino* that deploys the dog that did not bark theory in statutory construction cases or a breach of contract case. The District of Columbia Court of Appeals has endorsed *Encino*'s finding that silence in the legislative history, "no matter how clanging, cannot defeat the better reading of the text and statutory context." *Facebook, Inc. v. Wint*, 199 A.3d 625, 631 (D.C. 2019) (citing *Encino*, 584 U.S. at 90). If the Defendants are going to rely on judicial interpretations of silence in legislative history as proof of something, the current case law rejects that analysis.

## II.    None of the Cases Cited by the Defendants Involve Relying on Pre-Drafting Parol Evidence of Silence to Interpret the Text of a Contract

Unlike statutory construction cases, reading into the parties' silence in breach of contract cases effectively undermines the text of a completely integrated final written agreement. *Zahr v. Wingate Creek Acquisition Corp.*, is of no comfort to Defendants, as there, the court resorted to the dog that did not bark concept because one party alleged an existence of an oral contract above and beyond the written text, in essence a separate agreement. *See* 827 F. Supp. 1061, 1069

(S.D.N.Y. 1993) (using the theory to assess if there is evidence of an enforceable oral agreement beyond the written contract). In this case, Quinn is not asking to add anything to the text of the existing contract at all. If anything, he relies upon the express text of the contract itself.

Defendants also conflate the relevance of parties' *conduct* with what the court asked for here: relevance of parties' *silence*. Thus, Defendants rely upon cases which examined the parties' post agreement contract performance and conduct, such as *Integral Dev. Corp. v. Tolat*, 2016 WL 8929073 (N.D. Cal. Dec. 23, 2016) and *Kennecott Corp. v. Union Oil Co.*, 196 Cal. App. 3d 1179 (Cal. Ct. App. 1987).

Such cases are not relevant for summary judgment: the parties' post-agreement conduct on the VCF involves an analysis of facts, whether a party was or should have been expected to do something. This is an evidentiary issue for the fact-finder, regardless of the logic or illogic of the conduct at issue. The Court may be right that it is inconceivable that Mr. Quinn did not protest lack of payouts from the VCF, but that presumption assesses the probity of Quinn's conduct: why he did not do something that the Court believes he would be expected to do. This is an assessment of Quinn's intentions and motivations, something a jury must decide.

At trial, the deceased Quinn has problems of direct proof, but further discovery and evidence at trial could reveal that percipient witnesses were aware that Quinn worked on VCF and believed it was part of the source funding for his work.[2]

For the purposes of this briefing, the Court specifically asked for cases that rely on the dog that did not bark theory to determine that the term "otherwise" in the contract between the parties

---

[2] After all, it is certainly illogical to argue that Quinn intended to do nearly a decade of work on pursuing relief for the 9/11 families based on the speculative belief that at some point in the distant future, the Saudi Arabian government would face and pay a judgment against it. It is just as logical to argue Quinn was aware of ongoing payouts from other sources arising from the 9/11 attacks.

excluded certain funds. In simplest terms, the Court wants to know if pre-drafting silence can be used as parol evidence to exclude specific terms from the written contract because they were not specifically named or discussed prior to drafting of that contract. Neither *Tolat* nor *Kennecott* touches on that issue and the Court would wade into an esoteric discussion of what silence might mean.

Defendants go beyond what the Court sought for this briefing, by discussing whether adopting a position for the first time during litigation raises negative implications about scope of entitlement. Br. at 11-13 (citing to *Drescher v. Baby*, *It's You, LLC*, 544 Fed. App'x 783 (9th Cir. 2013) and *Patterson v. District of Columbia*, 795 A.2d 681 (D.C. Ct. App. 2002)).

Neither case is applicable because the Court's order for supplemental briefing was limited to clarifying the relevance of silence in not citing the VCF in the written negotiations leading up to the contract and then again in the text of the final agreement. The Court has never propounded the point that a party forfeits its right to a contractual entitlement based on the party's posture after the commencement of litigation or based on the party taking varying positions during the litigation.

Neither *Drescher* nor *Patterson*, even reference the dog that did not bark concept, thus we question its applicability here. Further, the Defendants ignore that Quinn stated he was entitled to recovery from the administrative funds in 2020. DEX Z (Quinn arguing that the "plain words of the contract" entitle him to fees obtained from "a proxy state" through "the new Victims of Terrorism fund."). Therefore, those cases are immaterial.

## III.    Expressio unius est exclusio alterius is also inapplicable to the clause

As previously litigated in this case, the linguistic canon *expressio unius est exclusio alterius* does not support the Defendants' position in this case (and is again beyond the scope of this briefing which was to focus on the application of a separate theory). The canon broadly holds that

the expression of one thing implies the exclusion of others. *See* Antonin Scalia & Bryan A. Garner,

Reading Law: The Interpretation of Legal Texts 107 (2012).

Defendants ignore the fact that for the canon to be applicable, and for it to warrant a

negative-implication, the language it is applied to must first include a specific reference (i.e.

expression of one thing). So for example, when a sign reads "no dogs allowed," the cannon is

useful for interpreting the sign, because something has been specifically named: dogs. Therefore,

other animals can reasonably be excluded from the command.

However, as the Plaintiffs argued in their motion for partial summary judgment, and as the

Court found during the hearing, the clause in question here is susceptible to multiple meanings

*precisely* because it intentionally does not include any specific references to begin with, whether

it be Saudi Arabia, global settlement, a specific litigation, or any administrative funds. It was

intentionally written broadly to not name any potential sources of compensation, and therefore, to

not exclude by negative-implications any other sources not named.[3] The parties included a broad

statement on what was at issue in the recovery clause: "a fee, whether by judgment, settlement, or

otherwise." *See also* Pl.'s Mot. for Part. Summ. J. at 45-46 [ECF No. 52] (arguing that because no

lawsuit, entity, or fund is explicitly named in the relevant part of the Agreement the cannon does

not begin to operate to invite a negative implication).

The case relied on by Defendants, *Esteras v. United States*, 145 S. Ct. 2031, 2041 (2025),

establishes this point: when a statute itemizes 10 specific factors explicitly in a series in one part

and in other part only refers to eight of them as relevant or useful for consideration, the two absent

factors should be excluded by inference. Here, there is no defined list of items expressly outlined

---

[3] More likely it would include the broadest possible reading; thus the Defendants argument is
particularly misplaced.

whatsoever, and in fact, the inclusion of the disjunctive phrase "or otherwise" strongly implies an intent to not limit the parties to any specified list but to expand the scope of recovery itself. This is also consistent with fact that the later terms referencing what Quinn was entitled to were in fact broader and better defined than those in the original agreement.

The Court already recognized this. Tr. at 41:1:2 ("I can't imagine a world in which the Court could conclude that 'or otherwise' clearly refers to the Saudi funds and not to, for example, filing claims in an administrative proceeding."). If the parties wanted to limit compensation to funds associated with that lawsuit or entity, the easiest way to achieve that goal would have been to name the lawsuit or entity in the clause and clearly, directly, and unmistakably state that requirement; such a drastic exclusion cannot be overcome by implication, inference, assumption, or extrapolation.

Defendants are asking the Court to imply a nonexistent contract term that excludes VCF and VSST; this cannot be implied from silence. *See e.g., Aetna Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Chi.*, 956 F. Supp. 814, 816 (N.D. Ill. 1997) (total silence on the subject of carrying forward contract year-end deficits "is not equivalent to that of the dog that did not bark in the night," and refusing to deploy the cannon to add to the contract terms). The Court therefore should deny Defendants' argument that *expressio unius* canon excludes VCF from the contract.

## IV.     Including VCF as Source of Remedy is in line with the Parties' Expectation for How Much Quinn Could Have been Entitled to

The Court requested more briefing on the significance of the Parties' silence—or failure to explicitly name VCF—in the contract partially on the basis that because VCF appears to be "a huge potential recovery," one "would expect to see a lot more," discussion regarding that fund. Tr. at 83-22:84-7 (analogizing this silence to dog that did not bark).

9

As an initial matter, at this stage in the litigation, Plaintiff will be prejudiced by the application of the dog that did not bark theory to exclude VCF because the parties have not conducted adequate discovery to establish the underlying premise occupying the Court's mind— the potential size of a VCF recovery—and Defendants, who are in the best position to inform the Court as to the validity of that premise have not provided clear answers on fee accounting, while riding the coattails of its uncertainty. The underlying math is crucial for the Court to even begin considering whether Defendants should be entitled to summary judgment on VCF's exclusion solely because of the VCF's size which could render silence about it in parol evidence strange. Even if the Court believes that the size of a VCF recovery should be relevant to this analysis, Defendants, who possess that answer, have provided the Court only with ambiguity. Tr. at 46:4-5 (DEFENDANTS: "I am going to defer to Your Honor on math.").

Second, what is in the record so far does not indicate that including VCF would lead to a potential recovery that is so "huge" that it would undermine the parties' expectation to include it or invite the application of the dog that did not bark theory to assess the parties' silence about it. Tr. at 83:22-84:7. Defendants do not dispute that the contract entitled Quinn to a portion of fee for a potential global settlement with KSA. Def.'s Cross Mot. for Partial Summ. J. at 12-13 [ECF No. 56]. Defendants also do not dispute that Quinn was hired to work on that global settlement to "replicate the work done in connection with the Pan Am Settlement." *Id*. If the Pan Am settlement serves as a model for Quinn's work and the size of potential recovery anticipated under the contract, by Defendants' own admission, the parties anticipated that Quinn could be entitled to close to one percent of at least $2.7 Billion, the size of the Pan Am. Settlement, although a settlement with KSA over 9/11 would have been realistically much higher. *See* Kreindler LLP, *Libya Pays $2.7 Billion to Families of Pan Am Flight 103, available at*

https://www.kreindler.com/cases/final-settlement-payment-pan-am-flight-103.         In         fact,

Defendants informed the Court that a global resolution of 9/11 claims (what Defendants agree

could have been achieved through the state-to-state settlement that they agree Quinn was hired to

work on and receive fees for) is valued at $50 billion. Tr. at 45:2-11. Therefore, based on the

Defendants' own admission, Quinn stood to obtain his share from approximately a third of that

total value had a global settlement with KSA  been achieved. Despite the fact that Quinn is entitled

to fees from a potential " diplomatic state-to-state resolution," with KSA, what Defendants claim

was "the singular thing Quinn was hired to do," like the VCF, the contract did not explicitly

mention that diplomatic state-to-state solution with KSA either, even though the size of

compensation for Quinn as a result of that state-to-state resolution with KSA would have factored

by billions of dollars as well. Def.'s Mot. for Partial Summ. J. at 38. In 2017, the size of potential

recovery from VCF related fees would have been measurably smaller but comparable to the size

of potential recovery from a KSA state-to-state global settlement. Dept. of Justice, September 11th

Victim Compensation Fund, Section 1: Eligibility Criteria and Deadlines, *available at*

https://www.vcf.gov/policy/eligibility-criteria-and-deadlines (noting that in 2015, the closest date

to the final agreement, $4.6 billion had been appropriated for the VCF). Both a potential VCF

recovery and a potential KSA global-settlement recovery for Quinn would have been a multi-

million dollar recovery. Neither are explicitly referenced in the contract because the Parties

selectively opted for broad language to capture these sources of recovery *and more*, given the

uncertainty over where the compensation could come from. Tr. at 58:15-23. The size of a potential

recovery from VCF therefore does not by itself raise enough suspicions to invite application of the

dog that did not bark theory about the parties' silence. The parties also did not explicitly reference

a state-to-state global settlement which would have also been worth billions of dollars, and neither

party disputes its exclusion. The Court should not therefore view the size of a potential VCF recovery as basis to look into the parties' silence and their expectations or to deploy the dog that did not bark theory.

## V.    Defendants' Review of VSST Parol Evidence is Beyond the Scope of the Briefing Ordered by the Court

Defendants dedicate three pages of their supplemental filing to relitigating the issue of whether the record raises a dispute over genuine issues of material fact as to the inclusion of VSST. Br. at 13-17. As the Court noted in the hearing, these issues have been litigated, relitigated, hashed, and rehashed, and the Court is convinced at this point that the remaining disputes should be reviewed by fact-finders at trial. Tr. at 85:2-9 (noting that while the Court is happy to consider "any authorities" on the dog that did not bark proposition, "I also am happy, frankly, right now just to set a trial date," as "the case has been around for a long time.").[4] In fact, the Court ordered the Parties to submit supplemental authorities briefing on a narrow legal question (the applicability of dog that did not bark theory in contract cases) after hearing both parties' presentations on three key pieces of parol evidence that could resolve the dispute over material facts, and the briefing was to focus on "point[ing] [the Court] to any authorities on that proposition." Tr. at 85:2-9; *see also* Tr. at 72:18-82:7 (reviewing Defendants' key pieces of parol evidence). After reviewing the parol evidence and the Parties' summary judgment briefing, the Court identified the only issue left

---

[4] As the cases relied on by the Defendants indicate, even the issue of whether the dog that did not bark theory should be deployed or not is a question better suited for the Court's post-trial opinion, as the cannon should not be used merely because of silences in *documentary* evidence but in cases when even testimony at trial cannot fill a gap. Br. at 5 (relying on *Ben-Zvi v. Edmar, Co.*, 40 Cal. App. 4th 468, 473 (Cal. Ct. App. 1995) where the court deployed the cannon after finding no answer from "testimony or documentary evidence at trial"). The Court has already indicated in this case that testimony from individuals named in some of the significant pieces of parol evidence can be helpful in clarifying the weight of parol evidence. Tr. at 86:10-16 (discussing potential relevance of trial testimony regarding Quinn's work on the administrative funds with Senator Chuck Schumer's office).

for briefing to be supplemental authorities on the applicability of any case law on the dog that did not bark theory as a matter of law. The Court further stated that the relevance of any such case law may impact the Court's analysis of the VCF issue and not VSST. Tr. at 85:2-4 ("But I want to think a little bit further about whether the defense is entitled to summary judgment with respect to the VCF on the dog that didn't bark type theory.").

Despite the specificity of the Court's guidance from the bench, Defendants' brief serves as a sur-reply to their cross-motion for partial summary judgment with yet another one-sided yet exhaustive review of parol evidence record that the Court already considered during the hearing and before limiting this submission to supplemental authorities. In this case, aware of the fact that the Court had already heard from the Parties' on the relevance of the parol evidence, Plaintiffs agreed to a shorter timeframe for filing a response (two weeks for Defendants to file their opening brief and only a week for response) with the expectation that the briefing will only cover discussion of *supplemental authorities*. Plaintiffs' understanding that the briefing will not involve rehashing the weight of parol evidence was informed by the Honorable Judge's standing orders which expressly advises against using supplemental authority filings to discuss the merits of the case. Paragraph 8(d) of the standing order states:

> Supplemental Authorities. A party may bring supplemental authorities to the Court's attention without seeking prior leave of the Court, but should refrain from using the submission of supplemental authorities as an opportunity to reargue issues or to respond to arguments made in an opposing brief. Although the submission of supplemental authorities should not be made by letter to the clerk, but rather in a pleading filed in the usual manner, the parties are otherwise directed to follow the procedures set forth in Federal Rule of Appellate Procedure 28(j).

Standing Ord. ¶ 8(d).

Rule 28(j) of the Federal Rules of Appellate Procedure provides for submission of post oral argument "letters" to the clerk and labels such filings as "letters" to avoid the use of such filings

to improperly supplement the record before the Court. Rule 28(j) treats such filings as letters so that when the substance of such filings inevitably strays from informing the Court of issues that the Court can independently take judicial notice of (such as public authorities and relevant case law), any merits discussions can be discounted as not part of the record without further action from the Court.

While maintaining that review of the parol evidence is beyond the scope of this filing, Plaintiff submits their response to the arguments regarding the weight of parol evidence below once again as a summary of issues previously presented to the Court.

## VI.    Parol Evidence Establishes that the 2018 Agreement Reaches the Administrative Funds

The evidence in the record shows that Kreindler was aware of Quinn's expertise and experience in seeking a resolution for the 9/11 clients through administrative funds, including VSST, and the 2017 agreement is intentionally written broadly to entitle Quinn to fees if the 9/11 clients that Quinn and Kreindler were representing received compensation through administrative funds. Neither fund is explicitly named in the 2017 agreement, for the same reason that a global settlement with KSA is not named: to account for the possibility that any and all other channels could compensate the clients. Quinn has shown that he was not silent about the possibility of compensation through the administrative funds. In July of 2013, Quinn stated that "a comprehensive fund would eliminate nearly all such cases from the courts and provide—at long last—a modicum of justice and recompense for the innocent victims and their families." *See* PEX 15 [ECF 52-14]. Quinn produced evidence that later that year, Quinn met with senior government officials, including who Kreindler viewed as one of Quinn's most valuable contacts then-Secretary of State John Kerry, not to discuss a KSA related settlement but establishing a victim's compensation fund to compensate in lieu of litigation. *See* PEX 17 [ECF 52-14]. Therefore, there

14

is evidence that Quinn was fully aware of the administrative funds' potential in replacing litigation or state-to-state settlement as the main source of compensation. When such parol evidence exists about Quinn's expectations, the Court cannot rely on the dog that did not bark theory at summary judgment stage to disregard the intentional use of the phrase "or otherwise," which is intended to keep the sources of compensation broad, just because there is no evidence of the Parties explicitly discussing VCF or VSST in drafting the clause. To do so would be to use absence of parol evidence to introduce ambiguity into a contract that is intentionally written broadly.

In addition to parol evidence indicating that Quinn understood that the funds could replace a potential settlement as the main source of compensating clients, there is also parol evidence that Quinn actually worked on representing the clients regarding the funds. Quinn laid this evidence out in sections III(ii) and III(iii) of the motion for partial summary judgment. *See* Pl.'s Mot. at 63-65 [ECF 52]; *see also* Pl.'s Reply at 31, 33-44 [ECF No. 59]. Evidence in the record indicates, for example, that Quinn worked on "Amdts to VCF/Zadroga," *see* PEX 58 [ECF 58-7], and Senator Schumer's office in particular viewed expanding recovery under the funds as something that should alleviate and assure Quinn—indicating that he had been working on the issue tirelessly. PEX 72 [ECF 58-7]. Defendants also directly solicited Quinn's services to reach out to Attorney General Merrick Garland who had no authority over a potential settlement with KSA but would have been the DOJ official "in charge of forfeitures," in the hopes that Quinn can resolve delays in VSST payments. PEX 73 [ECF 58-7]; see also Pl.'s Reply at 40 [ECF No. 59].

As stated, both the Restatement and D.C. law prioritize this parol evidence regarding the parties' course of performance over evidence of course of dealing—and therefore especially, mere silence as a form of course of dealing—and the Court should not deploy the cannon at summary stage to resolve a seemingly ambiguous term.

Dated: August 5, 2025

Respectfully Submitted,
By Counsel

*/s/ Thomas M. Craig*
Kevin E. Byrnes, D.C. Bar No. 480195
Thomas M. Craig, D.C. Bar No. 494503
**Fluet**
1751 Pinnacle Drive, Ste 1000
Tysons, VA 22102
T: (703) 590-1234
F: (703) 590-0366
kbyrnes@fluet.law
tcraig @fluet.law

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5, 2025, I sent the forgoing to counsel of record for the Defendants via ECF.

_/s/ Thomas M. Craig_
Thomas M. Craig, Esq.

17